UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIZAR S. NAYANI, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>                Defendants. | Case No.  1:22-cv-06833-JSR |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BRITTNY JORDON
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT.................................................................................................................. 6

I.    JORDON SHOULD BE APPOINTED LEAD PLAINTIFF.............................................. 6

      A.    Jordon Is Willing to Serve as Class Representative................................................7

      B.    Jordon Has the "Largest Financial Interest" in the Action ....................................7

      C.    Jordon Otherwise Satisfies the Requirements of Rule 23........................................8

      D.    Jordon Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ................................................................................ 11

II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 11

CONCLUSION............................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
     2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ................................................................................9

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
     141 F.R.D. 229 (2d Cir. 1992) .................................................................................................9

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
     2018 WL 3093965 (S.D.N.Y. June 21, 2018) ..........................................................................8

*Dookeran v. Jordonnlei Ltd.*, No. 18-cv-467 (RJS),
     2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .........................................................................10

*Foley v. Transocean Ltd.*,
     272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................10

*In re Cendant Corp. Litig.*,
     264 F.3d 201 (3d Cir. 2001) .....................................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
     2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .............................................................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
     960 F.2d 285 (2d Cir. 1992) .....................................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
     233 F.R.D. 147 (D. Del. 2005) ...............................................................................................12

*In re Olsten Corp. Sec. Litig.*,
     3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................8

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
     2008 WL 2811358 (S.D.N.Y. July 7, 2008) ............................................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
     182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................................................9

*Janbay v. Canadian Solar, Inc.*,
     272 F.R.D. 113 (S.D.N.Y. 2010) .............................................................................................9

*Kaplan v. Gelfond*,
     240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ........................................................................12

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
    1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ............................................................7

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
    2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .......................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ..........................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)..................................................................12

## **Statutes**

15 U.S.C. § 77z-1................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

Securities Act of 1933.....................................................................................................1

## **Rules**

Fed. R. Civ. P. 23................................................................................ *passim*

Brittny Jordon ("Jordon") respectfully submits this memorandum of law in support of her motion, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Jordon as Lead Plaintiff on behalf of all persons or entities who purchased LifeStance Health Group, Inc. ("LifeStance" or the "Company") common stock pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with LifeStance's June 10, 2021 initial public stock offering (the "IPO") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") disseminated a materially false or misleading registration statement to investors in connection with the IPO in violation of the Securities Act. LifeStance investors, including Jordon, incurred significant losses following the disclosure of Defendants' alleged misrepresentations and/or omissions, which caused LifeStance's share price to fall sharply, damaging Jordon and other LifeStance investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Pursuant and/or traceable to the IPO, Jordon purchased 60 shares of LifeStance common stock, expended $1,500 on her purchases, and, as a result of the disclosure of Defendants' alleged misrepresentations and/or omissions, incurred losses of approximately $608 in connection with her purchases of LifeStance common stock pursuant and/or traceable to the IPO. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."),

1

Exhibit ("Ex.") A.  Accordingly, Jordon believes that she has the largest financial interest in the relief sought in the Action.

Beyond her considerable financial interest, Jordon also meets the applicable requirements of Rule 23 because her claims are typical of absent Class members and because she will fairly and adequately represent the interests of the Class.

In order to fulfill her responsibilities as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Jordon has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in this Action.

Accordingly, Jordon respectfully requests that the Court enter an order appointing her as Lead Plaintiff for the Class and approving her selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaint in the Action, LifeStance is one of the nation's largest providers of virtual and in-person outpatient mental health care.  At the time of its IPO, the Company operated 370 centers and employed 3,300 psychiatrists, advanced practice nurses, psychologists, and therapists across 27 states.  The Company provides virtual and in-person outpatient mental health care for children, adolescents, and adults experiencing a variety of mental health conditions including depression, anxiety disorder, schizophrenia, and post-traumatic stress disorder.

LifeStance benefitted from the state and local lockdown orders necessitated by the COVID-19 pandemic starting in the spring of 2020.  Total patient visits increased from 931,934

2

in 2018 to 1,353,285 in 2019, all the way to 2,290,728 in 2020.  Meanwhile, the Company's total revenue grew from $100.3 million in 2018 to $212.5 million in 2019 and all the way to $377.2 million in 2020 on a pro forma basis.

