UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIZAR S. NAYANI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>Defendants. | Case No.  1:22-cv-06833-JSR<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF BRITTNY JORDAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; and (2) IN OPPOSITION TO MOTION OF NIZAR S. NAYANI |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 4

I.      Jordan Should Be Appointed Lead Plaintiff ................................................................ 4

        A.      Jordan Has the Largest Financial Interest in the Relief Sought by the Class of any Movant ........................................................................................................ 5

        B.      Jordan Satisfies the Requirements of Rule 23 ....................................................... 5

        C.      The Presumption in Favor of Jordan's Appointment Remains Unrebutted ............ 6

II.     The Court Should Deny Nayani's Motion ................................................................... 10

        A.      Nayani Does Not Possess the Largest Financial Interest in this Litigation .......... 10

        B.      Nayani Is Inadequate Under Rule 23 .................................................................... 10

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
 2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)....................................................2, 4, 5

*Bowers v. Tesaro Inc.*,
 No. 18-cv-10086-ADB, 2018 U.S. Dist. LEXIS 75514 (D. Mass. May 4,
 2018) .......................................................................................................................................8

*Chahal v. Credit Suisse Grp. AG*, 18-CV-02268 (AT)(SN)
 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018).......................................................5

*Constance Sczesny Trust v. KPMG LLP*,
 223 F.R.D. 319 (S.D.N.Y. 2004) .............................................................................................8

*Cook v. Allergan PLC*, 18 Civ. 12089 (CM) *et al.*,
 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) .....................................................3, 6

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
 2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018).......................................................1, 6

*Doral Bank P.R. v. Wamu Asset Acceptance Corp.*, No. C09-1557MJP,
 2010 U.S. Dist. LEXIS 37909 (W.D. Wash. Mar. 24, 2010) ...................................................9

*Foley v. Transocean Ltd.*,
 272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................................5, 6, 8, 9

*Greater Pa. Carpenters Pension Fund v. Whitehall Jewelers, Inc.*, No. 04 C 1107,
 2005 U.S. Dist. LEXIS 12971 (N.D. Ill. June 30, 2005) ...................................................3, 7, 8

*Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC,
 2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4, 2020) ...................................................3, 11

*In re Cendant Corp. Litig.*,
 *264 F.3d 201 (3d Cir. 2001)* ..................................................................................................10

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ...........................................................6

*Kaplan v. Gelfond*,
 240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................4, 5

*Maiman v. Talbott*, No. SACV 09-0012 AG,
 2009 U.S. Dist. LEXIS 139673 (C.D. Cal. Sept. 14, 2009).....................................................8

*Murphy v. JBS S.A.*, 17-CV-3084,
  2017 U.S. Dist. LEXIS 166262 (E.D.N.Y. Oct. 6, 2017)..........................................................10

*Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD,
  2011 U.S. Dist. LEXIS 18247 (D. Idaho Feb. 24, 2011)......................................................3, 7

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
  2017 U.S. Dist. LEXIS 187238 (Nov. 13, 2017)....................................................................5

*Owen v. Elastos Found.*, 1:19-cv-5462-GHW,
  2020 U.S. Dist. LEXIS 92265 (S.D.N.Y. May 26, 2020)........................................................10

*Roth v. Aon Corp.*,
  238 F.R.D. 603 (N.D. Ill. 2006).............................................................................................10

**Statutes**

15 U.S.C. § 78u-4 ..............................................................................................1, 4, 5, 6

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 23.............................................................................................. *passim*

Movant Jordan[1] respectfully submits this Memorandum of Law in further support of her motion for appointment as Lead Plaintiff and approval of her selection of Pomerantz as Lead Counsel (Dkt. No. 14); and in opposition to the competing motion of Nizar S. Nayani ("Nayani") (Dkt. No. 26).

## PRELIMINARY STATEMENT

This Action is a putative class action lawsuit on behalf of investors in LifeStance securities, alleging violations of the federal securities laws by the Defendants. As with all federal class action securities lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Jordan, having suffered approximately $608 in losses in connection with her purchases of LifeStance securities as a result of the Defendants' alleged malfeasance. *See* Dkt. No. 17-1. The only competing movant, Nayani, has alleged a lesser loss of only $385. Accordingly, Jordan possesses the largest financial interest of any eligible movant within the meaning of the PSLRA.

