UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------
NIZAR S. NAYANI, Individually
and on Behalf of All Others
Similarly Situated,

          Plaintiff,


     -v-

LIFESTANCE HEALTH GROUP, INC.,
MICHAEL K. LESTER, J. MICHAEL
BRUFF, ROBERT BESSLER, DARREN
BLACK, JEFFREY RHODES, ERIC
SHUEY, KATHERINE WOOD, MORGAN
STANLEY & CO. LLC, GOLDMAN
SACHS & CO. LLC, J.P. MORGAN
SECURITIES LLC, JEFFERIES LLC,
TPG CAPITAL BD. LLC,UBS
SECURITIES LLC, and WILLIAM
BLAIR & COMPANY, L.L.C.,

          Defendants.
-------------------------------------
```

22-cv-6833 (JSR)


OPINION AND ORDER


JED S. RAKOFF, U.S.D.J.:

    This is a putative class action filed by plaintiff Nizar Nayani against defendants LifeStance Health Group, Inc. ("LifeStance"), a firm that provides mental health services; nine of LifeStance's officers and directors (the "individual defendants"); and the underwriters (the "underwriter defendants") of LifeStance's initial public offering ("IPO"). The Complaint alleges that LifeStance made false and misleading statements and

- 1 -

omissions in the Registration Statement that it filed on Form S-1 in preparation for its IPO.

Two investors in LifeStance, Nizar Nayani and Brittny Jordan, moved to be appointed as lead plaintiff pursuant to 15 U.S.C. § 77z-1(a)(1). After full briefing, the Court held an evidentiary hearing in which, inter alia, it posed questions to Mr. Nayani and Ms. Jordan. For the reasons provided below, the Court hereby grants Mr. Nayani's motion and denies that of Ms. Jordan. Thus, Mr. Nayani is hereby appointed as lead plaintiff, and his choice of lead counsel, Robbins Geller Rudman & Dowd, LLP ("Robbins Geller"), is hereby approved as well.

I.   Plaintiffs' Allegations

LifeStance provides mental health services throughout the United States. Compl. ¶ 12. Since LifeStance provides some of those services virtually, it benefited when state and local governments imposed lockdown orders in response to the outbreak of COVID-19. LifeStance's revenues doubled between 2018 and 2019 and nearly doubled again between 2019 and 2020. Id. ¶¶ 12-13.

In 2021, LifeStance's owners decided to take it public. On February 16, 2021, in preparation for LifeStance's IPO, LifeStance filed a Registration Statement on Form S-1. Id. ¶ 15. In that Registration Statement, LifeStance noted its meteoric revenue growth and its profitability at the time. Id. ¶ 17. It also

indicated that its strong market position was not caused solely by the COVID-19 pandemic and would persist for several years into the future. Id. ¶¶ 17-19.

If the Registration Statement had fully disclosed all the material facts, the Complaint alleges, it would have painted a materially murkier picture of LifeStance's future. Id. ¶ 21. As alleged, LifeStance's Registration Statement failed to disclose that: (a) virtual visits to LifeStance's became rarer as COVID-19 lockdowns were lifted; (b) in-person visits to LifeStances's doctors increased as COVID-19 lockdowns were lifted; and (c) LifeStance had lost many physicians to "burnout." Id. Each of these facts, if disclosed, would have indicated, the Complaint alleges, either that LifeStances's future revenues would be materially lower or that its future expenses would materially higher than otherwise indicated. Thus, the Complaint alleges, these omissions made portions of LifeStance's Registration Statement inaccurate statements of material fact, in violation of Sections 11 and 15 of the Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74. Comp., ECF No. 1, at ¶¶ 36-48.

LifeStance's IPO occurred on June 10, 2021. Id. ¶ 1. The IPO's underwriters sold LifeStance's shares to the public at an initial price of $18.00 per share. Id. ¶ 24.

