# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIZAR S. NAYANI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:22-cv-06833-JSR |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAW

**ROPES & GRAY LLP**
Martin J. Crisp
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-5000
Fax: (212) 596-9090
Martin.Crisp@ropesgray.com

Daniel V. McCaughey (admitted *pro hac vice*)
William T. Davison (admitted *pro hac vice*)
Cole A. Goodman (admitted *pro hac vice*)
Sara A. Bellin (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street

**DAVIS POLK & WARDWELL LLP**
Brian S. Weinstein
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Brian.Weinstein@davispolk.com

*Attorney for Defendants Morgan Stanley & Co., LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Jefferies LLC, TPG Capital BD, LLC, UBS Securities LLC, and William Blair & Company, L.L.C.*

Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
Daniel.McCaughey@ropesgray.com
William.Davison@ropesgray.com
Cole.Goodman@ropesgray.com
Sara.Bellin@ropesgray.com

*Attorneys for Defendants LifeStance Health Group, Inc., Michael K. Lester, J. Michael Bruff, Robert Bessler, Darren Black, Jeffrey Crisan, William Miller, Jeffrey Rhodes, Eric Shuey, and Katherine Wood*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.  PLAINTIFF'S OPPOSITION CONFIRMS THAT HIS CLAIMS SOUND IN
    FRAUD ................................................................................................................... 2

II.  PLAINTIFF CANNOT RELY ON CONCLUSORY CONFIDENTIAL
     WITNESS ALLEGATIONS UNDER ANY STANDARD OF REVIEW ........................ 3

III.  LIFESTANCE DID NOT HAVE A DUTY TO DISCLOSE INTERIM DATA
      ON CLINICIAN RETENTION ................................................................................. 5

IV.  PLAINTIFF'S ITEM 303 CLAIM IS NOT SAVED BY CHARACTERIZING
     CLINICIAN TURNOVER AS AN "EVENT" OR "UNCERTAINTY" ........................... 8

V.  LIFESTANCE'S RISK DISCLOSURES WERE NOT "HALF-TRUTHS".................... 10

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arfa v. Mecox Lane Ltd.*,
  2012 WL 697155 (S.D.N.Y. Mar. 5, 2012), *aff'd*, 504 F. App'x 14 (2d Cir.
  2012) ....................................................................................................................6

*In re AT&T/DirecTV Now Sec. Litig.*,
  480 F. Supp. 3d 507 (S.D.N.Y. 2020), *aff'd sub nom. Steamfitters Loc. 449
  Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022)..............................5

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) .........................................................................4

*Caiafa v. Sea Containers Ltd.*,
  2008 WL 11516813 (S.D.N.Y. May 15, 2008), *aff'd*, 331 F. App'x 14 (2d Cir.
  2009) ....................................................................................................................2

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
  2021 WL 4084572 (S.D.N.Y. Sept. 7, 2021), *vacated and remanded sub nom.
  Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767
  (2d Cir. Dec. 20, 2022) .....................................................................................9, 10

*In re Coty Inc. Sec. Litig.*,
  2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) .................................................. *passim*

*Diehl v. Omega Protein Corp.*,
  339 F. Supp. 3d 153 (S.D.N.Y. 2018).....................................................................10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013).....................................................................10

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017).......................................................................2

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)....................................................................2, 8

*In re IAC/InterActiveCorp Sec. Litig.*,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010).......................................................................4

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)......................................................................................3

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016)......................................................................................8

*Nguyen v. MaxPoint Interactive, Inc.*,
   234 F. Supp. 3d 540 (S.D.N.Y. 2017)...............................................................................6, 8

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012)................................................................................................8

*Pearlstein v. Blackberry Ltd.*,
   93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd sub. nom. Cox v. Blackberry Ltd.*,
   660 F. App'x 23 (2d Cir. 2016) ...........................................................................................7

*Rudman v. CHC Grp. Ltd.*,
   217 F. Supp. 3d 718 (S.D.N.Y. 2016)..................................................................................9

*SEC v. Am. Growth Funding II, LLC*,
   2018 WL 6322145 (S.D.N.Y. Dec. 4, 2018) .......................................................................7

*Stadnick v. Vivint Solar, Inc.*,
   861 F.3d 31 (2d Cir. 2017)...............................................................................................7, 8

