UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIZAR S. NAYANI, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

-v-

LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,

Defendants.

22-cv-6833 (JSR)

MEMORANDUM ORDER

---

JED S. RAKOFF, U.S.D.J.:

This is a putative class action filed by plaintiff Nizar Nayani against defendants LifeStance Health Group, Inc. ("LifeStance"), a firm that provides mental health services, nine of LifeStance's officers and directors (the "Individual Defendants"), and seven underwriters of LifeStance's initial public offering ("IPO"). The First Amended Complaint ("FAC") alleges that LifeStance filed a materially inaccurate registration statement (the "Registration Statement") in preparation for its IPO.

1

On January 18, 2023, defendants moved to dismiss the FAC. After full consideration of the parties' written submissions and oral arguments, the Court denied defendants' motion by "bottom-line order" dated April 10, 2023. This memorandum reconfirms that order and explains the reasoning behind its rulings.

I.    Plaintiff's Allegations

LifeStance is a company that provides mental health services throughout the United States. FAC, ¶ 21. In 2021, LifeStance's then-owners decided to take it public. On May 17, 2021, in preparation for LifeStance's IPO, LifeStance filed a Registration Statement on Form S-1, which became effective on June 9, 2021. Id. at ¶ 25-26.

As the Registration Statement itself noted, LifeStance's retention of its clinicians was central to its success. Id. at ¶ 28. The Registration Statement claimed that LifeStance had performed remarkably well on this metric, noting that LifeStance retained physicians at a rate of 87% between March 2017 and December 31, 2020, significantly above the industry average of 77%. Id. at ¶ 68.

Midway through the second quarter of 2021, however, LifeStance began to see a marked increase in clinician turnover. FAC, ¶ 57. Since physician retention was so important to LifeStance's success, this increase in turnover allegedly was

discussed among high levels of LifeStance's management. Id. at ¶¶ 34, 54. But LifeStance did not disclose the increase in clinician turnover in its Registration Statement.

LifeStance went public on June 10, 2021, at an initial price of $18.00 per share. FAC, ¶ 27. On August 11, 2021, LifeStance disclosed its financial results for the second quarter of 2021 and revised its financial projections for the second half of 2021. Id. at ¶¶ 97-111. LifeStance revised its expected profit margin for the second half of 2021 downwards by between 7.4% and 9.5% and its EBITDA by between 25.9% and 33.2%, attributing these declines to its struggles with clinician retention. Id. at ¶ 107. On this news, LifeStance's stock declined by 46%, eliminating more than $2.5 billion of market value. Id. at ¶ 109

The First Amended Complaint asserts two claims:

(1) That all defendants violated section 11 of the Securities Act by filing a registration statement that was materially inaccurate, due to its failure to disclose the decline in clinician retention that was observed during Q2 2021;

(2) That the Individual Defendants violated section 15 of the Securities Act because (a) they were directly responsible for LifeStance as its controlling persons and (b) LifeStance violated section 11.

II. Discussion

3

A. <u>Standard of Review</u>

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Twombly</u>, 550 U.S. at 570.

Additionally, defendants argue that the FAC must be pled with particularity under Rule 9(b). Rule 9(b), of course, applies to a claim that alleges fraud, Fed. R. Civ. P. 9(b), and the defendants argue that plaintiff's allegations "sound in fraud" because the FAC alleges that the defendants <u>knew</u> of a material decline in clinician retention but still touted LifeStance's historical clinician retention rate. <u>See</u> FAC, ¶¶ 121, 129.

