**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NIZAR S. NAYANI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:22-cv-06833-JSR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO**
**LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**ROPES & GRAY LLP**
Martin J. Crisp
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-5000
Fax: (212) 596-9090
Martin.Crisp@ropesgray.com

Daniel V. McCaughey (admitted *pro hac vice*)
William T. Davison (admitted *pro hac vice*)
Cole A. Goodman (admitted *pro hac vice*)
Sara A. Bellin (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street

**DAVIS POLK & WARDWELL LLP**
Brian S. Weinstein
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Brian.Weinstein@davispolk.com

*Attorney for Defendants Morgan Stanley & Co., LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Jefferies LLC, TPG Capital BD, LLC, UBS Securities LLC, and William Blair & Company, L.L.C.*

Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
Daniel.McCaughey@ropesgray.com
William.Davison@ropesgray.com
Cole.Goodman@ropesgray.com
Sara.Bellin@ropesgray.com

*Attorneys for Defendants LifeStance Health Group, Inc., Michael K. Lester, J. Michael Bruff, Robert Bessler, Darren Black, Jeffrey Crisan, William Miller, Jeffrey Rhodes, Eric Shuey, and Katherine Wood*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS ................................................................................................................................... 3

I.      LIFESTANCE'S IPO .................................................................................................. 3

II.     THE AMENDED COMPLAINT ALLEGES THAT LIFESTANCE ISSUED A
        COMPLETE CORRECTIVE DISCLOSURE ON AUGUST 11, 2021 ........................... 4

III.    NON-IPO SHARES WERE COMMINGLED WITH IPO SHARES ON
        DECEMBER 21, 2021 ................................................................................................ 5

ARGUMENT .......................................................................................................................... 7

I.      THE PUTATUVE CLASS SHOULD EXCLUDE POST-CORRECTIVE
        DISCLOSURE PURCHASERS ................................................................................... 8

II.     ALTERNATIVELY, AND AT A MINIMUM, THE CLASS SHOULD BE
        NARROWED TO THE PERIOD BEFORE NON-IPO SHARES ENTERED THE
        MARKET .................................................................................................................. 12

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*In re Bank of Am. Corp. Secs., Derivative, & Emp. Ret. Income Sec. Act (ERISA)*
*Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) ........................................................................................15

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)..........................................................................................................7

*Hawaii Structural Ironworkers Pens. Tr. Fund, Inc. v. AMC Ent'mt Holdings,*
*Inc.*,
  338 F.R.D. 205 (S.D.N.Y. 2021) ...................................................................................15, 16

*In re Honest Co. Sec. Litig.*,
  No. 221CV07405MCSPLA, 2023 WL 3190506 (C.D. Cal. May 1, 2023)......................13, 14

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)................................................................................................7, 13

*Klein v. A.G. Becker Paribas Inc.*,
  109 F.R.D. 646 (S.D.N.Y. 1986) ..........................................................................................8

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...............................................................................13

*New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
  477 F. App'x 809 (2d Cir. 2012) ..........................................................................................14

*In re Petrobras Secs.*,
  862 F.3d 250 (2d Cir. 2017)..........................................................................................3, 7, 11

*In re Petrobras Sec. Litig.*,
  150 F. Supp. 3d 337 (S.D.N.Y. 2015)...................................................................................11

*In re Prestige Brands Holdings, Inc. Securities Litigation*,
  No. 05 CIV. 6924, 2007 WL 2585088 (S.D.N.Y. Sept. 5, 2007)...........................................13

*In re Puda Coal Sec. Inc. Litig.*,
  No. 11 CIV. 2598 KBF, 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ...................................14

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
  No. 1:14-CV-6502-GHW, 2019 WL 652841 (S.D.N.Y. Feb. 15, 2019)................................15

*Set Capital LLC v. Credit Suisse Group AG*,
  No. 18 CIV. 2268 (AT), 2023 WL 2535175 (S.D.N.Y. Mar. 16, 2023) ................................16

*Slack Techs., LLC v. Pirani*,
    143 S. Ct. 1433 (2023).......................................................................................................12

*In re Smart Techs., Inc. S'holders Litig.*,
    295 F.R.D. 50 (S.D.N.Y. 2013) ..................................................................... *passim*

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) ................................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................................................................7, 15

*Yi Xiang v. Inovalon Holdings, Inc.*,
    327 F.R.D. 510 (S.D.N.Y. 2018) ................................................................... *passim*

**Statutes**

17 C.F.R § 230.144 ...............................................................................................................6

**Rules and Other Authorities**

Fed. R. Civ. P. 23(a) ..........................................................................................................7

