UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— x

NIZAR S. NAYANI, Individually and on
Behalf of All Others Similarly Situated,

                     Plaintiff,

    vs.

LIFESTANCE HEALTH GROUP, INC.,
MICHAEL K. LESTER, J. MICHAEL
BRUFF, ROBERT BESSLER, DARREN
BLACK, JEFFREY CRISAN, WILLIAM
MILLER, JEFFREY RHODES, ERIC
SHUEY, KATHERINE WOOD, MORGAN
STANLEY & CO. LLC, GOLDMAN SACHS
& CO. LLC, J.P. MORGAN SECURITIES
LLC, JEFFERIES LLC, TPG CAPITAL BD,
LLC, UBS SECURITIES LLC, and WILLIAM
BLAIR & COMPANY, L.L.C.,

                     Defendants.

—————————————————————————— x

: Civil Action No. 1:22-cv-06833-JSR

: CLASS ACTION

: REPLY MEMORANDUM OF LAW IN
: FURTHER SUPPORT OF LEAD
: PLAINTIFF'S MOTION FOR CLASS
: CERTIFICATION AND APPOINTMENT OF
: CLASS REPRESENTATIVE AND CLASS
: COUNSEL

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT ....................................................................................................................3

I.  AUGUST 11, 2021 IS NOT AN APPROPRIATE END DATE FOR THE CLASS
DEFINITION ...........................................................................................................3

    A.  Legal Standards Governing Section 11(a)'s Knowledge Defense ..........................3

    B.  Defendants Have Not Even Tried to Carry Their Burden of Proving that
Post-August 11, 2021 Purchasers of LifeStance Common Stock Knew the
Truth of Defendants' Misstatements and Omissions ...............................................5

II.  DECEMBER 21, 2021 IS NOT AN APPROPRIATE END DATE FOR THE
CLASS DEFINITION ..............................................................................................8

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................6

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
    33 F. Supp. 3d 455 (S.D.N.Y. 2014)........................................................................4

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
    62 F.4th 704 (2d Cir. 2023) ....................................................................................1

*Fort Worth Emps.' Ret. Fund. v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................8

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000)....................................................................................2

*Grecco v. Age Fotostock Am., Inc.*,
    2021 WL 3353926
    (S.D.N.Y. Aug. 2, 2021) ........................................................................................9

*In re Aphria, Inc. Sec. Litig.*,
    342 F.R.D. 199 (S.D.N.Y. 2022) ............................................................................4

*In re Honest Co. Sec. Litig.*,
    2023 WL 3190506
    (C.D. Cal. May 1, 2023) ......................................................................................10

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    286 F.R.D. 226 (S.D.N.Y. 2012) ............................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
    227 F.R.D. 65 (S.D.N.Y. 2004) ..............................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)......................................................................4

*In re Initial Public Offerings Securities Litigation*,
    471 F.3d 24 (2d Cir. 2006)..................................................................................8, 9

*In re Initial Pub. Offering Sec. Litig.*,
    483 F.3d 70 (2d Cir. 2007)......................................................................................3

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    310 F.R.D. 230 (S.D.N.Y. 2015) .........................................................................2, 7

**Page**

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)............................................................................................1

*In re Prestige Brands Holdings, Inc. Securities Litigation*,
2007 WL 2585088
(S.D.N.Y. Sept. 5, 2007)...............................................................................................9

*In re Puda Coal Securities Inc. Litigation*,
2013 WL 5493007
(S.D.N.Y. Oct. 1, 2013) ...............................................................................................10

*In re Smart Technologies, Inc. Shareholder Litigation*,
295 F.R.D. 50 (S.D.N.Y. 2013) ......................................................................................7

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) .............................................................................4, 6, 7

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) .....................................................................................7

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
2017 WL 2062985
(S.D.N.Y. May 15, 2017)................................................................................................4

*Klein v. A.G. Becker Paribas Inc.*,
109 F.R.D. 646 (S.D.N.Y. 1986) ....................................................................................4

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
709 F.3d 109 (2d Cir. 2013)........................................................................................2, 4

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)............................................................................................5

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................................3, 7, 8

*Shapiro v. TG Therapeutics, Inc.*,
2022 WL 16555585
(S.D.N.Y. Oct. 31, 2022) ........................................................................................2, 6, 7