By December 2020, several COVID-19 vaccines were being approved and administered, meaning LifeStance's access to clients seeking virtual mental health services would significantly decline while demand for in-person services would increase.  Meanwhile, LifeStance internal company records demonstrated that providing virtual services cost LifeStance far less as its service providers could work from home, avoiding the costs of high rents for offices, office personnel staff, and related expenses.  Also, because LifeStance had been utilizing physicians from around the country to meet strong patient demand during the COVID-19 lockdowns, increasing inpatient service demand was increasing the workload on certain of its physicians, many of whom were getting burned out and resigning, requiring that new physicians be hired and trained.

On or about February 16, 2021, LifeStance filed with the SEC a Registration Statement on Form S-1, which, after several amendments made pursuant to comments from the SEC, would later be utilized for the IPO.  Initially, defendants stated they intended to sell a total of 40 million shares at a price range of between $15.00 and $17.00 per share, however, based on the defendants' strong marketing efforts to sell the IPO – when on June 9, 2021 the SEC declared the Registration Statement effective, and on or about June 11, 2021 when LifeStance, the selling stockholders, and the Underwriter Defendants priced the IPO and filed the final Prospectus for the IPO, which forms part of the Registration Statement (collectively, the "Registration Statement") with the SEC – they were able to price the shares sold in the IPO at $18.00 per share and to sell 46 million shares in the IPO.

The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

Specifically, the Registration Statement made inaccurate statements of material fact because those statements failed to disclose the following adverse facts that existed at the time of the IPO: (a) that the number of virtual visits clients were undertaking utilizing LifeStance was decreasing as the COVID-19 lockdowns were being lifted, thereby flatlining the Company's out-patient/virtual revenue growth; (b) that the percentage of in-person visits clients were undertaking utilizing LifeStance was increasing as the COVID-19 lockdowns were being lifted, thereby causing the Company's operating expenses to increase substantially; (c) that LifeStance had lost a large number of physicians due to burn-out and, as a result, its physician retention rate had fallen significantly below the 87% highlighted in the Registration Statement and the Company had been expending additional costs to onboard new physicians who were less productive than the outgoing physicians they were replacing; and (d) that, as a result of the foregoing, LifeStance's business metrics and financial prospects were not as strong as the Registration Statement represented.

On August 11, 2021, less than two months after the IPO, LifeStance announced its second quarter 2021 ("2Q21") financial results for the period ended June 30, 2021 (*just days after the IPO*), disclosing a net loss of $70 million, compared to net loss of just $27.6 million for the period from April 1, 2020 to May 14, 2020 (Predecessor) and $4.3 million for the period from April 13, 2020 to June 30, 2020 (Successor).  Critically, during the 2Q21, the Company's operating expenses had more than tripled.  LifeStance also guided for full fiscal year 2021 total

4

revenue of just $668 million to $678 million ($168 million to $173 million in the third quarter 2021 and $196 million to $201 million in the fourth quarter 2021) and Adjusted EBITDA of just $47 million to $53 million ($8 million to $11 million in the third quarter 2021 and $12 million to $15 million in the fourth quarter 2021). There were multiple reasons for the massive increase in LifeStance's operating expenses during the 2Q21.

Defendants also disclosed on August 11, 2021 that the Company had experienced a significant, negative "recent change in clinician retention levels" during the 2Q21. As defendant Bruff explained on the conference call held with investors and stock analysts that day,

> [W]hile we are assuming *a continuation of lower retention rates* for the remainder of the year, our *ongoing recruiting and acquisition momentum* is expected to deliver a higher-than-expected clinician base for the full year. However, *new clinician additions have lower productivity for the first 4 to 6 months and therefore, will not immediately offset the impact from higher turnover, a dynamic we expect to negatively impact Center Margin and adjusted EBITDA by approximately $7 million to $9 million*.

On November 8, 2021, the Company reported its third quarter 2021 results, now explaining in its press release that "[c]linician retention [had] *stabilized to approximately 80%* annualized in the third quarter." Defendants further lamented that LifeStance was also having to increase spending on "enhanced clinician engagement and continued support for workplace and work-life flexibility," i.e. lowering physician productivity, in order to keep its existing physicians.