In addition to her significant financial interest, Jordan also satisfies the adequacy and typicality requirements of Rule 23. Jordan is aware of no conflict between her interests and those of the Class, her losses incurred as a result of the Defendants' alleged malfeasance give her a sufficient stake in the outcome of this action to ensure vigorous advocacy, and in Pomerantz, Jordan has retained qualified and experienced counsel. *Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS)

---

[1] All capitalized terms herein are defined in Jordan's moving brief, unless otherwise indicated. *See* Dkt. No. 16.

*et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018).  Jordan, like all members of the Class, purchased LifeStance securities at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon disclosure of those misrepresentations or omissions.  *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018).  Further demonstrating her adequacy, Jordan has submitted a detailed Declaration providing the Court with biographical information about herself and attesting to, *inter alia*, her understanding of the significance of her motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and her readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 25-2.

Possessing the largest financial interest of any movant and having established her adequacy and typicality within the meaning of Rule 23, Jordan is entitled to the statutory presumption that she is the "most adequate plaintiff" of the Class within the meaning of the PSLRA.  Because Jordan is neither subject to unique defenses nor otherwise unable to fairly and adequately protect the interests of other Class members, there is nothing to rebut the presumption in favor of her appointment as Lead Plaintiff.

The only other movant, Nayani, satisfies neither of the criteria for appointment as Lead Plaintiff.  First, as he concedes, Nayani lacks the largest financial interest in the litigation.  This failure to meet the first of the statutory criteria alone mandates denial of his motion.

Even assuming *arguendo* that Nayani possessed a larger financial interest in this litigation than Jordan, Nayani is ineligible for appointment irrespective of his financial interest because he is inadequate under Rule 23.  After filing the initial Complaint in this Action, Nayani took no affirmative steps to advise the Court or other parties of his desire to serve as Lead Plaintiff until three days after the Lead Plaintiff motion deadline.  This failure raises legitimate questions as to

whether Nayani is prepared to vigorously prosecute this Action on behalf of the Class.  *See*, *e.g.*, *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at *12-13 (N.D. Cal. Sept. 4, 2020) (denying motion, finding "the lack of involvement" by the movant did "not reflect commitment to the litigation").

His own inadequacy notwithstanding, Nayani nonetheless resorts to meritless attacks upon Jordan's adequacy and typicality in a fruitless effort to disqualify Jordan from appointment as Lead Plaintiff.

*First*, Nayani claims that the misspelling of Jordan's last name by a single letter in her motion papers renders her inadequate to represent the Class within the meaning of Rule 23.  Dkt. No. 34 at 2.  Not so.  Here, a single scrivener's error by counsel resulted in Jordan's name being misspelled—consistently—throughout her motion papers.  The error was identified and corrected shortly after the filing of Jordan's lead plaintiff motion.  Courts generally decline to disqualify lead plaintiff movants on behalf of such quickly remedied minor errors.  *See*, *e.g.*, *Cook v. Allergan PLC*, 18 Civ. 12089 (CM) *et al.*, 2019 U.S. Dist. LEXIS 51962, at *9-10 (S.D.N.Y. Mar. 21, 2019); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *34 (D. Idaho Feb. 24, 2011); *Greater Pa. Carpenters Pension Fund v. Whitehall Jewelers, Inc.*, No. 04 C 1107, 2005 U.S. Dist. LEXIS 12971, at *12-13 (N.D. Ill. June 30, 2005).