On August 11, 2021, LifeStance disclosed its financial results for the second quarter of 2021, a period covering the dates April 1, 2021-June 30, 2021. Id. ¶ 25. LifeStance then disclosed that it had struggled to retain doctors and that its operating expenses had tripled during this period. Id. ¶¶ 25-26.

On March 10, 2022, LifeStance disclosed its financial results for fiscal year 2021. Id. ¶ 28. On that day, the CEO of LifeStance, Michael Lester, also disclosed that the share of LifeStance's patients who received virtual services declined from 90% at the beginning of the COVID-19 pandemic to approximately 80% during 2021, and it was expected to decline further to 50% in the long term. Id.

On the day the Complaint was filed, August 10, 2022, LifeStance's common stock traded in a range of $4.77 to $7.70 per share. Id. ¶ 29. The bottom end of this range represents a reduction of 73% from the per-share price of LifeStance's stock at its IPO. Id.

II.   Discussion

A.   Legal Framework

The Private Securities Litigation Reform Act ("PSLRA") governs the appointment of a lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15

U.S.C. § 77z-1(a)(1). The PSLRA provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty days of the publication, for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i). After notice has been published, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the plaintiff that the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i).

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Such a presumption may nonetheless be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique

defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

B.   Analysis

Mr. Nayani and Ms. Jordan are the only two plaintiffs who moved to be appointed as lead plaintiff. Both movants submitted timely motions.[1] While Ms. Jordan appears to have the largest financial interest at stake in this matter, she has not made a sufficient showing of satisfying Rule 23's requirement that she will be an adequate representative of the class. Mr. Nayani, by contrast, has made a sufficient showing of satisfying all the requirements of Rule 23. On that basis, Mr. Nayani is the presumptive most adequate plaintiff, and this presumption has not been rebutted. Thus, the Court appoints Mr. Nayani as lead plaintiff.

---

[1]   Mr. Nayani moved to be named lead plaintiff in the Complaint, which was filed on August 10, 2022. See Comp., ECF No. 1, at 17.
    Ms. Jordan moved to be named lead plaintiff on October 11, 2022. The PSLRA provides that motions for lead plaintiff must be submitted not later than 60 days after the date on which notice of an action is published. 15 U.S.C. § 77z-1(a)(3)(A). In this case, notice was given on August 10, 2022 (the same day as the filing of the Complaint). Sixty days following that date is October 9, 2022, which was a Sunday, and the following day, October 10, 2022, was a legal holiday. While the PSLRA does not specify how to deal with weekends and holidays, Rule 6(a) of the Federal Rules of Civil Procedure provides that any period of time in such a statute "include[s] the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." F. R. Civ. P. 6(a)(1)(C). Thus, the deadline for moving to be named lead plaintiff in this case was October 11, 2022, and accordingly Ms. Jordan's motion was timely.

1.   <u>Largest Financial Interest</u>

To determine which plaintiff has the largest financial interest in relief sought by the class in a securities fraud action, courts have looked to "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." <u>In re eSpeed, Inc. Sec. Litig.</u>, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). Ms. Jordan claims losses of approximately $608 on her purchase of 60 shares. Decl. of Jeremy A. Lieberman in Support of Mot. Of Brittny Jordan ("Lieberman Decl."), ECF No. 17, Ex. A.  Mr. Nayani claims losses of approximately $385 on his purchase of 38 shares. Decl. of David A. Rosenfield, ECF No. 28, Ex. C. Thus, Ms. Jordan has the largest financial interest.

2.   <u>Satisfaction of Rule 23</u>

Although Ms. Jordan has the largest financial interest, she does not benefit from the presumption of greatest adequacy unless she also satisfies the requirements of Rule 23. At the lead plaintiff stage, "a lead plaintiff movant need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." <u>In re Tronox, Inc.</u>, 262 F.R.D. 338, 344 (S.D.N.Y. 2009).