*In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation*,
   202 F. Supp. 2d 8 (S.D.N.Y. 2001).....................................................................................6

*In re TVIX Sec. Litig.*,
   25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v.*
   *Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014)..............................................................3

*United States v. Dauray*,
   215 F.3d 257 (2d Cir. 2000)................................................................................................9

*Willard v. UP Fintech Holding Ltd.*,
   527 F. Supp. 3d 609 (S.D.N.Y. 2021)............................................................................6, 7, 9

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998)..............................................................................................10

## Statutes and Rules

15 U.S.C § 77k(a) ....................................................................................................................6

Fed. R. Civ. P. 8......................................................................................................................1

Fed. R. Civ. P. 9(b) ..............................................................................................................2, 3

Fed. R. Civ. P. 12(b)(6)...........................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiff's opposition (the "Opposition" or "Opp.") to Defendants' Motion to Dismiss (the "Motion" or "MTD") attempts to recast the allegations in his Complaint to avoid Second Circuit precedent requiring dismissal of his Section 11 and tag-along Section 15 claims.  But the Opposition cannot rewrite the law or the allegations in the Complaint.[1]  Those allegations depict a company whose workforce had begun to be impacted by the inherently unpredictable effects of the COVID-19 pandemic around the time of its IPO, and that disclosed what it could about the resulting attrition of its clinicians once it was able to compile and evaluate the relevant data.  As a matter of law, Section 11 did not require Defendants to speculate about the eventual direction of clinician retention data in real time, and thus Plaintiff's claims should be dismissed.

*First*, the language used in the Opposition, including that Defendants purportedly "*withh[e]ld*" data on clinician retention, confirms that Plaintiff's claims sound in fraud but are not pleaded with the requisite particularity.  Opp. 19.  *Second*, Plaintiff's allegations fail under Rule 8 as well because he does not plead any information about any confidential witnesses to support that they would possess the information alleged.  Without this information, his conclusory assertion that LifeStance's management knew of an increase in clinician turnover pre-IPO because of purported meetings discussing clinician "data" is completely implausible.  Compl. ¶ 55.  *Third*, the Opposition offers no compelling response to Defendants' argument that the disclosure of real-time data on clinician retention, culled immediately before an IPO, is simply unworkable and not required under the law.  *Finally*, federal law recognizes no material distinction between a "trend" and an "event" or "uncertainty," and Plaintiff cannot avoid the application of clear precedent

---

[1] Unless otherwise noted, all defined terms shall have the same meaning as in the Motion, all alterations, citations, and internal quotation marks are omitted, and all emphasis is added.

confirming that events occurring in the "weeks before [an] IPO" are not actionable under Item 303 of Regulation S-K. *Id.* ¶ 33. Accordingly, consistent with Second Circuit precedent, the Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION CONFIRMS THAT HIS CLAIMS SOUND IN FRAUD

Despite Plaintiff's protestations that his allegations are "as consistent with negligence . . . as with fraud," Opp. 14, the Opposition confirms that his Section 11 claim is predicated on the theory that Defendants concealed an alleged material decrease in clinician retention that they learned of mere weeks before LifeStance's IPO. *See, e.g.*, *id.* at 19 (asserting "there was no legitimate reason for Defendants *to withhold*" clinician retention metrics). Unlike the cases he cites, Plaintiff's allegations that Defendants knew but withheld information on clinician retention are clearly associated with fraud. *Compare In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021) (applying Rule 9(b) where plaintiffs' "theory" rested on the defendants' alleged "knowledge" that an important customer would not fulfill purchase agreement), *with Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558–59 (S.D.N.Y. 2017) (holding Rule 9(b) did not apply because Section 11 allegations were not premised on knowledge). Plaintiff therefore must plead his Section 11 claim—including Defendants' knowledge—with particularity under Rule 9(b).

Plaintiff also attempts to avoid his obligation to plead Defendants' intent by arguing that the courts in the cases cited by Defendants incorrectly interpreted the law. Even if the Second Circuit had not already affirmed this principle, *see Caiafa v. Sea Containers Ltd.*, 2008 WL 11516813, at *5 (S.D.N.Y. May 15, 2008), *aff'd*, 331 F. App'x 14 (2d Cir. 2009), Plaintiff must still plead Defendants' knowledge with particularity because his claim is premised on what

Defendants allegedly knew (and concealed) prior to the IPO. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (where plaintiffs' allegations sound in fraud, Rule 9(b) requires they "allege facts that give rise to a strong inference of fraudulent intent"). As he has not done so, his claims must be dismissed under Rule 9(b). *See* MTD 11.