This argument misconstrues both the plaintiff's complaint and the applicable law. The FAC expressly states that "it does not allege, and does not intend to allege, fraud or scienter, which are not elements of a § 11 [or § 15] claim, and any implication of fraud or scienter is disclaimed." FAC, ¶¶ 121, 129. Additionally,

the FAC alleges that defendants either knew or "should have known" that the pertinent statements were false -- allegations that are consistent with negligence. Finally, the allegations in the FAC simply track the elements of section 11, and a plaintiff cannot be held to allege fraud whenever he tracks those elements. See Fresno County Employees' Retirement Association v. comScore, Inc., 268 F. Supp. 3d 526, 559 (S.D.N.Y. 2017) ("[To] hold that bare recitations of the elements of the causes of action triggered Rule 9(b) would be contrary to the holding of the Court of Appeals in Rombach [v. Chang], 355 F.3d [164, 178 (2d Cir. 2004)], that claims under Section 11 need not sound in fraud."); In re Orion Sec. Litig., No. 08 CIV. 1328 (RJS), 2009 WL 2601952, at *1 (S.D.N.Y. Aug. 20, 2009) ("[T]hat a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud."). Thus, the FAC does not "sound in fraud," and its allegations will not be held to the heightened pleading requirements of Rule 9(b).

    B. Duty to Disclose

    The main issue raised by the defendants' motion is whether LifeStance had a duty to disclose its interim retention data in the Registration Statement. Defendants argue that LifeStance had no such duty for three independent reasons. Defendants assert that disclosure of the interim retention data was not needed to correct

any otherwise misleading statement, that the interim retention data was immaterial, and that LifeStance had no duty to disclose results between the close of two quarters. The Court is not persuaded by any of defendants' arguments.

1. Duty to Correct

Section 11 of the Securities Act does not impose a freestanding duty to disclose material information. Rather, section 11 imposes liability for omissions only when a registration statement "omit[s] to state a material fact required to be stated therein," or "omit[s] to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 36 (2d Cir. 2017).

Defendants argue that LifeStance's Registration Statement was not misleading, even without disclosure of LifeStance's interim retention data.[1] LifeStance's Registration Statement reported its historical retention rate -- dating from March 2017 through December 31, 2020 -- accurately. And LifeStance expressly warned its investors that its retention rate might change in the future. See Decl. of Sara A. Bellin in Supp. of Mot. to Dismiss, Ex. A, at 15 (warning that LifeStance's historical results are "not

---

[1] Defendants also argue that the interim retention data was not required to be stated on the Registration Statement under applicable regulations. Since the Court finds that the data was needed to make the Registration Statement not misleading, and since that finding independently supports a duty to disclose, the Court does not address that argument here.

necessarily indicative of results to be expected for the full year ending December 31, 2021 . . . ."). Thus, defendants argue, the Registration Statement was not misleading even without the interim retention data. See In re Coty Inc. Sec. Litig., 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (finding "no basis in securities law" for the proposition that a registration statement's recital of historical financial data "created an implicit promise that [a company's] net revenues and operating income would continue to increase.").

But "literal accuracy is not enough." Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S.Ct. 1318, 1331 (2015). Under section 11, "An issuer must as well desist from misleading investors by saying one thing and holding back another." Id. That duty is precisely what plaintiff alleges the defendants breached. Plaintiff alleges that the Registration Statement disclosed LifeStance's historical retention rate while holding back new data -- which LifeStance already possessed -- indicating that the rate had declined. FAC, ¶¶ 57, 59. These alleged facts differ from those presented in Coty, in which plaintiffs had failed to allege that the pertinent metric had declined at the time of the defendant company's IPO, see 2016 WL 1271065, at *6, and they support a duty to disclose.

## 2. Materiality

Next, defendants argue that LifeStance had no duty to disclose the interim retention data because that data was immaterial. Information is material when there is "a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." DeMaria v. Andersen, 318 F.3d 170, 180 (2d Cir. 2003). Defendants do not dispute that LifeStance's retention rate was an important metric of its success.[2] But they argue that LifeStance's interim retention data was immaterial in the context of the Registration Statement. As noted above, the Registration Statement contained extensive caveats about what that historical data implied for future performance. Thus, defendants argue, the Registration Statement already had warned investors of the risks that allegedly were reflected in the interim retention data.