Fed. R. Civ. P. 23(b)(3)..............................................................................................3, 7, 13, 15

Defendant LifeStance Health Group, Inc. ("LifeStance" or the "Company"); Defendants Robert Bessler, Darren Black, J. Michael Bruff, Jeffrey Crisan, Michael Lester, William Miller, Jeffrey Rhodes, Eric Shuey, and Katherine Wood (the "Individual Defendants" and, together with LifeStance, the "LifeStance Defendants"); and Defendants Morgan Stanley & Co., LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Jefferies LLC, TPG Capital BD, LLC, UBS Securities LLC, and William Blair & Company, L.L.C. (together with the LifeStance Defendants, "Defendants") respectfully submit this Opposition to Plaintiff Nizar Nayani's ("Plaintiff") Motion for Class Certification and Appointment of Class Representative and Class Counsel (the "Motion" or "Mot.") (ECF No. 62) and request that any class certified in this action be defined to include only stockholders, other than Defendants or their affiliates, who purchased LifeStance common stock on or before August 12, 2021 (or, in the alternative, prior to December 21, 2021) that was sold in or is otherwise traceable to the Company's June 10, 2021 initial public offering (the "IPO").

## PRELIMINARY STATEMENT

Plaintiff seeks to certify a class of "all persons, other than Defendants and their affiliates, who purchased LifeStance common stock in and/or traceable to" the Company's IPO, with no temporal limitations as to when potential class members purchased their stock. Mot. at 1.[1] This open-ended class definition is inappropriate given (i) the fatal ascertainability and typicality issues created by Plaintiff's own allegations as pleaded in the Amended Complaint for Violations of Federal Securities Laws (the "Amended Complaint" or "Compl.") (ECF No. 45), which show that the information allegedly omitted from the Company's S-1 Registration Statement filed with the United States Securities and Exchange Commission on May 17, 2021, which became effective on June 9, 2021 (the "Registration Statement"), had been fully disclosed to investors no later than

---

[1] Unless otherwise specified herein, all emphasis is added, and all citations, internal quotation marks, and alterations have been omitted.

August 11, 2021 (two months after the IPO), and (ii) issues of individual traceability created by a substantial number of shares of Company common stock entering the market on December 21, 2021.

The Complaint pleads a single corrective disclosure—the Company's public disclosures on August 11, 2021 regarding its financial performance for the second fiscal quarter of that year. Compl. ¶¶ 49-52, 56-57, 59-62, 65. Similarly, in opposing the Defendants' motion to dismiss, Plaintiff referenced a single alleged corrective disclosure—the same August 11 disclosures pleaded in the Amended Complaint. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss the Amended Complaint (ECF No. 49) at 6-7. By Plaintiff's own allegations, the Company's August 11, 2021 public disclosures completely disclosed all facts that Plaintiff alleges were omitted from the Registration Statement. *See*, *e.g.*, Compl. ¶¶ 48, 70. Yet Plaintiff's proposed class would include stockholders who purchased LifeStance common stock *after* the corrective disclosures and would therefore encompass stockholders with "actual knowledge of [the company's] purported misrepresentations and omissions." *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521 (S.D.N.Y. 2018). A claim by such purchasers "would be incongruous with [P]laintiff's [claim]," which asserts that the Defendants misled investors by *not* disclosing those facts at the time of the IPO, and Plaintiff's claim accordingly "could not be typical of such a claim made by persons who possessed additional information." *In re Smart Techs., Inc. S'holders Litig.*, 295 F.R.D. 50, 58 (S.D.N.Y. 2013).

For similar reasons, such a class would also fail to satisfy the "implied requirement of ascertainability." *Inovalon*, 327 F.R.D. at 521; *see also In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134-35 (S.D.N.Y. 2019) ("[C]ourts are required to cut off the class period on the date of a statement or event that cures the market."). "[A]s a result of the implied requirement of

ascertainability, a class definition ordinarily should have temporal limitations." *Inovalon*, 327 F.R.D. at 521.  To satisfy this requirement, courts have, on ascertainability grounds, narrowed Section 11 classes to members who purchased stock prior to a corrective disclosure that discloses all of the allegedly omitted information.  *See id.*; *see also SunEdison*, 329 F.R.D. at 134-35 (narrowing Section 11 class on ascertainability grounds to date of corrective disclosure). Narrowing the class to persons who purchased LifeStance common stock on or before August 12, 2021 is therefore necessary to make the class properly ascertainable, as a proposed class must be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Secs.*, 862 F.3d 250, 269 (2d Cir. 2017).