*Sudunagunta v. NantKwest, Inc.*,
2018 WL 3917865
(C.D. Cal. Aug. 13, 2018)..............................................................................................10

**Page**

*Yi Xiang v. Inovalon Holdings, Inc.*,
  327 F.R.D. 510 (S.D.N.Y. 2018) ........................................................................7


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k(a) ................................................................................................... *passim*
  §78j(b)..........................................................................................................4

Federal Rules of Civil Procedure
  Rule 23 ........................................................................................................4
  Rule 23(a)....................................................................................................1
  Rule 23(a)(3) ..............................................................................................1
  Rule 23(b) ...................................................................................................1
  Rule 26........................................................................................................9

**INTRODUCTION**[1]

Defendants do not contest that class certification is appropriate.  They do not challenge Lead Plaintiff's satisfaction of the Rule 23(a) and (b) requirements, oppose his appointment as Class Representative, or dispute Robbins Geller's appointment as Class Counsel.

Instead, Defendants ask the Court to "narrow the class definition."  Opp. at 3; *see also id.* at 17.  Citing the Second Circuit's "ascertainability" requirement,[2] Defendants contend that the class definition should incorporate a cutoff date of August 11, 2021, when LifeStance held its Q2 2021 conference call with securities analysts and investors to discuss the Company's June 30, 2021 quarterly financial results and operations.  ¶49.  Lead Plaintiff alleges that, during this call, Defendants admitted a pre-IPO increase in clinician turnover that the Company "saw midway through the second quarter" of 2021.  ¶¶57, 113.

Repeatedly mischaracterizing this admission as a "full[]" disclosure of the truth or a "complete corrective disclosure" (Opp. at 1-2, 4, 8-10), Defendants attempt—purportedly in the interests of ascertainability—to assert a Section 11(a) affirmative defense of investor knowledge, arguing that anyone purchasing LifeStance shares after August 11, 2021 was fully aware of the truth, cannot have been misled by Defendants' earlier misstatements and omissions, and therefore has no claim.  *See* Opp. at 8.  Separately, Defendants contend (under Rule 23(a)(3)'s typicality requirement) that Lead Plaintiff's own claim, based on purchases *before* August 11, 2021, cannot be typical of the "hypothetical" claims of those who purchased *after* that date, based on fuller information.  *Id.*

---

[1]   This memorandum incorporates the definitions from Lead Plaintiff's opening memorandum (ECF No. 63).  Emphasis is added and internal citations are omitted in quoted material unless otherwise indicated.  "Opp." refers to Defendants' memorandum opposing the motion (ECF No. 67).

[2]   *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 716 (2d Cir. 2023) ("Ascertainability requires only that 'a proposed class is defined using objective criteria that establish a membership with definite boundaries.'") (quoting *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017)).

But rather than "prove[]"—or even try to prove—actual investor knowledge after August 11, 2021, as Section 11(a) and the Second Circuit require,[3] Defendants simply repeat their mantra that the Complaint pleads a "complete corrective disclosure." Opp. at 4. As even a cursory review of the Complaint reveals, however, Defendants did not disclose significant information regarding the *reasons* for clinician turnover, including intense dissatisfaction with clinician compensation, which was continuing to plague LifeStance—*see generally* ¶¶33, 35-41; *e.g.*, ¶38 (quoting clinicians' description of LifeStance's compensation system as a form of "indentured servitude")—thereby eviscerating Defendants' full-knowledge defense.[4]    Indeed, the full impact of Defendants' misstatements and omissions was not apparent even on November 8, 2021, when LifeStance announced that high turnover would continue to negatively impact performance, followed by an (indisputably material) 24% drop in the price of LifeStance shares.[5]    And because differences in knowledge among class members do not undermine typicality, their typicality argument fails also.[6]

Apparently aware of these shortcomings, Defendants suggest an alternative cutoff— December 21, 2021—when pre-IPO shares were purportedly offered to the public.  Although

---

[3]    *See* 15 U.S.C. §77k(a) ("… unless it is proved …."); *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 n.12 (2d Cir. 2013) ("*Royal Bank of Scot.*"; "Section 11 creates an affirmative defense where a defendant can prove … actual knowledge.").