Defendants reported LifeStance's fiscal 2021 results on March 10, 2022. During the conference call held with investors and stock analysts that day, defendant Lester admitted that a recent large clinical study by Stanford had confirmed that three quarters of mental health patients prefer in-person services, stating that "[w]hen COVID first emerged in 2020, our patient visits moved from 5% virtual to over 90% virtual within weeks," but that "[t]hrough 2021, our

5

telehealth mix trended downward to the low 80s, and we expect that mix to be approximately 50-50 virtual versus in-person over the long term." Notably, the Company stated that it would be reducing the number of brick & mortar facilities that it would be building in the immediate future expressly in order to increase its profitability.

At the time of the filing of the Complaint in the Action, LifeStance common stock traded in a range of $4.77-$7.70, a reduction of upwards of 73% from the price the shares were sold at in the IPO.

## ARGUMENT

I.     JORDON SHOULD BE APPOINTED LEAD PLAINTIFF

Jordon should be appointed Lead Plaintiff because, to her knowledge, she has the largest financial interest in the Action and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 77z-1(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

As set forth below, Jordon satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.      Jordon Is Willing to Serve as Class Representative

On August 10, 2022, counsel for the plaintiff in the Action caused a notice to be published over *Business Wire* pursuant to Section 27(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against LifeStance and other defendants, and which advised investors in LifeStance common stock that they had until October 11, 2022—*i.e.*, sixty days from the date of the PSLRA Notice—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

Jordon has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that she is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Jordon satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      Jordon Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii). To the best of her knowledge, Jordon has the largest financial interest of any LifeStance investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide, these *Lax* factors have been

7

adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at \*4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at \*1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004); *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at \*6-8 (E.D.N.Y. Mar. 2, 2007).

Pursuant and/or traceable to the IPO, Jordon: (1) purchased 60 shares of LifeStance common stock; (2) expended $1,500 on her purchases of LifeStance common stock; and (3) incurred losses of approximately $608 in connection with her purchases of LifeStance common stock pursuant and/or traceable to the IPO. *See* Lieberman Decl., Ex. A. To the extent that Jordon possesses the largest financial interest in the outcome of this litigation, she is the presumptive "most adequate" plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

C.      Jordon Otherwise Satisfies the Requirements of Rule 23

Section 27(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

8

In making its determination that a lead plaintiff satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements."). Here, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Jordon.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those [*sic*] of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Jordon's claims are typical of those of the Class. Jordon alleges, as do all Class members, that Defendants violated the federal securities laws by making false or misleading statements of material facts and/or by omitting to disclose material facts concerning LifeStance. Jordon, as did all Class members, purchased LifeStance common stock pursuant and/or traceable to the IPO at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove LifeStance's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Jordonnlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Jordon has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits her choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v). In addition to Pomerantz, Jordon is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this Action. There is no evidence of antagonism or conflict between Jordon's interests and the interests of the Class. Moreover, Jordon has submitted a signed Certification declaring her commitment to protect the interests of

the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Jordon demonstrate that she has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating her adequacy, Jordon has submitted a Declaration attesting to, *inter alia*, her background, her investing experience, her understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, her decision to seek appointment as Lead Plaintiff, and the steps that she is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

>    D.    Jordon Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Jordon as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

>    (aa)    will not fairly and adequately protect the interests of the class; or
>
>    (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

Jordon's ability and desire to fairly and adequately represent the Class has been discussed above.  Jordon is not aware of any unique defenses Defendants could raise that would render her inadequate to represent the Class.  Accordingly, Jordon should be appointed Lead Plaintiff for the Class.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v).  The Court should only interfere with the lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 77z-

1(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Jordon has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Jordon's counsel, Pomerantz, has the skill, knowledge, expertise, and

experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Jordon's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Jordon respectfully requests that the Court issue an Order: (1) appointing Jordon as Lead Plaintiff for the Class; and (2) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  October 11, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Brittny Jordon and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Brittny Jordon*

13