*Second*, Nayani claims that Jordan's prior employment by LifeStance further renders her inadequate or atypical under Rule 23, and/or subject to unique defenses.  Dkt. No. 34 at 3-5. Specifically, Nayani speculates that Jordan had "first-hand information" regarding the Company's business metrics and financial prospects and that her former employment at LifeStance creates a "conflict of interest," going so far as to suggest that Jordan sought to conceal the fact of her employment at LifeStance.  Again, Nayani is wrong.  Jordan worked as a psychotherapist at

LifeStance at the time of the Company's IPO and left the Company to start her own psychotherapy practice just two weeks after purchasing shares of LifeStance stock. As a psychotherapist, Jordan only worked with patients, and she had no access to "first-hand information" regarding the Company's business metrics and financial prospects, as Nayani speculates. Dkt. No. 34 at 3. Nayani has proffered zero evidence in support his invented "conflict of interest," which thus remains the definition of speculation. Nor, as Nayani incorrectly suggests, did Jordan attempt to conceal her former employment at LifeStance. Jordan submitted a detailed Declaration attesting to her profession, her educational background, and her city and state of residence. All of this information enabled any opposing movant or Defendant to conduct the simple internet search necessary to learn of Jordan's employment history, as Nayani's counsel has easily done. Jordan did not proactively disclose her employment with LifeStance because it is irrelevant to her motion, because she was a low-level employee with no exposure to the financial information related to this lawsuit.

For the reasons set forth herein, Jordan respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## ARGUMENT

### I.    Jordan Should Be Appointed Lead Plaintiff

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements] of Rule 23." *Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted upon proof that

4

the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate plaintiff is Jordan.

### A.    Jordan Has the Largest Financial Interest in the Relief Sought by the Class of any Movant

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts recognize that the amount of financial loss is the most significant factor to be considered.  *See*, *e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on . . . the approximate loss suffered by the movant"); *Chahal v. Credit Suisse Grp. AG*, 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (Nov. 13, 2017) (same).

Under the foregoing analysis, no movant has a larger financial interest in the litigation than Jordan.  Jordan's loss of $608 is larger than the $385 loss claimed by Nayani, the only other movant, a fact that Nayani has conceded.  *See* Dkt. No. 34 at 1.  Jordan thus plainly has the largest financial interest in the relief sought by the Class in this Action.

### B.    Jordan Satisfies the Requirements of Rule 23

Jordan has also made the requisite *prima facie* showing that she satisfies the typicality and adequacy requirements of Rule 23.  *See Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *Kaplan*, 240 F.R.D. at 94.  First, Jordan's claims satisfy the typicality requirement of Rule 23(a)(3) because her claims against LifeStance and the other Defendants are based on the same legal theory and arise

from the same events and course of conduct as the Class's claims. *See*, *e.g.*, *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at \*12 (S.D.N.Y. July 7, 2008). Second, Jordan satisfies the adequacy requirement of Rule 23(a)(4) because "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley*, 272 F.R.D. at 131; *see also Dookeran*, 2018 U.S. Dist. LEXIS 62575, at \*6.

For all of the foregoing reasons, Jordan strongly satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's strong presumption of being the Lead Plaintiff.

**C.      The Presumption in Favor of Jordan's Appointment Remains Unrebutted**

Because Jordan has the largest financial interest of any eligible Lead Plaintiff candidate in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, she is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling Jordan to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case with respect to Jordan.

Nonetheless, Nayani challenges Jordan's appointment on two equally meritless bases.

***First***, Nayani argues that the inadvertent misspelling of Jordan's name in her initial motion papers renders her inadequate to represent the Class. Yet courts have routinely found that minor defects, promptly cured, in a movant's papers have no bearing on the movant's adequacy, nor otherwise disqualify the movant from consideration as lead plaintiff. *See*, *e.g.*, *Allergan*, 2019 U.S. Dist. LEXIS 51962, at \*9-10 (finding "typographical errors" in briefing to be irrelevant to movant's adequacy, finding competing movant's argument to be "the sort of argument that does

6

not dispose [the court] to favor the lead counsel candidacy of the firm making it."); *Niederklein*, 2011 U.S. Dist. LEXIS 18247, at *34 ("minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement"); *Whitehall Jewelers*, 2005 U.S. Dist. LEXIS 12971, at *12-13 (permitting movant to file amended certification to cure a deficiency).