i.   Typicality

The typicality requirement is satisfied when a plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all class members. See In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009). Courts in this Circuit have held that the "typicality requirement is not demanding." In re Prestige Brands Holdings, Inc., No. 05 Civ. 6924(CLB), 2007 WL 2585088, *2-3, 2007 U.S. Dist. LEXIS 66199, *10-11 (S.D.N.Y. 2007).

Both moving plaintiffs have made a prima facie showing of typicality. Both moving plaintiffs allege that their claims arise from misstatements and omissions in LifeStance's Registration Statement. This is the same course of events that allegedly injured the other members of the class. Moreover, both movants allege that they were harmed when the price of LifeStance's securities was inflated by its misrepresentations and/or omissions and then deflated by its disclosures. See In re Petrobras Sec. Litig., 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015) (finding typicality where a plaintiff sought "recovery for losses incurred as a result of defendants' alleged misrepresentations and omissions with respect to" a single course of conduct "whose revelation resulted in declines in the price of . . . securities").

- 8 -

Mr. Nayani argues that Ms. Jordan is atypical because she is subject to a unique defense. Memo. of Law in Opp. to Mot. of Brittny Jordan ("Nayani Opp."), ECF No. 34, at 3-4. Ms. Jordan is a health care provider who was employed by LifeStance at the time of its IPO. Id. at 3-4. Because Ms. Jordan had this affiliation, Mr. Nayani argues, she had first-hand information regarding the allegations in the Complaint.

While Mr. Nayani does not specify exactly how this would make Ms. Jordan subject to a unique defense, Mr. Nayani's suggestion appears to be that Ms. Jordan could not have relied on LifeStance's alleged omissions since she knew about LifeStance's finances. But this potential defense is facially implausible. As Ms. Jordan testified, her role at LifeStance did not provide her with any first-hand knowledge of LifeStance's finances. Conference of Oct. 30, 2022, Tr. 15:17-19. And her occupation as a healthcare provider would not necessarily give her special knowledge of broad market trends in the industry. Thus, Ms. Jordan's prior employment by LifeStance does not defeat her prima facie showing of typicality.

ii.   Adequacy

While both movants have made a prima facie showing of typicality, only Mr. Nayani has made a prima facie showing of adequacy.

Rule 23 requires that a representative plaintiff in a class action must "fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). This requirement is satisfied only if "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).

Ms. Jordan has made a prima facie showing of satisfying these three conditions of adequacy. As counsel, Ms. Jordan has chosen Bronstein, Gewirtz & Grossman, LLC ("Bronstein") and Pomerantz, LLP ("Pomerantz"), two firms that are greatly experienced in bringing securities class actions on behalf of plaintiffs. See Lieberman Decl., ECF No. 17, Ex. E (providing a resume for Pomerantz, LLP). Moreover, since Ms. Jordan is now only related to LifeStance as a shareholder, and she does not have any relationship with either the individual defendants or the underwriter defendants, there is no conflict of interest between her and the class.[2] And while Ms. Jordan's total loss of approximately $608 is

---

[2] Mr. Nayani argues that Ms. Jordan has a conflict of interest, because she was employed by LifeStance during 2021. Nayani Opp., ECF No. 34, at 3. But Ms. Jordan represents that she left LifeStance around August 1, 2021. Mem. of Law in Further Support of Brittny Jordan and Opp. to Nizar Nayani, ECF No. 37, at

rather low, for reasons more fully explained below, the Court would not consider Ms. Jordan to be inadequate simply for the small amount she has at stake.

The inquiry into adequacy, however, does not stop once these three boxes have been checked. Courts must also consider such factors as the "available resources and experience of the proposed lead plaintiff," Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 191 (S.D.N.Y. 2008), in order to ensure the plaintiff can "act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001). This part of the inquiry is particularly important when a moving plaintiff is an individual investor, as Ms. Jordan is. Perez v. HEXO Corp., 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020).