## II. PLAINTIFF CANNOT RELY ON CONCLUSORY CONFIDENTIAL WITNESS ALLEGATIONS UNDER ANY STANDARD OF REVIEW

Plaintiff describes purported meetings with largely unnamed "C-suite" executives in May 2021 no less than six times in the Opposition to claim that unnamed members of LifeStance's senior management had actual knowledge at the time of the IPO of increasing clinician turnover in Q2 2021. *See, e.g.*, Opp. 3, 6, 10, 16, 20, 24–25. Plaintiff's repetition is not surprising, as his Section 11 claim fundamentally relies on these conclusory and unsupported allegations.[2] Plaintiff's only other allegation supporting management's knowledge of a pre-IPO increase in clinician turnover is Defendant Bruff's ***post-IPO*** statement made ***after*** LifeStance analyzed its financial results for Q2 2021 that LifeStance "saw" an increase in clinician turnover "midway" through Q2 2021, Compl. ¶ 57, which does not provide any information about *who* observed this increase or *when* they observed it (and thus cannot corroborate Plaintiff's allegations of actual knowledge). *See In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *8 (S.D.N.Y. Mar. 29, 2016) ("[P]ost-IPO financial results cannot be used to support Plaintiffs' Section 11 claim."); *see also In*

---

[2] Plaintiff repeatedly responds to Defendants' Motion by asserting that his case is distinguishable because he has pled an Item 303 claim. In doing so, he fails to adequately respond to Defendants' arguments that: (1) Plaintiff has failed to plead a material negative impact on LifeStance's financial performance in Q2 2021, *see* Opp. 12 n.2 (arguing that "Item 303 specifically contemplates a material *future* impact") (emphasis in original); (2) LifeStance was under no obligation to disclose intra-quarter data on clinician retention, *see id.* at 18 (asserting LifeStance was required to disclose such data because "Item 303 applies"); and (3) predicting the increase or impact of clinician resignations was impossible under the circumstances, *see id.* at 20 (arguing this impossibility "concedes the necessity of disclosure under Item 303").

*re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 450 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).

Plaintiff cannot rely on allegations sourced from unnamed confidential witnesses to fill this critical gap. Even under the notice pleading standard, Plaintiff must describe his source "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2020 WL 1950783, at *7 (E.D.N.Y. Apr. 22, 2020) (applying plausibility standard to confidential witness allegations in Section 11 claim); *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) (holding that allegations by confidential informants "stated in the most general of terms and without any facts that might corroborate" them are insufficient to state a claim under Rule 12(b)(6)). Because Plaintiff fails to provide *any* information about the anonymous individual who must have been the purported source of the allegations concerning pre-IPO meetings, he has not plausibly pled that those meetings occurred, nor what was discussed. *Cf. Blue Apron*, 2020 WL 1950783, at *7 (finding description of "Quality Associate for Blue Apron from January to October 2017, based at Linden, New Jersey fulfillment center" to be sufficient).

Even if Plaintiff were entitled to rely on his confidential witness allegations (he is not), Plaintiff fails to address Defendants' argument that the unsourced allegations regarding what was discussed at the May 2021 meetings are conclusory and rely upon innuendo. *See* Compl. ¶ 55 (alleging that meeting attendees discussed only "data about the reasons for the ongoing increase in clinician resignations"); *Coty*, 2016 WL 1271065, at *7 (holding that plaintiff failed to plausibly allege a known trend based on confidential informant's meetings with the "President of Coty Beauty Americas" to discuss "declining sales trends, customer disinterest, and competitor risks"). Because Plaintiff's allegations of contemporaneous knowledge are vague and unreliable, the

theory underpinning his claims—that LifeStance's senior management knew that clinician turnover was (i) increasing before the IPO and (ii) doing so at such a rate that it would likely have a material impact on LifeStance's financial condition—is not plausible.