Be that as it may, materiality "is rarely a basis for dismissal on the pleadings." In re Petrobras Sec. Litig., 116 F. Supp. 3d 368, 378 (S.D.N.Y. 2015). And a reasonable investor plausibly would have taken great interest in learning that

---

[2] Indeed, the Registration Statement itself proclaimed that LifeStance's "ability to attract and retain quality clinicians" was a "principal competitive factor" for it, FAC, ¶ 99, and LifeStance's CEO at the time of its IPO, Michael Lester, described LifeStance's number of clinicians as its "unit economic." Id. at ¶ 100.

LifeStance might not only cease to retain physicians in the future, but in fact was already struggling to retain them. Thus, the Court finds that the FAC plausibly pleads materiality.

### 3. Duty to Disclose Interim Results

Finally, defendants argue that LifeStance had no duty to disclose retention data between the end of two fiscal quarters, Q1 2021 and Q2 2021. According to defendants, the law does not require the "instantaneous disclosure" of intra-quarter data in an IPO, since such a duty would "require the immediate release of data without the benefit of reflection or certainty provided by the traditionally recognized reporting periods." In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig., 202 F. Supp. 2d. 8, 13 (S.D.N.Y. 2001). More specifically, defendants assert that there is no duty to disclose "financial data for a fiscal year in progress," even when that data was available before the registration statement became effective. See In re Focus Media Holding Ltd. Litig., 701 F. Supp. 2d 534, 540 (S.D.N.Y. 2010); Asay v. Pinduoduo Inc., 2020 WL 1530745, at *9 (S.D.N.Y. Mar. 30, 2020), aff'd, 2021 WL 3871269 (2d Cir. Aug. 31, 2021). While the retention data that plaintiff claims ought to have been disclosed was not, strictly speaking, financial information, defendants argue that the rationale for not imposing a duty to disclose interim financial results holds in this case. Like interim

financial information, they say, LifeStance's interim retention information was tentative and subject to revision.

But there is no bright-line rule that immunizes a company from the duty to disclose interim results. The applicable standard for whether interim results must be disclosed is simply the standard for materiality; a duty to disclose "arises if a reasonable investor would view the omission as 'significantly alter[ing] the "total mix" of information made available.'" Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 36 (2d Cir. 2017). Moreover, as explained above, the FAC plausibly pleads that the interim retention data was material. Thus, plaintiff's section 11 claim should not be dismissed simply because that claim is based on a duty to disclose interim results.

4. Conclusion

For the foregoing reasons, the FAC plausibly alleges that the Registration Statement was misleading because it omitted a material fact -- namely, LifeStance's interim retention rate. Thus, the Court denies defendants' motion to dismiss plaintiff's section 11 claim.

C. Control Person Violation

Plaintiff also asserts control person liability under section 15 of the Securities Act. In order to make out such a claim, the FAC must not only plead a primary violation -- such as a violation

10

of section 11 -- but also must allege "meaningful culpable conduct [by that individual] beyond mere status as a director or officer." P. Stolz Fam. P'ship, L.P. v. Daum, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001); rev'd in part on other grounds, 355 F.3d 92 (2d Cir. 2004); see also Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc., 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) ("As to the Section 15 claims against the individual defendants, it not sufficient, in the Court's view, to simply allege, as the Complaint does allege, that they were all either officers or directors of [the company] at relevant times.").

The FAC satisfies this additional requirement. The FAC alleges that the Individual Defendants had access to LifeStance's interim retention data and participated in LifeStance's IPO by, among other things, signing off on the Registration Statement. See FAC, ¶ 132. That alleged conduct goes beyond merely holding the status of being an officer or director. Thus, the Court finds that the FAC states a claim for control person liability under section 15.

III. Conclusion

For the reasons explained above, the Court hereby reconfirms the rulings made in its April 10 order. Accordingly, the defendants' motion to dismiss the FAC is denied.

SO ORDERED.

New York, NY  
May 4, 2023

_____  
JED S. RAKOFF, U.S.D.J