Alternatively, the class should be narrowed to persons who purchased LifeStance common stock prior to December 21, 2021.  On that date, a significant number of LifeStance's non-IPO shares entered the market through a security depository, making any subsequent purchases of LifeStance common stock impossible to trace to the IPO.  Since any person who purchased LifeStance's common stock after December 21, 2021 would be subject to a traceability defense, including such persons in the proposed class would cause individual issues to predominate over class-wide issues, making class certification inappropriate under Fed. R. Civ. P. 23(b)(3).

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion and narrow the class definition as described herein.

## FACTS

### I. LIFESTANCE'S IPO

LifeStance issued 46 million shares of common stock in its IPO at a price of $18.00 per share.  Compl. ¶¶ 26-27.  In connection with its IPO, LifeStance filed with the United States Securities and Exchange Commission its Registration Statement on May 17, 2021, which became effective on June 9, 2021, and a final prospectus on June 11, 2021.  Compl. ¶¶ 25-26.

## II.  THE AMENDED COMPLAINT ALLEGES THAT LIFESTANCE ISSUED A COMPLETE CORRECTIVE DISCLOSURE ON AUGUST 11, 2021

In his Amended Complaint, Plaintiff alleges that: (1) at the time of the IPO, LifeStance's clinician retention rate was lower than the 87% historical figure cited in the Registration Statement, Compl. ¶¶ 68-69; (2) COVID-19 was a primary cause of this decline, Compl. ¶ 74; and (3) LifeStance would be subject to costs associated with the increased clinician turnover, such as "(i) recruitment costs, such as recruiting fees, advertising, interviewing, and screening; (ii) onboarding costs, such as training and management time; (iii) the costs associated with getting new clinicians enrolled in health insurance networks; and (iv) the lack of productivity during a clinician's first year of employment," Compl. ¶ 58.

The Amended Complaint alleges that this purportedly omitted information was disclosed when, after the market closed on August 11, 2021, LifeStance announced its financial results for the quarter ending on June 30, 2021 and held an earnings call for investors and securities analysts (the "August 11 Earnings Call" and, together with the Company's August 11 8-K filing announcing its second quarter results, the "August 11 Disclosures"). Compl. ¶ 49. The August 11 Earnings Call is the central focus of the Amended Complaint.[2] Specifically, Plaintiff asserts that, during the August 11 Earnings Call:

- Defendant J. Michael Bruff, LifeStance's then Chief Financial Officer, stated that "we are struggling to take this [LifeStance financial guidance] out beyond 2021 right now because of ***the increase in turnover that we saw midway through the second quarter*** . . . ." Compl. ¶ 57 (emphasis in original); *see also id.* ("And the second quarter is when we saw an uptick in the clinician growth momentum, and it's also where we saw the increase in turnover.").

- Danish Qureshi, LifeStance's then Chief Growth Officer, stated that "this increased level of turnover is very clearly tied to COVID." Compl. ¶ 51; *see also* Compl. ¶ 50 ("[A]s the COVID-19 pandemic continues to play out, there's been a recent increase in turnover

---

[2] While Plaintiff also references the Company's public disclosures on November 8, 2021 and March 10, 2022, Plaintiff does not allege that these public statements disclosed the information he claims was omitted from the Registration Statement. *See* Compl. ¶¶ 114-118.

across industries and especially within healthcare.  LifeStance is not immune to these industry dynamics, and we've experienced an increase in clinicians retiring or leaving for personal reasons.").

- Defendant Bruff explained that the costs associated with clinician turnover are due to the fact that leaving clinicians are "typically at full capacity" and newly acquired clinicians take "4 to 6 months to ramp to that full capacity," and sometimes up to 12 months, which creates a "greater margin pressure."  Compl. ¶¶ 59-60.  Mr. Qureshi allegedly described that this ramp includes getting newly acquired clinicians credentialed and "on panel with different payers in their region."  Compl. ¶ 62.

Plaintiff further alleges that, on the August 11 Earnings Call, Mr. Bruff associated clinician turnover with "an immediate . . . downward impact, on the financial performance [of the Company]" in the form of "downward pressure on both revenue and Center Margin dollars," Compl. ¶ 59, and explained that LifeStance anticipated seeing this impact play out "in both the quarters in the back half of [2021]" "by approximately $7 million to $9 million."  Compl. ¶¶ 59, 65.  The Amended Complaint alleges that LifeStance's common stock price declined by 46% on August 12, 2021 after "LifeStance disclosed the financial impact of clinician turnover on its operations to the market during the Q2 conference call."  Compl. ¶ 109.