[4]    *See, e.g.*, *Shapiro v. TG Therapeutics, Inc.*, 2022 WL 16555585, at *4 (S.D.N.Y. Oct. 31, 2022) (Rakoff, J.; "TG Therapeutics' initial corrective disclosure was merely a partial disclosure…. But TG Therapeutics' alleged misrepresentations and/or omissions continued to injure its investors after this date ….").

[5]    *See* Reply Ex. A (historical price chart, attached to the Reply Declaration of Michael G. Capeci, submitted herewith).  The Court may take judicial notice of historical stock prices. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000).  All exhibits cited herein are attached to the Reply Declaration and referred to herein as "Reply Ex."

[6]    *See, e.g.*, *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015) ("Although the extent of the Proposed Class members' knowledge will inevitably vary depending on their level of sophistication and the time of purchase, such variances are insufficient to defeat typicality because the nature of the claims that Plaintiffs must prove remains unchanged.").

- 2 -

Defendants contend these shares create individualized questions of traceability raising predominance concerns, that is not true, and in any event Defendants' supporting "evidence" is inadequate.

Finally, to the extent a cutoff date is necessary at all, Defendants do not explain why later, more logical dates would be inadequate, including March 10, 2022, when Defendants admitted they had achieved only the lower end of their guidance (¶118), or August 10, 2022, when Lead Plaintiff filed his initial complaint.  *See* ECF No. 1.

**ARGUMENT**

I.   **AUGUST 11, 2021 IS NOT AN APPROPRIATE END DATE FOR THE CLASS DEFINITION**

Defendants contend that the Complaint alleges a "single" corrective disclosure (Opp. at 2, 9, 12), on August 11, 2021, that "fully" or "complete[ly]" revealed the truth about Defendants' alleged misstatements and omissions (*id.* at 1, 2, 4, 8, 9), such that: (1) no later investor can have been misled; and (2) Lead Plaintiff's claim cannot be typical of any "hypothetical" claim occurring after that date.  *See* Opp. at 8.  Defendants are wrong on both counts.

   A.   **Legal Standards Governing Section 11(a)'s Knowledge Defense**

As this Court has recognized, "while an issuer's liability under section 11 is absolute [upon a showing of falsity and materiality], 'it can assert a defense that the plaintiff knew of the untruth or omission at the time of his or her acquisition of the security.'"  *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 112-13 (S.D.N.Y. 2011) (Rakoff, J.; "*Merrill Lynch*"; quoting *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 n.1 (2d Cir. 2007)).  This defense is written into Section 11(a) of the Securities Act, which permits persons who acquired a security traceable to a materially misleading registration statement to sue, "unless it is *proved* that at the time of such acquisition he [or she] *knew* of such untruth or omission."  15 U.S.C. §77k(a).

- 3 -

As the Second Circuit has made clear, Section 11(a) "creates an affirmative defense." *Royal Bank of Scot.*, 709 F.3d at 127 n.12.  To carry its burden of establishing that defense, a defendant must "*prove* that 'at the time of … acquisition,' the purchaser '*knew*' of the alleged 'untruth or omission.'" *Id.*  The Court rejected the suggestion that a defendant may rely on "merely available" information that "expose[s] an untruth or omission," because that "would effectively shift the burden of proof on § 11's affirmative defense, presuming that the plaintiff *should* have known the relevant information rather than requiring the defendant to prove *actual knowledge*."  *Id.* (emphasis on "should" in original); *see also Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, 481 (S.D.N.Y. 2014) ("Actual knowledge of falsity means just that.").[7]

Although a defendant can, in appropriate circumstances, carry its burden of proving investors' "actual knowledge" solely by reference to the plaintiffs' own allegations—when plaintiffs "plead themselves out of court by pleading information that defeats their legal claim"[8]—that can occur only "'[i]f there is *no substantial doubt* as to the curative effect' of [the disclosure] …." *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019) (quoting *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *7 (S.D.N.Y. May 15, 2017)).  "[W]hen a disclosure is less than clear, or would require the Court to adjudicate questions of materiality, the adequacy of disclosure cannot be decided on a Rule 23 motion." *Id.* at 135; *see also In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 208 (S.D.N.Y. 2022) (holding, in a Section 10(b) case, that unless "'no substantial doubt' exists as to the curative effect" of the disclosure, defendants' "factual dispute is inappropriate for the Court to determine at this time [on a class certification motion]").