Here, due to an acknowledged scrivener's error by counsel, Jordan's name was incorrectly misspelled as "Jordon" in her initial motion papers.[2]   Jordan reviewed and executed two documents—her Certification (Dkt. No. 17-3) and Declaration (Dkt. No. 17-4)—in which her name appeared only a handful of times.  That Jordan might have overlooked the fact that her last name was misspelled by one letter—particularly given the visual similarity of a lower-case "o" to a lower-case "a"—while focusing her attention on the substance of the attestations in these documents is entirely understandable and far from the egregious and disqualifying defect that Nayani makes it out to be.  Indeed, Nayani's reference to "Ms. Jordan's failure to spell her name correctly" (Dkt. No. 34 at 1) deliberately mischaracterizes the issue in an effort to impugn Jordan's competence.  Nayani's readiness to cast aspersions on a fellow Class member in such terms over an understandable oversight says far more about his own adequacy to serve as Lead Plaintiff than about Jordan's.

***Second***, Nayani argues that Jordan is ineligible to serve as Lead Plaintiff because "she was employed by or affiliated with LifeStance Health during and/or after the Company's IPO[.]"  Dkt. No. 34 at 3.  Nayani thus argues that Jordan "had first-hand information regarding the allegations in the Complaint" and that her former employment at LifeStance "creates the appearance of a conflict of interest that may render Ms. Jordan unable to lead the case."  Dkt. No. 34 at 3-4.

---

[2] The error was promptly identified and cured days after the filing of Jordan's motion papers. *See* Dkt. No. 24.

Moreover, Nayani suggests that Jordan deliberately withheld this information "because of the negative implications on her typicality and adequacy". *Id.* at 4.

Nothing about Jordan's former employment at LifeStance renders her either atypical or inadequate. Jordan was employed at LifeStance as a psychotherapist at the time of the Company's June 10, 2021 IPO, her former employer having been acquired by LifeStance in 2020. As her Certification reflects, Jordan purchased 60 shares of LifeStance stock on July 19, 2021, just a few weeks after the IPO. *See* Dkt. No. 25-1 at *4. Approximately two weeks thereafter, Jordan left LifeStance to open her own psychotherapy practice. As a psychotherapist at LifeStance, Jordan had no managerial responsibilities nor any direct reports. Her role at the Company only involved treating patients and did not make her privy to information about the Company's business metrics, financial prospects or physician churn rate. Nayani's assertion that Jordan "had first-hand information about the allegations in the Complaint" is thus baseless speculation. *See*, *e.g.*, *Bowers v. Tesaro Inc.*, No. 18-cv-10086-ADB, 2018 U.S. Dist. LEXIS 75514, at *8 (D. Mass. May 4, 2018) (declining "to accept[] the attenuated inference that [movant] has access to insider information" because "[w]ithout any specific evidence, [the] assertions amount to mere speculation"); *Maiman v. Talbott*, No. SACV 09-0012 AG, 2009 U.S. Dist. LEXIS 139673, at *10 (C.D. Cal. Sept. 14, 2009) (rejecting assertion that lead plaintiff "is subject to a unique defense because he may have relied on inside information," because without evidence to support that accusation, competing party was "merely speculat[ing] that it might be true").

Nor has Nayani demonstrated that Jordan's former employment at LifeStance raises any conflicts of interest. A "conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff." *Foley*, 272 F.R.D. at 133. *See also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("conclusory

assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest"). Here, Nayani's imagined "conflict" appears to derive from the fact that Jordan has not affirmatively stated that "there was no agreement [with LifeStance] to release each other from all claims and actions they have or may have against each other." Dkt. No. 34 at 4 (internal punctuation and quotation marks omitted). This supposed conflict is the very definition of speculation and is "belied by [Jordan's] role in this lawsuit, [her] motion to be named lead plaintiff, and [her] sworn certification that [she] will adequately and aggressively lead the class." *Foley*, 272 F.R.D. at 133.