The Court has significant doubts that Ms. Jordan will manage and monitor counsel in the way that Congress envisioned when it enacted the PSLRA. Ms. Jordan does not have any experience managing attorneys in litigation. Conference of Oct. 30, 2022, Tr. 17:10-12. She did not negotiate her chosen counsel's fee of up to one-

---

8. Because Ms. Jordan is no longer employed by LifeStance, she no longer has in interest, in her capacity as an employee, in a favorable outcome for LifeStance.

third of the funds recovered in this case, even though this fee is high by the standards of securities class actions and higher than that of Mr. Nayani's chosen counsel. Conference of Oct. 30, 2022, Tr. 16:9-12. Ms. Jordan's answer to why she elected to be represented by two law firms, despite the risks of duplicative efforts and wasted class resources, was conclusory. Conference of Oct. 30, 2022, Tr. 20:5-6. And after Ms. Jordan had initially selected Bronstein as her chosen counsel, she exercised no input in selecting Pomerantz – rather than a different law firm – as co-counsel. Conference of Oct. 30, 2022, Tr. 20:22-21:2. Finally, Ms. Jordan's name was misspelled (as "Jordon") throughout her initial moving papers, including her own certification and declaration. See Mot. to Appoint Brittny Jordan as Lead Plaintiff, ECF No. 14; Mem. of Law in Support of Brittny Jordan, ECF No. 16; Lieberman Decl., ECF No. 17. Even if Ms. Jordan did not personally prepare the pages that misspelled her name, her failure to correct the misspelling prior to filing indicates a certain lack of care or diligence on her part.

Mr. Nayani, by contrast, has made a prima facie showing of satisfying the conditions of adequacy enumerated above as well as the further requirement that he supervise counsel like a "real" client. Mr. Nayani has selected as counsel another well-known player in securities class actions, Robbins Geller. He is related

- 12 -

to LifeStance only as a shareholder and has no relations with the individual defendants or the underwriter defendants. And Mr. Nayani has demonstrated a willingness and ability to supervise counsel on behalf of the class. He has experience managing attorneys. Conference of Oct. 30, 2022, Tr. 5:15-17. He negotiated the fee to be awarded to his chosen counsel. Conference of Oct. 30, 2022, Tr. 6:21-7:5. He also negotiated to ensure that counsel would continue to represent him individually, even if the class is not certified, which also evidences a willingness and ability to manage his relationship with counsel so that it promotes his interests (and, by extension, those of the class). Conference of Oct. 30, 2022, Tr. 10:7-12. Finally, Mr. Nayani has shown an active interest in this case, through collaborating to file the Complaint and through meeting with attorneys on a weekly basis to discuss the matter. Tr 12:5.

The defendants argue that neither Mr. Nayani nor Ms. Jordan should be appointed as lead plaintiff because neither one is adequately incentivized to pursue this action on behalf of the class, since neither suffered more than a modest loss. Joint Mem. Opp. Mots. for Appointment of Lead Plaintiff, ECF No. 38, at 4. But this argument is at odds with both the text and the purpose of PSLRA, not to mention one of the main purposes of aggregate litigation itself. Even if all moving plaintiffs have only a small

- 13 -

financial interest at stake, one of the movants might nonetheless satisfy Rule 23's adequacy requirement if he demonstrates his willingness and ability to represent the interests of the class.

The PSRLA's lead plaintiff provisions do not erect a barrier that prevents any plaintiff with a small stake from representing a class. Instead, the PSLRA responded to a particular problem with a precise solution. The problem was the "race to the courthouse," in which the first plaintiff to file (typically, a law firm's hapless recruit) would represent the class by default. H.R. Conf. Rep. 104-369 at 732 (1995). The solution was to establish an orderly, competitive process through which aspiring class representatives could prove their merits. Plaintiffs with low stakes are not disqualified from entering that competition.