### III.   LIFESTANCE DID NOT HAVE A DUTY TO DISCLOSE INTERIM DATA ON CLINICIAN RETENTION

The Opposition concedes that LifeStance did not misrepresent its 87% clinician retention rate as "prevailing as of March 31, 2021," and thus the Registration Statement's reference to the Company's historical clinician retention rate was not "inaccurate."  *See* Compl. ¶ 69; Opp. 2. Instead, Plaintiff argues that the Registration Statement was misleading because Defendants had a duty to speak fully about clinician retention but failed to disclose that retention rates were allegedly declining by the time of the IPO.  Opp. 9, 17.

This argument fails for three reasons.  ***First***, the 87% statistic did not create a duty to speak further on clinician retention because LifeStance specified that the statistic applied to a past time period (which Plaintiff does not contest), *see* Compl. ¶ 68, and then instructed investors ***not to rely*** on quarterly results for future projections, *see* Bellin Decl. Ex. A, at 15, ECF No. 48.  Despite Plaintiff's assertions to the contrary, *Coty* is directly on point: a statistic about past performance (in *Coty*, an increase in income and revenues from the sale of color cosmetics over a nine-month period ending roughly two months prior to the IPO) did not create any promise or representation about ***current or future*** performance, even if that statistic was "declining before the Registration Statement."  2016 WL 1271065, at *5–7 (noting it would have reached the same conclusion even if plaintiff had adequately alleged sales were actually declining at the time of the IPO).

***Second,*** Plaintiff's attempt to distinguish between interim disclosure obligations for financial and non-financial data is unsupported by existing case law, as the same risks and logic apply regardless of how the data is characterized.  *See, e.g.*, *In re AT&T/DirecTV Now Sec. Litig.*,

480 F. Supp. 3d 507, 529 (S.D.N.Y. 2020) (rejecting claim that the defendant "was required to disclose real-time churn or low engagement rates in addition to providing quarterly subscription totals," *i.e.*, non-financial data), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022); *Arfa v. Mecox Lane Ltd.*, 2012 WL 697155, at *8–9, 9 n.1 (S.D.N.Y. Mar. 5, 2012) (holding defendants were not required to disclose "data" concerning declining rates of growth in company's online platform, among other alleged trends, for the "quarter in progress"), *aff'd*, 504 F. App'x 14 (2d Cir. 2012).[3]

Plaintiff also contends that these cases are inapposite because compiling clinician retention data does not require "data analysis or the nuanced application of intricate accounting principles," since LifeStance purportedly tracks clinician turnover through "exit interviews." Opp. 19. This assertion contradicts the Complaint's own allegations regarding the multitude of factors affecting clinician retention, Compl. ¶¶ 33–48, and ignores one of the core requirements of Section 11 and Item 303—that the omission be material. *See* 15 U.S.C § 77k(a) (imposing liability for untrue statements or omissions of "***material***" facts); *Willard*, 527 F. Supp. 3d at 619 (noting Item 303 requires disclosure if trend is "reasonably likely to have ***material effects*** on the registrant's financial condition or results of operations," akin to a "more-likely-than-not standard"). Assessing whether the effects of increased clinician turnover were material obviously involves "data analysis or the nuanced application of intricate accounting principles." Opp. 19. And the existence of an exit interview policy alone does not demonstrate that LifeStance or any member of its senior management would have had actual knowledge of a material, aggregate increase in clinician

---

[3] While Plaintiff asserts that *Arfa* and *In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001), are "older," Opp. 17 n.8, he does not cite any cases rejecting their reasoning or challenge that *Arfa* was affirmed by the Second Circuit. *See Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 620–21 (S.D.N.Y. 2021) (citing *Arfa* and *Turkcell*); *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017) (same).

turnover before the IPO. *See Coty*, 2016 WL 1271065, at \*7 (holding assertion that senior management "monitored" amount of inventory in real time through "certain technological platforms" did not "raise a plausible inference that any particular member of Coty management had knowledge of any particular decline in sales").