## III.    NON-IPO SHARES WERE COMMINGLED WITH IPO SHARES ON DECEMBER 21, 2021

In connection with the IPO, certain insiders and non-affiliate stockholders of LifeStance who held LifeStance stock before the IPO were subject to lock-up agreements, pursuant to which they could not sell their non-IPO shares for a designated period.  *See* Declaration of Martin J. Crisp ("Crisp Decl."), Ex. A at 162 (Excerpts of LifeStance's Registration Statement).  Non-affiliates in particular agreed that they would not "(1) offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend or otherwise transfer or dispose of, directly or indirectly, any shares of [LifeStance] Common Stock" for a period of 180 days after the effective date of the Registration Statement on June 9, 2021 (the "Lock-Up Period").  *See, e.g.*, Crisp Decl., Ex. B (Lock-Up Agreement) at 1-2.

After the Lock-Up Period expired, non-affiliates were permitted to sell their pre-IPO shares provided that the sale complied with 17 C.F.R § 230.144 ("Rule 144 of the Securities Act of 1933" or "Rule 144"). *See* Crisp Decl., Ex. A at 162.

The Lock-Up Period for non-affiliates expired on December 6, 2021. Two days later, on December 8, 2021, the broker (Fidelity) for a stockholder who held pre-IPO shares (the "Pre-IPO Selling Stockholder") submitted a request that the Company's counsel direct the Company's transfer agent, American Stock Transfer & Trust Company, LLC ("AST"), to remove the restrictive legend from a portion of his shares in connection with his intended sale of 241,221 non-IPO shares of LifeStance common stock. *See* Crisp Decl., Ex. C (December 8, 2021 De-Legend Request). On December 13, 2021, the Company's counsel delivered an opinion letter to AST that any certificates representing those Pre-IPO Selling Stockholder's shares need not bear any restrictive legend, and the restrictive legends were removed on December 15, 2021. *See* Crisp Decl., Ex. D (December 13, 2021 Rule 144 Opinion); Ex. E (December 15, 2021 Email Confirmation of Removal of Restrictive Legend). The sale of those 241,221 non-IPO shares by the Pre-IPO Selling Stockholder was executed on December 21, 2021, *see* Crisp Decl., Ex. F (December 21, 2021 Trade Confirmation), when his shares were deposited through his broker (Fidelity) with Cede & Co., which processes transfers on behalf of the Depository Trust & Clearing Corporation ("DTC"), *see* Crisp Decl., Ex. G (December 21, 2021 Transfer Journal Entry); Ex. H (December 21, 2021 DTC Portal Screenshot). On December 21, 2021, Pre-IPO Selling Stockholder's 241,221 pre-IPO shares of LifeStance common stock were marked in exactly the same way as the IPO shares and were combined into the same account, thereby becoming indistinguishably commingled with shares of LifeStance's common stock issued pursuant to the IPO. *See id.*

## ARGUMENT

Because a "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only . . . a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). To certify a Rule 23(b)(3) class, which Plaintiff seeks to do here, he must show that the proposed class meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation; and the two requirements of Rule 23(b)(3): predominance and superiority. *See* Fed. R. Civ. P. 23(a), (b)(3); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006). He must also demonstrate that the class is ascertainable—that is, the class must be "defined using objective criteria that establish a membership with definite boundaries." *Petrobras*, 862 F.3d at 269.

Rule 23 does not establish a "mere pleading standard," and requires, where necessary, considering the merits of a plaintiff's claim—such as whether the plaintiff has shown that its or other class members' shares are traceable to the IPO—as they may be relevant to ascertaining the appropriateness of class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011) ("Frequently [the] rigorous analysis [for Rule 23] will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41 ("[T]here is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met before certifying a class just because of some or even full overlap of that requirement with a merits issue.").

For the reasons stated below, Plaintiff has failed to meet his burden of establishing the Rule 23 and ascertainability requirements for all purported members of the proposed class. Accordingly, the proposed class should be narrowed to only stockholders, other than Defendants or their affiliates, who purchased LifeStance common stock on or before August 12, 2021 (or, in

the alternative, December 21, 2021) that was sold in or is otherwise traceable to the Company's IPO.