---

[7]   Thus, *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986), the decades-old opinion Defendants cite for the proposition that "a plaintiff must be able to prove … that he did not have knowledge of [the registration statement's] deficiency," is simply wrong.  *See* Opp. at 8.

[8]   *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 344-45 (S.D.N.Y. 2003) (explaining that "a complaint is a binding judicial admission").

**B.    Defendants Have Not Even Tried to Carry Their Burden of Proving that Post-August 11, 2021 Purchasers of LifeStance Common Stock Knew the Truth of Defendants' Misstatements and Omissions**

Although Defendants have the burden of proving the actual knowledge of post-August 11, 2021 purchasers of LifeStance stock to establish their Section 11(a) affirmative defense, Defendants have presented no evidence of such knowledge whatsoever.  Instead, they rely solely on the allegations of the Complaint, which they contend plead a full corrective disclosure, such that future purchasers could not be misled.[9]  That argument mischaracterizes both the Complaint and reality.

Preliminarily, Lead Plaintiff has not alleged a corrective disclosure *at all*, much less a "full" or "complete" one.  Because loss causation is not an element of a Section 11 claim,[10] a plaintiff is not required to plead a corrective disclosure.  As proposed Class Counsel explained at the lead-plaintiff hearing: "There are no corrective disclosures pled in the [initial] complaint.  There's just announcements by LifeStance revealing what was happening in their business.  Loss causation is not an element of [the] claim."  *See* Reply Ex. B at 33:5-8.  The same is true of the Amended Complaint.

But even if the Court construes Defendants' August 11, 2021 admission of increased clinician turnover in Q2 2021 as a corrective disclosure, it is hardly the "full" or "complete" disclosure Defendants claim.  Lead Plaintiff pleads clinician dissatisfaction with LifeStance's system of advancing compensation, often requiring repayment, as one of three principal reasons for clinician turnover (with credentialing delays and COVID-19 fatigue).  ¶33.  As the Complaint alleges, "the accumulation of large debt balances owed to the Company by its clinicians … resulted in an increase in clinician resignations before the IPO."  ¶41; *see generally* ¶¶35-41.  Yet investors purchasing

---

9    *See, e.g.*, Opp. at 2 ("By Plaintiff's own allegations, the Company's August 11, 2021 public disclosures *completely disclosed all facts* that Plaintiff alleges were omitted from the Registration Statement.").

10    *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 156 (2d Cir. 2012) ("Neither scienter, reliance, nor loss causation is an element of [a] § 11 claim[] ….").

LifeStance shares after August 11, 2021 would have no idea that the Company's compensation system was contributing to and perpetuating the problem of turnover—even if they had personally heard or read Defendants' August 11, 2021 admission.[11]

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████

Because Defendants disclosed—at most—a portion of the truth, post-August 11, 2021 purchasers of LifeStance shares were misled, just like their pre-August 11, 2021 counterparts, and have a claim against Defendants. As the Court recognized in *Shapiro*, the fact of a partial disclosure does not negate later claims: "TG Thereapeutics' initial corrective disclosure was merely a partial disclosure…. But TG Therapeutics' alleged misrepresentations and/or omissions continued to injure its investors after this date …." 2022 WL 16555585, at *4; *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (recognizing that the "relevant truth" can "leak out" over time).

Defendants' case law is not to the contrary. In *SunEdison*, the court found the corrective disclosures pleaded in the complaint to be both "complete and truthful" and "clear [and] unambiguous," justifying an abbreviated class definition. 329 F.R.D. at 134, 135. The same is not

---

[11] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

true here, as demonstrated above.  In *In re Smart Technologies, Inc. Shareholder Litigation*, the parties *agreed* that the class definition excluded purchasers after November 9, 2010.  *See* 295 F.R.D. 50, 58 (S.D.N.Y. 2013) (observing that "Plaintiff does not dispute" the proposed end date, and referring to the "parties' agreement that the class does not include post-November 9, 2010, purchasers").  And in *Yi Xiang v. Inovalon Holdings, Inc.*, the plaintiff—like the one in *Smart Technologies*—failed "specifically [to] respond to this argument."  327 F.R.D. 510, 521 (S.D.N.Y. 2018).  Yet the court did not accept the date advocated by the defendants, instead choosing a later date when the complaint alleged the truth was "finally disclosed."  *Id.*