Finally, Jordan did not attempt to conceal her employment at LifeStance from the Court, as Nayani suggests. Jordan's Declaration, filed with her initial motion papers, provided sufficient information about her profession and her city and state of residence to enable her to be identified (*see* Dkt. No. 25-2). Given that her former employment by LifeStance is a matter of public record, the information in Jordan's Declaration thus functionally disclosed her association with the Company. Also, in her Declaration, Jordan simply attested to being a psychotherapist—*i.e.*, she did not list certain employers while omitting any mention of LifeStance. There is nothing nefarious about the fact that Jordan did not affirmatively and specifically disclose in her motion papers that she worked for LifeStance in a low-level, non-managerial capacity. *See*, *e.g.*, *Doral Bank P.R. v. Wamu Asset Acceptance Corp.*, No. C09-1557MJP, 2010 U.S. Dist. LEXIS 37909, at *3, *9 (W.D. Wash. Mar. 24, 2010) (rejecting argument that institutional movant was "subject to unique factual defenses" where certain of the movant's executives previously worked for the defendant company, finding that competing movant had "not identified any knowledge gained during" their employment "that would implicate [movant's] ability to serve as a fiduciary.").

9

## II.     The Court Should Deny Nayani's Motion

### A.     Nayani Does Not Possess the Largest Financial Interest in this Litigation

Nayani may not be appointed as Lead Plaintiff in the Action because he does not possess the largest financial interest in the Action, and thus does not satisfy the first of the statutory criteria to be entitled to the "most adequate plaintiff" presumption.  Here, as discussed above, Nayani has conceded that Jordan clearly possess the largest financial interest in this Action.  It is thus self-evident that Nayani does not possess the largest financial interest.  This fact alone suffices to mandate denial of his motion.

### B.     Nayani Is Inadequate Under Rule 23

Even assuming *arguendo* Nayani did possess a larger financial interest in the Action than Jordan, the PSLRA would still mandate denial of his motion irrespective of his financial interest because Nayani is not an adequate class representative under Rule 23.  Rule 23's adequacy requirement entails determining whether a lead plaintiff candidate "will pursue the case with vigor."  *Owen v. Elastos Found.*, 1:19-cv-5462-GHW, 2020 U.S. Dist. LEXIS 92265, at *8 (S.D.N.Y. May 26, 2020).  *See also Murphy v. JBS S.A.*, 17-CV-3084, 2017 U.S. Dist. LEXIS 166262, at *13 (E.D.N.Y. Oct. 6, 2017) ("In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it has the ability and incentive to represent the claims of the class vigorously") (quoting *In re Cendant Corp. Litig., 264 F.3d 201, 265 (3d Cir. 2001).*); *Roth v. Aon Corp.*, 238 F.R.D. 603, 606-07 (N.D. Ill. 2006) (class representatives must be "willing and able to vigorously pursue the litigation on behalf of the class").

Nayani's conduct in this litigation has not been characterized by vigor.  Indeed, since filing the initial complaint, he has been largely supine.  Nayani did not file a motion for appointment as Lead Plaintiff on the statutory deadline to do so, nor did he even file a notice alerting the Court to his desire to be considered as a Lead Plaintiff candidate by virtue of having filed the initial

10

Complaint.  Rather, his counsel only advised the Court and the other parties of his desire to serve as Lead Plaintiff at a Court-ordered telephonic conference on October 14, 2022—***three days after the motion deadline had passed***.  Given his evident lack of engagement in this litigation to date, serious doubts exist as to whether Nayani possesses the requisite willingness and ability to fulfill the duties of a class representative by protecting the interests of absent class members.  Jordan respectfully submits that Nayani does not, and that his inadequacy within the meaning of Rule 23 disqualifies him from consideration.  *See*, *e.g.*, *Haideri*, 2020 U.S. Dist. LEXIS 162510, at \*12-13 (denying motion, finding "the lack of involvement" by the movant did "not reflect commitment to the litigation").

**CONCLUSION**

For the foregoing reasons and the reasons set forth in her motion brief (Dkt. No. 14), Jordan respectfully requests that the Court issue an Order granting his motion in all respects and denying Nayani's competing motion.

Dated:  October 24, 2022                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael Grunfeld
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Brittny Jordan
and Proposed Lead Counsel for the Class*