This is evident from the text of the PSLRA. The PSLRA establishes relative tests, i.e., inquiries into which of the moving plaintiffs is most qualified to represent the class. For example, the PSLRA states that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i) (emphasis added). And when the PSLRA imposes a presumption of appointing the person who "in the determination of the court has the largest financial interest in the relief sought

- 14 -

H.R. Conf. Rep. 104-369 at 732 (1995).

As the House Report shows, when Congress enacted the PSLRA, its concern was to "curtail the vice of 'lawyer-driven' litigation, i.e., lawsuits that, because of the huge potential fees available in contingent securities fraud actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders ostensibly represented." Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. and Securitization, LLC, 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009). It did this by establishing a competitive process that a qualified, motivated entrant – perhaps even one with a small personal stake – might win.

Declining to appoint a movant as lead plaintiff simply because he has little at stake would also be inconsistent with a key purpose of aggregate litigation. The raison d'etre of the class action is to bring justice to individual plaintiffs who have meritorious claims but relatively little at stake. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). It would be altogether incongruous to decline to appoint a lead plaintiff simply because the candidate class representatives are

- 16 -

the very people who are supposed to benefit from proceeding as a class.

The Court does not mean to suggest that there could <u>never</u> be a case in which no lead plaintiff should be appointed because no moving plaintiff will adequately represent the class. <u>See, e.g.</u>, <u>Bosch v. Credit Suisse Grp. AG</u>, No. 22-cv-2477, 2022 WL 4285377, at *6 (E.D.N.Y. Sept. 12, 2022) (declining to appoint a lead plaintiff when the only movant was inadequate); <u>Guo v. Tyson Foods, Inc.</u>, No. 21-cv-00552, 2022 WL 5041798, at *5 (E.D.N.Y. Sept. 30, 2022) (declining to appoint a lead plaintiff when the two movants were both inadequate). But this is not that case. While Mr. Nayani has relatively little at stake, he has shown his willingness and ability to represent the class in other ways.

Thus, Mr. Nayani is the only movant who has made a <u>prima facie</u> showing of satisfying the requirements of Rule 23. He is therefore entitled to the presumption of being the most adequate plaintiff.

3.   <u>Whether the Presumption is Rebutted</u>

The presumption of greatest adequacy is rebutted if the presumptive lead plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). For the reasons provided above, Mr. Nayani has demonstrated that he

- 17 -

will fairly and adequately represent the interests of the class, and no unique defense has seriously been raised to his claim. The presumption in Mr. Nayani's favor is therefore not rebutted, and the Court appoints him as lead plaintiff.

III. <u>Lead Counsel</u>

The PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 77z-1(a)(3)(B)(v). "The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" <u>Kaplan v. S.A.C. Capital Advisors, L.P.</u>, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) (quoting <u>Varghese v. China Shenghuo Pharm. Holdings, Inc.</u>, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)). Here, Robbins Geller has recovered more than $3 billion for investors in securities class actions over the past two years, and it has obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eight, Tenth, and Eleventh Circuits. <u>See</u> Mem. of Law in Support of Nizar Nayani, ECF No. 27, at 6. Further, the Court has examined Robbins Geller's retainer agreement with Mr. Nayani, and while that agreement is not binding on the Court, it reinforces the Court's confidence in Robbins Geller's professionalism. Thus, the Court approves Mr. Nayani's choice of counsel.

- 18 -

IV.   <u>Conclusion</u>

For the foregoing reasons, the Court hereby appoints Nizar Nayani as lead plaintiff and Robins Geller as lead counsel. Now-appointed lead counsel and counsel for the defendants should jointly call the Court, by no later than November 21, 2022, to set a schedule for the filing of an amended complaint and any motion to dismiss.

The Clerk of the Court is respectfully directed to close docket numbers 14 and 26 on the docket of this case.

SO ORDERED.


New York, NY
November __, 2022

JED S. RAKOFF, U.S.D.J.

- 19 -