Because liability under Item 303 depends on management's actual knowledge that a trend is reasonably likely to become material, courts have rightly recognized that alleging the mere existence of data at the time of disclosure is not enough; a plaintiff instead must allege the data existed long enough for management to analyze the trend and conclude that it was material. *See Willard*, 527 F. Supp. 3d at 620 (explaining that Item 303 does not require "real-time disclosures" because they could be "incomplete and misleading"); *Pearlstein v. Blackberry Ltd.*, 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015) ("two- and five-month periods" were "insufficient to establish a reportable trend" given market "volatility"), *aff'd sub. nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23 (2d Cir. 2016). For the reasons cited in Defendants' Motion—including that the increase allegedly began in "May 2021,"[4] when LifeStance filed its Form S-1—the real-time analysis and disclosure in the Registration Statement of clinician turnover and its alleged immediate impact on LifeStance's financial operations was unworkable and could have exposed the Company to liability for making an inaccurate disclosure. *See* MTD 15–19.

***Third***, applying the *Stadnick* test emphasized by Plaintiff, the disclosure of a very recent downturn in clinician retention would not have significantly altered the total mix of information available to investors ***at the time of the IPO***. *See SEC v. Am. Growth Funding II, LLC*, 2018 WL

---

[4] Although Plaintiff argues that the Complaint alleges the increase in clinician turnover began "no later than May 2021," Opp. 19–20, Plaintiff's assertion (1) contradicts other allegations in the Complaint stating the increase began "in the weeks before the IPO," Compl. ¶ 33, and (2) rests on two vague and conclusory statements about certain data allegedly collected (but not reviewed or analyzed) in "early 2021," *id.* ¶¶ 41, 55.

6322145, at *2 (S.D.N.Y. Dec. 4, 2018) ("Materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred."). Plaintiff does not contest that for Q2 2021, LifeStance exceeded analyst expectations and reported a year-over-year *increase* in the financial performance metrics allegedly affected by clinician turnover. *See* MTD 7; *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017) (holding omission of third quarter results from IPO registration statement was not material where "key operating metrics" had "increased substantially from the second quarter of 2014 to the third and had more than doubled since the second quarter of 2013"). And the Registration Statement apprised investors of the material risks associated with clinician turnover such that no "reasonable investor could consider [a very recent turnover in clinician retention] important in light of adequate cautionary language set out in the same [filing]." *HEXO*, 524 F. Supp. 3d at 303; MTD 19–22.

## IV.    PLAINTIFF'S ITEM 303 CLAIM IS NOT SAVED BY CHARACTERIZING CLINICIAN TURNOVER AS AN "EVENT" OR "UNCERTAINTY"

Plaintiff does not dispute that "events occurring within a two month period of time do not establish a trend for purposes of the disclos[ur]es required by Item 303." *See Nguyen*, 234 F. Supp. 3d at 546. He instead characterizes the alleged decline in clinician retention as only an "event" or "uncertainty." Opp. 23–24. But this argument—besides being nonsensical when describing a purported decline over time—draws distinctions where none exist in the law.

Courts frequently use the terms "trend" and "uncertainty" interchangeably as distinguishable from isolated incidents that would not be actionable under Item 303. *See, e.g.*, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 121 (2d Cir. 2012) (holding "defect issue" was a "known *trend or uncertainty*"); *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 20 (S.D.N.Y. 2016) (ruling SEC investigation was non-actionable "isolated incident," not a "known *trend or uncertainty*"). Indeed, the concept of a "trend" is the touchstone for Item 303

liability precisely because requiring the disclosure of every event that occurs immediately before an IPO is contrary to the securities laws and would result in potentially misleading disclosures. *See Willard*, 527 F. Supp. 3d at 620;[5] *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results.").

To the extent courts have emphasized events under Item 303, they have described a single, clear event in time whose financial impact was self-evident, not a series of individual events whose financial impact only becomes clear over time. *See, e.g.*, *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2021 WL 4084572, at *2, *7, *10 (S.D.N.Y. Sept. 7, 2021) (discussing widely reported 2016 change to a regulation first adopted in 2008), *vacated and remanded sub nom. Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767 (2d Cir. Dec. 20, 2022); *Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 730 (S.D.N.Y. 2016) (finding no Item 303 liability where company disclosed "unusual event" of helicopter grounding). Plaintiff does not allege a mass exodus of clinicians at a single moment, but an uptick of resignations occurring "in the weeks before the IPO" due to a confluence of colliding factors. *See* Compl. ¶¶ 33, 37–44. Accordingly, Plaintiff cannot simply brush aside settled case law stating an increase in clinician turnover occurring mere weeks before an IPO is not actionable under Item 303. *See, e.g.*, *Willard*, 527 F. Supp. 3d at 620; *Coty*, 2016 WL 1271065, at *6.