## I.    THE PUTATUVE CLASS SHOULD EXCLUDE POST-CORRECTIVE DISCLOSURE PURCHASERS

Plaintiff proposes an open-ended class of stockholders who purchased shares traceable to the IPO. *See* Mot. at 1. But stockholders who purchase a company's stock with full awareness of the facts and risks that they claim were omitted from the company's relevant public disclosure cannot maintain a Section 11 claim. *See, e.g., In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 58 (S.D.N.Y. 2013) ("Where 'the plaintiff knew of the untruth or omissions at the time of his or her acquisition of [a] security' . . . the plaintiff may not maintain a section 11 . . . claim") (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 70, 73 n.1); *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986) ("In order to prevail on a section 11 claim, a plaintiff must be able to prove that he purchased stock issued and sold pursuant to a deficient registration statement, and that he did not have knowledge of that deficiency.").

Where, as here, LifeStance is alleged to have fully disclosed in the August 11 Disclosures the information that was allegedly omitted from the Registration Statement, the proposed class should be modified to include only individuals and entities who purchased LifeStance common stock on or before August 12, 2021. Investors with knowledge of the information that Plaintiff claims was misleadingly omitted at the time of the IPO do not have a Section 11 claim as a matter of law, and cannot be included in the proposed class, both because the putative class is otherwise not ascertainable, and because Plaintiff's claims are not typical of the (hypothetical) claims of such purchasers who lacked that knowledge.

"[A]s a result of the implied requirement of ascertainability, a class definition ordinarily should have temporal limitations." *Inovalon*, 327 F.R.D. at 521. To satisfy this requirement,

courts have narrowed Section 11 classes to members who purchased stock prior to a corrective disclosure where that corrective disclosure is complete. *See id*; *see also SunEdison*, 329 F.R.D. at 134-35 (narrowing Section 11 class on ascertainability grounds to date of corrective disclosure). A corrective disclosure is complete in this context when the underlying complaint itself alleges that the disclosure revealed the allegedly omitted or misrepresented information. *See SunEdison*, 329 F.R.D. at 134 (noting "the [c]omplaint itself alleges that the 10-Q disclosed and revealed the putatively omitted and misstated information about SunEdison's loans"); *Inovalon*, 327 F.R.D. at 521 (narrowing Section 11 class to the period prior to a corrective disclosure where plaintiff's "own allegations" showed that the disclosure fully addressed alleged misstatements and omissions).

Other courts in this District have reached the same logical conclusion under Rule 23's typicality requirement. In *Smart Technologies*, the Court excluded from a proposed Section 11 class those individuals who purchased the Company's stock following a single corrective disclosure, because—as here—such purchasers "would have known of the alleged untruth or omission at the time of his or her acquisition of the security, and thus, his or her claims would be incongruous with plaintiff's (who purchased prior to the . . . corrective disclosure—*i.e.* without such knowledge)." *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. at 58. The Court excluded post-corrective disclosure purchasers from the proposed class because the lead plaintiff's claim was "based upon a lack of information, [and so] could not be typical of such a claim made by persons who possessed additional information." *Id.*

Plaintiff's Section 11 and 15 claims rest on his allegations that LifeStance, in its Registration Statement, (1) misrepresented its clinician retention rate by disclosing only its historical 87% retention rate (Compl. ¶¶ 68-69); (2) failed to disclose the material impact of

COVID-19 on LifeStance's operations, including its clinician turnover (Compl. ¶ 73); and (3) failed to disclose the effect of clinician turnover on LifeStance's operating results (Compl. ¶ 81). The Amended Complaint alleges that LifeStance disclosed these allegedly omitted "facts" in its August 11 Disclosures.  Compl. ¶¶ 50-51, 57, 59-60, 62, 65, 70, 75.  Plaintiff does not allege that the August 11 Disclosures were false or misleading in any way, or that they omitted information relevant to his claims.  Plaintiff acknowledges the finality of these disclosures by alleging that LifeStance's stock price dropped on August 12, 2021 following the "disclos[ure] [of] the financial impact of clinician turnover on its operations to the market during the Q2 conference call."  Compl. ¶ 109.  By Plaintiff's own allegations, LifeStance "admitted" on August 11, 2021 all facts fundamental to his claims, *see, e.g.,* Compl. ¶¶ 48, 70.  Because the August 11 Disclosures revealed "all material facts" underlying Plaintiff's claims, the proposed class should be narrowed to individuals who purchased on or before August 12, 2021.  *SunEdison*, 329 F.R.D. at 134 (modifying Section 11 class where defendant disclosed "all material facts" in Form 10-Q filed before proposed end of class).