Regarding Defendants' typicality argument, it is well established that subsequent partial disclosures do not undermine the typicality of Lead Plaintiff's claim.  *See, e.g.*, *MF Glob. Holdings*, 310 F.R.D. at 236 ("Although the extent of the Proposed Class members' knowledge will inevitably vary …, such variances are insufficient to defeat typicality because the nature of the claims that Plaintiffs must prove remains unchanged."); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 235 (S.D.N.Y. 2012) ("Whether or not investors' knowledge levels varied does not change the fundamental nature of the claims … that the Offering Documents were materially misleading.").  Even Defendants' own authority rejects this argument: "Differences in the purchase date of shares is generally not sufficient to defeat typicality."  *SunEdison*, 329 F.R.D. at 141.[12]

Finally, if Defendants had wanted to prove that post-August 11, 2021 purchasers of LifeStance shares had full knowledge of the truth, as Section 11(a) requires, they might have tried to carry their "heavy" burden of proving negative causation, *Merrill Lynch*, 277 F.R.D. at 113, attempting to show that any statistically significant drops in the price of LifeStance stock after that

---

[12]   *Cf. Shapiro*, 2022 WL 16555585, at *4 ("'Without more, [moving plaintiff's] purchase of these shares after the partial disclosures does not render [moving plaintiff] atypical or subject it to unique defenses.'") (quoting *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009)).

date were fully attributable to causes *other* than the misstatements and omissions Lead Plaintiff alleges. But on November 8, 2021, when LifeStance announced its Q3 2021 results and the price of LifeStance shares fell an indisputably material 24% on enormous volume (*see* ¶71; Reply Ex. A), Defendants *admitted* the ongoing impact of higher-than-anticipated turnover,[13] resulting in J.P. Morgan downgrading LifeStance the very next day.[14] That it is presumably why Defendants did not even make the attempt.

In sum, because Defendants have failed to carry their burden of proving post-August 11, 2021 purchasers' knowledge, the Court may disregard their Section 11(a) affirmative defense.[15]

## II.   DECEMBER 21, 2021 IS NOT AN APPROPRIATE END DATE FOR THE CLASS DEFINITION

Defendants alternatively urge a December 21, 2021 end date for the class definition, when pre-IPO shares purportedly entered the market. Defendants contend that tracing any later purchases to the Registration Statement would be "impossible," Opp. at 3, such that "individual issues of traceability would … predominate over class-wide issues …." Opp. at 12.[16] As demonstrated

---

[13]  *See, e.g.*, Reply Ex. E at 7 (defendant Bruff: "[T]he biggest change in our model has been to now include the headwind through the full year of 2022 of having the retention at approximately 80% annualized rate. That's the biggest piece.").

[14]  *See* Reply Ex. F at 1 (November 9, 2021 J.P. Morgan analyst report, stating that retention remains a "show-me story," that the "primary driver of the weaker than expected FY22 outlook is related to lower clinician retention rates," and that "[m]anagement … is not clear at this point whether [the retention issue] is temporary or structural"); ███████████████████████
███████████████████  Indeed, almost every question analysts asked during the November 8, 2021 earnings conference call was about retention. *See* Reply Ex. E at 7-11.

[15]  It is worth noting that numerous courts, including this one, have rejected the argument that the question of class member knowledge of alleged misstatements precludes common issues from predominating over individual ones. *See, e.g.*, *Fort Worth Emps.' Ret. Fund. v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 138 (S.D.N.Y. 2014); *Merrill Lynch*, 277 F.R.D. at 116-18.

[16]  Defendants mischaracterize the holding of *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 31 (2d Cir. 2006), *see* Opp. at 13, as the language they quote describes *the lower*

below, however, Defendants have failed to prove that any pre-IPO shares entered the market.  But even if they had, any tracing issues would involve only a limited set of purchasers, undermining Defendants' predominance argument.