Lastly, Plaintiff is wrong that Defendants admitted they "had no choice" under Item 303 but to disclose the alleged Q2 2021 increase in clinician turnover because it was "unclear . . . what impact the increase would have on the Company's financials." Opp. 10. Plaintiff presupposes

---

[5] Plaintiff insists that *Willard* is distinguishable because the court conducted a bifurcated analysis of a "trend" versus an "event." Opp. 21 n.10. But the court did no such thing. Rather, the court noted that plaintiffs "fail[ed] to allege the existence of any causal ***event***" to support its conclusion that the alleged declines in trading volume did not constitute a "***trend***." *Willard*, 527 F. Supp. 3d at 620.

that the increase in clinician turnover was a known trend, event, or uncertainty—which, as a matter of law, it was not. *See Moab*, 2022 WL 17815767, at \*2 (requiring disclosure only "[w]here a trend, demand, commitment, event or uncertainty is known"). Since Plaintiff cannot meet this threshold requirement, he has failed to state a plausible claim for relief under Item 303.

## V.    LIFESTANCE'S RISK DISCLOSURES WERE NOT "HALF-TRUTHS"

Unable to counter the robust cautionary language in the Registration Statement, Plaintiff attempts to advance a new allegation that LifeStance's risk disclosures were misleading because they did not indicate that clinician turnover was already increasing at the time of the IPO. Opp. 21–22. But the Complaint alleges only that these disclosures did not meaningfully advise investors "of the risks associated with the increase in clinician turnover," Compl. ¶ 94, not that they were misleading. Because Plaintiff cannot amend the Complaint—for the third time—through the Opposition, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), the Court should decline to consider this new claim.

Even assuming *arguendo* that, as Plaintiff asserts, LifeStance's risk disclosures were generic (they were not), "[g]eneric risk disclosures . . . are unlikely to mislead a reasonable investor." *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 164 (S.D.N.Y. 2018). And as discussed *supra*, the material risks associated with clinician turnover—its impact on LifeStance's financial growth—were not already occurring at the time of the IPO. *Cf. In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (finding risk disclosures to be misleading where registration statement did not disclose alleged trends "***had already had a negative impact on the Company's revenues and revenue growth***").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss, ECF No. 46, and dismiss the Complaint in its entirety with prejudice.

Dated: March 6, 2023                                  Respectfully submitted,


*/s/ Martin J. Crisp*                                */s/ Brian S. Weinstein*
**ROPES & GRAY LLP**                                 **DAVIS POLK & WARDWELL LLP**
Martin J. Crisp                                      Brian S. Weinstein
1211 Avenue of the Americas                          450 Lexington Avenue
New York, NY 10036                                   New York, NY 10017
Tel: (212) 596-5000                                  Tel: (212) 450-4000
Fax: (212) 596-9090                                  Brian.Weinstein@davispolk.com
Martin.Crisp@ropesgray.com

                                                     *Attorney for Defendants Morgan Stanley & Co.,*
Daniel V. McCaughey (admitted *pro hac vice*)        *LLC, Goldman Sachs & Co. LLC, J.P. Morgan*
William T. Davison (admitted *pro hac vice*)         *Securities LLC, Jefferies LLC, TPG Capital*
Cole A. Goodman (admitted *pro hac vice*)            *BD, LLC, UBS Securities LLC, and William*
Sara A. Bellin (admitted *pro hac vice*)             *Blair & Company, L.L.C.*
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
Daniel.McCaughey@ropesgray.com
William.Davison@ropesgray.com
Cole.Goodman@ropesgray.com
Sara.Bellin@ropesgray.com

*Attorneys for Defendants LifeStance Health*
*Group, Inc., Michael K. Lester, J. Michael Bruff,*
*Robert Bessler, Darren Black, Jeffrey Crisan,*
*William Miller, Jeffrey Rhodes, Eric Shuey, and*
*Katherine Wood*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing (NEF).



Dated: March 6, 2023                    */s/ Sara A. Bellin*
                                        Sara A. Bellin