The Amended Complaint cites to several additional disclosures made by LifeStance (1) during its November 8, 2021 earnings call regarding its results for the third fiscal quarter of 2021[3] and (2) in its March 10, 2022 disclosures regarding LifeStance's fiscal year 2021 financial performance.[4]  The Complaint does not, however, allege that these public statements disclosed the information that Plaintiff claims was omitted from the Registration Statement.  These disclosures

---

[3] *See, e.g.,* Compl. ¶ 114 ("On November 8, 2021, the Company reported . . . that [c]linician retention [had] stabilized to approximately 80% annualized in the third quarter"); Compl. ¶ 115 ("The company expects full year revenue toward the lower end of the previously guided $668 million to $678 million range . . . Center Margin in the range of $198 million to $208 million and Adjusted EBITDA in the range of $47 million to $53 million.").

[4] *See, e.g.*, Compl. ¶ 118 (alleging that on March 10, 2022, LifeStance announced $668 million in revenue for FY 2021 and that "retention has continued to be stable.").

are not alleged to have provided any additional information regarding the rate of the Company's clinician retention at the time the Registration Statement became effective, the causes of the alleged clinician turnover prior to the IPO, or the costs associated with that clinician turnover.

Narrowing the class to persons who purchased LifeStance common stock prior to the only corrective disclosure alleged in the Amended Complaint is necessary to make the class properly ascertainable, as a proposed class must be "defined using objective criteria that establish a membership with definite boundaries." *Petrobras*, 862 F.3d at 269.[5] Limiting Plaintiff's proposed class to those investors who purchased LifeStance stock on or before August 12, 2021 would establish a "definitive boundary" based on "objective criteria," and would follow the well-trodden path of excluding class members who cannot sustain a Section 11 claim in the first place based on plaintiff's own allegations. *See, e.g.*, *SunEdison*, 329 F.R.D. at 135 (finding "individual issues of purchaser knowledge" may arise from inclusion of post-corrective disclosure purchasers); *Inovalon*, 327 F.R.D. at 521 (excluding post-corrective disclosure purchasers where such putative plaintiffs "would have actual knowledge of Inovalon's purported misrepresentations and omissions"); *Smart Techs.*, 295 F.R.D. at 58-59 (narrowing class definition for Section 11 claim to "affirmatively exclude" individuals who purchased company stock after alleged corrective disclosure on grounds that those individuals' claims would be "incongruous with plaintiff's (who purchased prior to the November 9 corrective disclosure—*i.e.*, without such knowledge)").

---

[5] While the court in *Petrobras* held that the proposed class was ascertainable, the facts as pleaded here are plainly distinguishable. In *Petrobras*, the proposed class had a defined, determinate class period "between January 22, 2010 and July 28, 2015." *Petrobras, 862 F.3d* at 259. In addition, the plaintiffs in Petrobras did not allege a sole, comprehensive disclosure, as is the case here. *Cf. In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 343-344 (S.D.N.Y. 2015) (finding class period should not be narrowed by four months based on corrective disclosures where the complaint alleged fourteen different disclosures described as "news" that "could not have been known before they occurred").

Plaintiff alleges a single, clear, corrective disclosure, made directly by LifeStance executives to its investors on August 11, 2021, of information Plaintiff asserts was omitted from the Registration Statement.  Compl. ¶¶ 48, 70.  The lack of temporal limitation to the proposed class period is a fundamental defect in the definiteness of the proposed class definition, as it potentially allows a significant number of stockholders who would not otherwise be entitled to relief to be included in the class.  Because the August 11 Disclosures were "clear [and] unambiguous," the proposed class should include only stockholders, other than Defendants or their affiliates, who purchased LifeStance common stock on or before August 12, 2021 (or, in the alternative, prior to December 21, 2021) that was sold in or is otherwise traceable to the IPO. *SunEdison*, 329 F.R.D. at 135; *see also Inovalon*, 327 F.R.D. at 521 (narrowing class to "persons who purchased or acquired, prior to August 5, 2015, Inovalon common stock pursuant to or traceable to the Company's February 12, 2015 Initial Public Offering," where complaint asserted defendants "finally disclosed" allegedly omitted information in an August 5, 2015 public disclosure).