As Defendants concede, it is their burden to present "concrete evidence" that non-IPO shares entered the market in a "significant number" to establish a traceability defense at class certification. Opp. at 13 n.6.  Defendants' so-called evidence does nothing of the sort.  Relying solely on a declaration submitted by LifeStance's counsel (ECF No. 68), Defendants provide only heavily redacted emails and screenshots—none of which are judicially noticeable[17]—that fail to meaningfully identify the shareholder in question or the complete circumstances surrounding the alleged sale.  ECF Nos. 68-3 to 68-8.[18]  Notably, Defendants have failed to serve a single subpoena in this action, let alone obtain any testimony, to substantiate any "concrete evidence."  Opp. at 13 n.6.  Defendants' tracing defense, therefore, is identical to the one Judge Brieant rejected in *In re Prestige Brands Holdings, Inc. Securities Litigation*, because "[n]o evidence has so far been presented that non-IPO shares entered the market in any significant number during the class period." 2007 WL 2585088, at *5 (S.D.N.Y. Sept. 5, 2007).  At best, Defendants have shown that 241,221

---

*court's opinion*, and the issue of traceability in the context of non-IPO shares was not even on appeal.  *Id.* (citing *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 118-19, 120 (S.D.N.Y. 2004)).

[17]  *See, e.g.*, *Grecco v. Age Fotostock Am., Inc.*, 2021 WL 3353926, at *3 (S.D.N.Y. Aug. 2, 2021) (Rakoff, J.; "The Court cannot accept the website's statements on the ownership and operation of the website as true and does not consider these extrinsic documents in evaluating the motion to dismiss.").

[18]  Nor does this shareholder appear in the Initial Disclosures of the LifeStance Defendants, dated May 1, 2023, where Defendants were obligated under Rule 26 to disclose each individual that Defendants intended to rely upon for their claims and defenses in this action.

shares from a lone shareholder, representing only 0.52% of the 46 million IPO shares, would be subject to Defendants' speculative traceability defense—hardly a "significant number."[19]

Moreover, even if Defendants had provided legitimate proof, the traceability of post-December 21, 2021 purchases constitutes "a common factual problem" among such purchasers. *See Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *9 (C.D. Cal. Aug. 13, 2018) ("declin[ing] to impose" an end date on the class period when non-IPO shares entered the market).[20] Defendants readily admit that all post-December 21, 2021 purchasers are commonly situated, as their shares are "each indistinguishable from the other." Opp. at 14. Accordingly, Defendants' cases, which depict a scenario in which "all class members are required to provide individualized evidence that they suffered an injury," *Honest Co.*, 2023 WL 3190506, at *5, are inapposite when only a small fraction of the Class would be faced with a tracing inquiry. In other words, because tracing would be a "fatal similarity" among all post-December 21, 2021 purchasers—as opposed to a "fatal dissimilarity" among individual members of the class—"[c]ourts should engage that question as a matter of summary judgment, not class certification." *Sudunagunta*, 2018 WL 3917865, at *9.

## CONCLUSION

For the foregoing reasons and those in his opening papers, Lead Plaintiff respectfully requests that the Court: (i) certify this case as a class action; (ii) appoint Nayani to serve as Class Representative; and (iii) appoint Robbins Geller to serve as Class Counsel.

---

[19] By contrast, Defendants' cases involve situations where, unlike here, there was no dispute about the authenticity or accuracy of the proffered traceability defense evidence. *See, e.g.*, *In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *3-5 (C.D. Cal. May 1, 2023).

[20] Defendants cite *In re Puda Coal Securities Inc. Litigation*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013), but omit that the portion they cite relates to a motion for *summary judgment* on a full factual record. *Id.* at *8-10. If anything, *Puda Coal* reinforces that summary judgment—not class certification—is the appropriate setting for resolving Defendants' traceability defense.

DATED: July 28, 2023                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK T. MILLKEY
MICHAEL G. CAPECI
BRENT E. MITCHELL


                 */s/ Samuel H. Rudman*
                 SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mmillkey@rgrdlaw.com
mcapeci@rgrdlaw.com
bmitchell@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONAH H. GOLDSTEIN (*admitted pro hac vice*)
SCOTT H. SAHAM (*admitted pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
jonahg@rgrdlaw.com
scotts@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

- 11 -