## II.    ALTERNATIVELY, AND AT A MINIMUM, THE CLASS SHOULD BE NARROWED TO THE PERIOD BEFORE NON-IPO SHARES ENTERED THE MARKET

In the alternative, the class definition should exclude stockholders who purchased LifeStance common stock after pre-IPO shares of LifeStance's common stock entered the market because, after that time, it is not possible to trace any newly purchased shares back to the IPO and Registration Statement.  "To bring a claim under [Section] 11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1440–41 (2023).  Courts therefore have narrowed Section 11 classes to the time period before non-IPO shares entered the market because individual issues of traceability would otherwise predominate over class-wide issues, defeating the

-12-

predominance requirement under Fed. R. Civ. P. 23(b)(3).  *See, e.g.*, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 31 (holding that a Section 11 class may be narrowed to the period before "untraceable shares entered the market," after which "the individual questions of whether an investor could trace his shares to the IPO would predominate"); *In re Honest Co. Sec. Litig.*, No. 221CV07405MCSPLA, 2023 WL 3190506, at *5 (C.D. Cal. May 1, 2023) (narrowing class period to before non-IPO shares were traded because "[t]racing a particular share to the IPO is impossible once non-IPO shares became commingled"); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1180 (N.D. Cal. 2017) ("[O]nly shares that were purchased in the IPO or in the open market [before commingling] are traceable to the allegedly misleading disclosure statement.").

In this case, a significant number of non-IPO shares of LifeStance common stock entered the market through DTC, a clearing agency, immediately following the expiration of the Lock-Up Period on holders of pre-IPO shares, beginning with the Pre-IPO Selling Stockholder's broker requesting on December 8, 2021 that the restrictive legend affixed to 241,221 of his shares be removed and culminating in the transfer of his 241,221 pre-IPO shares of LifeStance common stock to DTC on December 21, 2021.  *See* Crisp Decl., Exs. C-H.[6]  Stock held by DTC is registered by a company in "street name" only, rather than the name of the beneficial owner, such that the name of DTC's nominee (e.g., Cede & Co.) will appear on the issuer's stock records as the owner of the shares (rather than the actual investor who purchased the shares).  *See In re Honest Co.*, 2023 WL 3190506, at *3 (holding that the comingling of 6,740 shares of non-IPO common stock

---

[6] This case is therefore distinguishable from *In re Prestige Brands Holdings, Inc. Securities Litigation*, in which the court rejected the defendants' traceability defense at the class certification stage because "[n]o evidence has so far been presented that non-IPO shares entered the market in any significant number during the class period."  No. 05 CIV. 6924, 2007 WL 2585088, at *5 (S.D.N.Y. Sept. 5, 2007).  Here, Defendants have identified concrete evidence showing that over 200,000 non-IPO shares of LifeStance common stock entered the market on December 21, 2021. *See* Crisp Decl., Exs. C-H.

with IPO common stock defeated traceability as "all shares deposited with DTC [were] registered under the same street name . . ."). In addition, DTC holds securities in "fungible bulk" such that all beneficial owners "own a pro rata interest in the aggregate number of shares of a particular issuer held at DTC." *Id*. at \*4. That is exactly what happened here when the Pre-IPO Selling Stockholder's 241,221 pre-IPO shares were transferred to the DTC, designated in the name of Cede & Co., and added to the DTC account that at that time held the entirety of LifeStance's 46 million IPO shares. *See* Crisp Decl., Ex. G (December 21, 2021 Transfer Journal Entry). On the day of the Pre-IPO Selling Stockholder's transfer, Cede & Co.'s account was updated to reflect that it held 46,241,221 shares, each indistinguishable from the other. *Id.* When the two classes of shares of LifeStance common stock (IPO and non-IPO) were commingled on December 21, 2021, it became "effectively impossible to determine the origin of any individual stock." *Id.*; *see also In re Puda Coal Sec. Inc. Litig.*, No. 11 CIV. 2598 KBF, 2013 WL 5493007, at \*8 (S.D.N.Y. Oct. 1, 2013) (holding the "steps necessarily involving the DTC[] are fatal to traceability" because "[o]nce a part of the DTC[] group of [company] shares, they lose any specific identity"). In other words, putative class members who purchased LifeStance common stock after December 21, 2021 will be unable to demonstrate that their purchases are traceable to the IPO due to this pooling of shares.

Plaintiff seeks to certify a class of all stockholders who purchased LifeStance common stock traceable to the IPO. Compl. ¶ 1; Mot. at 1. Any individual or entity who purchased LifeStance common stock from December 21, 2021 through the present—an 18 month time period —would be subject to a unique traceability defense. If putative class members who purchased LifeStance common stock after December 21, 2021 are included in the certified class, individual issues of traceability will predominate over class-wide issues. *See New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 812 (2d Cir. 2012) (holding that class wide

-14-

issues only predominate where they are "more substantial than the issues subject only to individualized proof."). The proposed class should therefore at least be narrowed to individuals and entities who purchased LifeStance common stock prior to December 21, 2021 pursuant to Rule 23(b)(3).

Plaintiff argues in his Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification ("Pl.'s Supp. Mem.") (ECF No. 63) that any individualized defenses of traceability do not defeat the predominance requirement because individualized tracing inquiries "will arise only if and when liability has been determined." Pl.'s Supp. Mem. at 14. But this argument ignores the evolving case law on the consideration of traceability at the class certification stage. As the Supreme Court has recognized, "[f]requently [the] rigorous analysis [for Rule 23] will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351. Courts therefore routinely consider traceability at the class certification stage where, as is the case here, members of the proposed class may not have standing. *See, e.g.*, *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 1:14-CV-6502-GHW, 2019 WL 652841, at *6-7 (S.D.N.Y. Feb. 15, 2019) (declining to certify Section 11 class where there existed a "significant number of individualized legal issues" in standing inquiry); *In re Bank of Am. Corp. Secs., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 146-47 (S.D.N.Y. 2012) (certifying Section 11 class where definition included only individuals who "directly purchased shares" in offering (not in secondary market) as that definition "avoid[ed] the tracing problems that necessitate individualized inquiries and defeat the predominance requirement of Rule 23(b)(3)").

Moreover, unlike in the *AMC* case cited by Plaintiff, it is ***not*** "arguably possible that some putative class member" who purchased LifeStance common stock following Pre-IPO Selling

Stockholder's December 2021 sale of shares through DTC "indeed has proof of traceability" because shares held with DTC do not include individualized markers indicating that they are, in fact, IPO versus non-IPO shares.  *Cf. Hawaii Structural Ironworkers Pens. Tr. Fund, Inc. v. AMC Ent'mt Holdings, Inc.*, 338 F.R.D. 205, 214 (S.D.N.Y. 2021) (certifying class despite presence of aftermarket purchasers where defendants did not provide "any basis for the Court to conclude that *none* of the class members who bought their shares on the secondary market will have any evidence of a direct chain of title"); *see also In re Smart Techs.*, 295 F.R.D. at 62 (dismissing traceability argument where "[i]t is arguably possible that some putative class member who purchased in the secondary market indeed has 'proof' of traceability" through linkage of sales to stockbrokers).[7]

---

[7] Plaintiff's other cited case, *Set Capital LLC v. Credit Suisse Group AG*, No. 18 CIV. 2268 (AT), 2023 WL 2535175 (S.D.N.Y. Mar. 16, 2023), is also distinguishable.  In *Set Capital*, defendants argued simply that the plaintiffs had not offered a methodology for tracing on a class-wide basis. *Id.* at *10.  As that court noted, the "potential for [individualized tracing] inquiries alone does not defeat predominance."  *Id.*  But Defendants have offered evidence showing that individualized issues will arise if the class includes stockholders who purchased after December 21, 2021.

## CONCLUSION

For the foregoing reasons, the proposed class should include only stockholders, other than Defendants or their affiliates, who purchased LifeStance common stock on or before August 12, 2021 (or, in the alternative, prior to December 21, 2021) that was sold in or is otherwise traceable to the IPO.

Dated: June 30, 2023                                    Respectfully submitted,

*/s/ Martin J. Crisp*                                  */s/Brian S. Weinstein*
**ROPES & GRAY LLP**                    **DAVIS POLK & WARDWELL LLP**
Martin J. Crisp                                        Brian S. Weinstein
1211 Avenue of the Americas                  450 Lexington Avenue
New York, NY 10036                              New York, NY 10017
Tel: (212) 596-5000                                Tel: (212) 450-4000
Fax: (212) 596-9090                               Brian.Weinstein@davispolk.com
Martin.Crisp@ropesgray.com

                                                             *Attorney for Defendants Morgan Stanley & Co.,*
Daniel V. McCaughey (admitted *pro hac vice*)    *LLC, Goldman Sachs & Co. LLC, J.P. Morgan*
William T. Davison (admitted *pro hac vice*)     *Securities LLC, Jefferies LLC, TPG Capital*
Cole A. Goodman (admitted *pro hac vice*)        *BD, LLC, UBS Securities LLC, and William*
Sara A. Bellin (admitted *pro hac vice*)         *Blair & Company, L.L.C.*
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
Daniel.McCaughey@ropesgray.com
William.Davison@ropesgray.com
Cole.Goodman@ropesgray.com
Sara.Bellin@ropesgray.com

*Attorneys for Defendants LifeStance Health Group, Inc., Michael K. Lester, J. Michael Bruff, Robert Bessler, Darren Black, Jeffrey Crisan, William Miller, Jeffrey Rhodes, Eric Shuey, and Katherine Wood*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: June 30, 2023                    */s/ Martin J. Crisp*
                                        Martin J. Crisp