UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

NIZAR S. NAYANI, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

      vs.

LIFESTANCE HEALTH GROUP, INC.,
MICHAEL K. LESTER, J. MICHAEL
BRUFF, ROBERT BESSLER, DARREN
BLACK, JEFFREY CRISAN, WILLIAM
MILLER, JEFFREY RHODES, ERIC
SHUEY, KATHERINE WOOD, MORGAN
STANLEY & CO. LLC, GOLDMAN SACHS
& CO. LLC, J.P. MORGAN SECURITIES
LLC, JEFFERIES LLC, TPG CAPITAL BD,
LLC, UBS SECURITIES LLC, and WILLIAM
BLAIR & COMPANY, L.L.C.,

                 Defendants.

———————————————————————— x

:   Civil Action No. 1:22-cv-06833-JSR

:   <u>CLASS ACTION</u>

:   MEMORANDUM OF LAW IN SUPPORT
:   OF LEAD PLAINTIFF'S UNOPPOSED
:   MOTION FOR PRELIMINARY APPROVAL
:   OF SETTLEMENT

4855-5917-8119.v1

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..............................................................2

I.      Procedural History and Lead Plaintiff's Investigation..........................................2

II.     Discovery ..............................................................................................................4

III.    Class Certification................................................................................................5

IV.    Negotiation of the Settlement and the Terms of the Proposed Settlement .........5

ARGUMENT ..........................................................................................................................6

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................6

      A.    Standards for Preliminary Approval of a Proposed Class Action Settlement ..................................................................................................6

      B.    Rule 23(e)(2)(A): Zealous Representation................................................8

      C.    Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel .....................................9

      D.    Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits .................................................................................................10

            1.    Despite Strong Claims, Many Risks to Recovery Remained ....................10

            2.    The Effective Process for Distributing Relief to the Class ........................14

            3.    The Settlement Does Not Excessively Compensate Lead Counsel ...........15

      E.    Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another .....................................................................................................16

II.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ...........................17

III.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ...........................19

CONCLUSION........................................................................................................................19

## TABLE OF AUTHORITIES

**Page**

### CASES

*City of Warren Police & Fire Ret. Sys. v. WWE, Inc.*,
2021 WL 911216 (S.D.N.Y. Mar. 7, 2021) ...............................................................................8

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................................................8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................11

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
293 F.R.D. 459 (S.D.N.Y. 2013) ..............................................................................................7

*In re BHP Billiton Ltd. Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)..........................................................................15

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ..............................................................................................7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).......................................................................10

*In re Merrill Lynch & Co., Rsch. Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................................13

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................................9

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
2023 WL 3069770 (S.D.N.Y. Apr. 25, 2023)..........................................................................15

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ............................................................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950).................................................................................................................17

*Scheufele v. Tableau Software, Inc.*,
2021 WL 9681019 (S.D.N.Y. Sept. 17, 2021).........................................................................15

4855-5917-8119.v1

**Page**

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .........................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................................6, 17

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)..........................................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k.........................................................................................................................................3
    §77o.........................................................................................................................................3
    §77z-1(a)(4) ...........................................................................................................................16
    §77z-1(a)(7)(A)-(F).................................................................................................................18

Federal Rules of Civil Procedure
    Rule 23(a)................................................................................................................................5
    Rule 23(b)(3)...........................................................................................................................5
    Rule 23(c)(2)(B)....................................................................................................................17
    Rule 23(e).............................................................................................................................1, 7
    Rule 23(e)(1)(B).....................................................................................................................7
    Rule 23(e)(2).......................................................................................................................7, 8
    Rule 23(e)(2)(A) .....................................................................................................................8
    Rule 23(e)(2)(B).....................................................................................................................9
    Rule 23(e)(2)(C)...................................................................................................................10
    Rule 23(e)(2)(C)(iv)..............................................................................................................16
    Rule 23(e)(2)(D) ...................................................................................................................16

**SECONDARY AUTHORITIES**

*Recent Trends in Securities Class Action Litigation: H1 2023 Update*
    Edward Flores and Svetlana Starykh
    (NERA Economic Consulting Aug. 2, 2023) .........................................................................14

*Newberg on Class Actions*
    William B. Rubenstein (5th ed. 2015)
    §13:12 .....................................................................................................................................7
    §13:13 .....................................................................................................................................7

4855-5917-8119.v1

**PRELIMINARY STATEMENT**

Lead Plaintiff and Class Representative Nizar S. Nayani ("Lead Plaintiff" or "Nayani"), on behalf of himself and all other members of the proposed Class,[1] respectfully submits this memorandum of law in support of his unopposed motion for preliminary approval of the proposed Settlement reached in the above-captioned class action (the "Action"). The Settlement would provide a recovery of $50 million in cash to resolve this securities class action brought against LifeStance Health Group, Inc. ("LifeStance" or the "Company"), Michael K. Lester, J. Michael Bruff, Robert Bessler, Darren Black, Jeffrey Crisan, William Miller, Jeffrey Rhodes, Eric Shuey, Katherine Wood, Morgan Stanley & Co., LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Jefferies LLC, TPG Capital BD, LLC, UBS Securities LLC, and William Blair & Company, L.L.C. (collectively, "Defendants"). The terms of the proposed Settlement are set forth in the Stipulation, which was entered into by all Parties to the litigation, and is submitted herewith.

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval by the Court given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator, represents a favorable recovery that falls well within the range of possible approval, and otherwise meets all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. Through the Court's grant of preliminary approval, Lead Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential members of the Class. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and members of the Class may present arguments and evidence for and against

---

[1]    All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation of Settlement, dated October 13, 2023 (the "Stipulation"). The Stipulation is annexed as Exhibit 1 to the Declaration of Michael G. Capeci ("Capeci Decl."), filed herewith.

4855-5917-8119.v1

the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release Form ("Claim Form"), and Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iii) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Nayani pursuant to the PSLRA; and (v) appoint A.B. Data, Ltd. ("A.B. Data"), which was selected after a competitive bidding process, to administer the Settlement process.

<b>FACTUAL AND PROCEDURAL BACKGROUND</b>

**I.      Procedural History and Lead Plaintiff's Investigation**

On August 10, 2022, Nayani filed a proposed securities class action in the Court, on behalf of investors in LifeStance, alleging violations of the Securities Act of 1933 ("Securities Act") in connection with LifeStance's initial public offering ("IPO"). ECF 1. On November 17, 2022,

after oral argument and pursuant to the PSLRA, the Court issued an order appointing Nayani as Lead Plaintiff and appointing Robbins Geller Rudman & Dowd LLP as Lead Counsel to represent the proposed class. ECF 40.

Before and after his appointment, Lead Plaintiff engaged in a thorough investigation for the purpose of drafting a comprehensive amended complaint, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, LifeStance earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Through its own internal investigation, Lead Counsel identified former LifeStance employees and other persons with relevant knowledge, and interviewed several of them.

On December 19, 2022, Lead Plaintiff filed his Amended Complaint for Violations of Federal Securities Laws (the "Complaint") asserting claims against Defendants under Sections 11 and 15 of the Securities Act. ECF 45. The Complaint is focused on Defendants' alleged failure to disclose a known, pre-IPO increase in turnover of LifeStance's licensed clinicians, and the reasons for that increase, in the Registration Statement provided to investors for the Company's June 10, 2021 IPO. *Id.*, ¶¶67-79.

On January 18, 2023, Defendants filed their motion to dismiss, ECF 46-48, which Lead Plaintiff opposed, ECF 49. After oral argument, on April 10, 2023, the Court denied Defendants' motion. ECF 52. On April 17, 2023, the Court entered the Civil Case Management Plan, with a trial ready date of November 16, 2023. ECF 56.

4855-5917-8119.v1

## II.    Discovery

In connection with formal discovery, which commenced in April 2023 once the motion to dismiss was resolved, Lead Plaintiff and Defendants exchanged extensive written discovery of the Parties and Lead Plaintiff requested discovery from relevant third-parties.  Lead Plaintiff spent dozens of hours conferring with Defendants and third parties over the scope of fact and expert discovery.

Defendants produced over 779,000 pages of documents to Lead Plaintiff, and Lead Plaintiff produced 2,130 pages of documents to Defendants.  Lead Plaintiff also obtained more than 1,700 pages of documents from two third-parties.  In total, nearly 800,000 pages of documents were produced by the Parties and third parties in connection with discovery.

Here, as part of fact discovery and among other things, Lead Counsel negotiated with Defendants concerning the production of electronically stored information (ECF 66), took four in-person depositions of LifeStance employees, and was preparing for the depositions of thirteen additional LifeStance witnesses at the time the Parties reached an agreement-in-principle.

Lead Plaintiff also retained the services of two experts – one in accounting disclosures and one in damages and causation – who provided detailed written reports on August 7, 2023. Defendants likewise submitted two expert reports on that date, which Lead Plaintiff responded to on August 28, 2023, assisted by his damages expert and a third expert, in underwriter due diligence, that Lead Plaintiff had retained.  Defendants likewise retained a third expert to respond to Lead Plaintiff's accounting disclosure expert.  At the time the Parties reached an agreement-in-principle, each of these experts was scheduled to be deposed.

4855-5917-8119.v1

### III.    Class Certification

On June 2, 2023, Lead Plaintiff filed his motion for class certification and appointment of class counsel.  ECF 62-65.  On June 30, 2023, Defendants filed their opposition to Lead Plaintiff's motion for class certification and appointment of class counsel.  ECF 67.  In connection with Lead Plaintiff's class certification motion, Defendants deposed Lead Plaintiff.  On July 28, 2023, Lead Plaintiff filed his reply in support of class certification.  ECF 73.

Following the August 24, 2023 oral argument on Lead Plaintiff's class certification motion, on September 7, 2023, the Court issued an order granting class certification but limiting the class to purchasers of LifeStance common stock no later than November 8, 2021.  ECF 80.  On September 28, 2023, the Court issued an opinion explaining the reasoning behind the order granting class certification.  ECF 81.  The Court found, *inter alia*, that Nayani "satisfies the requirements of Rule 23(a)" and "has also met the predominance and superiority requirements of Rule 23(b)(3)."  *Id.* at 7-8.

### IV.    Negotiation of the Settlement and the Terms of the Proposed Settlement

In July 2023, counsel for the Parties met and conferred on the possibility of a pre-trial resolution of the Action.  Specifically, the Parties agreed to engage in a mediation and subsequently retained the Hon. Layn R. Phillips (Ret.) to act as a mediator in the Action.  Retired Judge Phillips is a well-respected mediator with substantial experience in securities class actions.

On September 13, 2023, Lead Counsel, Lead Plaintiff, and Defendants' Counsel, among others, participated in a full-day mediation session before the Mediator.  In advance of the mediation, the Parties submitted detailed mediation statements to the Mediator, together with over 30 exhibits, which highlighted each of the Party's best facts and arguments, and addressed both liability and damages issues.  Following the mediation on September 13, 2023, the Parties reached

4855-5917-8119.v1

an agreement-in-principle to settle the Action based on the Mediator's proposed recommendation, which was memorialized in a binding term sheet executed and finalized on September 27, 2023 (the "Term Sheet"), subject to the execution of a "customary long form" stipulation and agreement of settlement and related papers.  That same day, the Parties notified the Court of their agreement-in-principle and requested a stay of the Action, which was ordered on September 28, 2023.

The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims ("Released Plaintiff's Claims"), in return for a cash payment on behalf of Defendants of $50 million for the benefit of the Class (the "Settlement Amount").  Because of LifeStance's current financial position and level of applicable insurance, the Parties have structured the Settlement such that 50% of the Settlement Amount ($25,000,000) will be paid within 30 days of the Settlement receiving preliminary approval from the Court, and the remaining 50% of the Settlement Amount ($25,000,000) will be paid within 30 days of the Settlement receiving final approval from the Court.

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation.  *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]").[2]  This is especially so in securities class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d

---

[2]    All internal quotations and citations are omitted, unless otherwise noted.

- 6 -

4855-5917-8119.v1

96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).  District court review of a class action settlement proposal is a two-step process.  William B. Rubenstein, *Newberg on Class Actions* §13:12 (5th ed. 2015).  The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class.  *Id.*, §13:13.

Rule 23(e) was recently amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and be able to certify the class.[3]  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

---

[3]    As noted above, the Court has previously certified the Class, and there is no difference between the certified Class and any proposed "settlement class."

- 7 -

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing

of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4]  The Rule 23 amendment, which became effective in December 2018,

has not changed the overall standard for approving a settlement, *i.e.*, whether or not the settlement

is fundamentally fair, adequate, and reasonable.  The proposed Settlement here readily satisfies all

these factors and should be preliminarily approved.  *See, e.g.*, *City of Warren Police & Fire Ret.*

*Sys. v. WWE, Inc.*, 2021 WL 911216 (S.D.N.Y. Mar. 7, 2021) (Rakoff, J.).

## B.    Rule 23(e)(2)(A): Zealous Representation

Lead Plaintiff and Lead Counsel have zealously prosecuted this Action on behalf of the

Class since its inception and will continue to do so throughout the administration of the Settlement

to secure and deliver its benefits.  Nayani was an active and informed participant in the litigation

who, among other things, testified before this Court as to his ability to supervise counsel and

---

[4]    In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; and (7) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.  *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

4855-5917-8119.v1

oversee the litigation during the Lead Plaintiff hearing, and was deposed by Defendants. Faithfully executing this duty, Nayani oversaw the drafting of the Complaint, discovery, and his motion for class certification. Nayani was aware of both the Class's and Defendants' best arguments concerning liability and damages in connection with the mediation, and was consulted on and approved the terms of the Settlement.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and interviews of former employees; (ii) briefing on Defendants' motion to dismiss; (iii) engaging in extensive discovery efforts; (iv) working with experts in accounting, underwriter due diligence, and damages and causation issues; and (v) briefing Lead Plaintiff's motion for class certification. In consultation with its damages expert, Lead Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $50 million recovery. In its Opinion and Order granting Lead Plaintiff's Motion for Class Certification, this Court held that "Nayani and Robbins Geller have 'actively and diligently prosecuted this action on behalf of the proposed Class.'" ECF 81 at 14-15. Accordingly, the Class has been, and remains, well represented.

> **C.      Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

4855-5917-8119.v1

Here, Lead Plaintiff is represented by an experienced and skilled firm in securities class litigation.  *See* Capeci Decl., Ex. 2 (Robbins Geller Rudman & Dowd LLP firm resume).[5]  Lead Counsel believes that the proposed Settlement is an excellent result for the Class given the attendant risks and recommends that the Settlement be preliminarily approved.

In addition, Lead Plaintiff and Lead Counsel only agreed to settle the claims after a rigorous factual investigation and consultation with experts, and after testing the Parties' claims and defenses through a mediation process overseen by a highly experienced third-party neutral, the Hon. Layn R. Phillips (Ret.).  In fact, the accepted Settlement was the product of Retired Judge Phillips' own recommendation to the Parties.  "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).  In addition, the Settlement was negotiated with the oversight of Nayani, who recommends that the Settlement be approved.  Thus, the good faith process leading to the Settlement weighs strongly in favor of granting approval.

### D.    Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits

#### 1.    Despite Strong Claims, Many Risks to Recovery Remained

To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement.  Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendants advanced several substantial arguments concerning liability and

---

[5]    Defendants were represented by two well-regarded law firms: Ropes & Gray LLP and Davis Polk & Wardwell LLP.

4855-5917-8119.v1

damages which, if successful, would have resulted in no recovery for the Class.  It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014).

With respect to liability, Lead Plaintiff would have faced significant hurdles in connection with ultimately proving materiality and falsity of the alleged misstatements in the offering materials.  For instance, Defendants were expected to advance evidence supporting the arguments that: (i) the Registration Statement contained adequate warnings that future clinician growth was uncertain and made clear that the 87% retention rate was a historical number from March 2017 to December 31, 2020, and that it was not intended to serve as a prediction for the future; (ii) the Company could not have predicted that "The Great Resignation" caused by the COVID-19 pandemic would lead to an unexpected decline in LifeStance's number of clinicians around the time of the IPO; (iii) the Company did not have sufficiently reliable data systems in place as of the IPO to detect or analyze any trends in clinician retention; (iv) analysts and investors did not treat the Company's clinician retention rate as material information; (v) the decrease in LifeStance's clinician retention rate did not harm the Company's profitability in fiscal year 2021; and (vi) the Underwriter Defendants reasonably relied on the Company's representations regarding clinician retention, and had no reason or information at their disposal to believe that the clinician retention rate had materially changed following December 31, 2020.  Given the evidence advanced or likely to be advanced by Defendants at summary judgment and trial, Lead Plaintiff faced significant challenges in establishing materiality and falsity.

Furthermore, even if the hurdles to establishing liability were overcome, Lead Plaintiff would have confronted significant challenges in proving damages.  Defendants would have argued,

- 11 -

as they did in opposing class certification, that the only decline in LifeStance's common stock that could provide any recovery under the Securities Act is the Company's provision of earnings results and guidance on August 11, 2021, and that even this decline could not count for any damages because the information provided on August 11, 2021, reflected the post-IPO materialization of risks regarding clinician retention that had been disclosed in the Registration Statement. Likewise, with respect to the disclosure on November 8, 2021, Defendants would have again argued that no new information was disclosed on that date and that the decline in LifeStance's common stock that day was due to unrelated information about the Company. If such arguments were accepted by the Court or a jury, in whole or part, they would have dramatically limited or entirely removed any potential recovery. And, as a practical matter, LifeStance had access to limited applicable insurance funds and does not have sufficient cash reserves to satisfy a judgment, even for just the August 11 decline.

Lead Plaintiff consulted with an expert in damages and loss causation who has worked on numerous securities class action matters, and who analyzed class wide damages in light of the facts and circumstances presented in the case and developed through the discovery process. Lead Plaintiff's expert has estimated that maximum damages attributable to Lead Plaintiff's claims – assuming the inclusion of the August 11 and November 8 declines – is $392 million. The Settlement represents approximately 12.8% of this estimate of reasonably achievable damages. Assuming that only the full amount of the decline on August 11 could be recovered, Lead Plaintiff's expert has estimated that damages would be $356 million. The Settlement represents approximately 14.1% of this estimate of achievable damages. Assuming that Defendants' negative

- 12 -

causation argument for the decline on August 11 is accepted,[6] Lead Plaintiff's expert has estimated that damages would be $223 million.  The Settlement represents approximately 22.4% of this estimate of achievable damages.

The below table provides a range of possible outcomes and percentages of recovery, assuming various permutations of liability over various potential Class Periods:

| Class Period | Disaggregated Damages | Percentage of Recovery ($39 million settlement) |
|---|---|---|
| 6/10/21 – 11/9/21 | $392M | 12.8% |
| 6/10/21 – 8/12/21 | $356M | 14.1% |
| 6/10/21 – 8/12/21 (assuming negative causation) | $222.64M | 22.4% |

These percentages of recovery are well above the range of settlements that have received approval within this District.  *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co., Rsch. Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

---

[6]    Lead Plaintiff expects that Defendants would argue that there were two pieces of negative information revealed on August 11 – one relating to clinician retention and one that is unrelated to Lead Plaintiff's claims.

Moreover, the $50 million recovery is well-above the average settlement amount of $38 million for securities class actions in the first half of 2023, and is far higher than the median recovery in the first half of 2023 of $16 million.  *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2023 Update* at 8 fig. 7 and 9 fig. 8 (NERA Economic Consulting Aug. 2, 2023), Capeci Decl., Ex. 3.  Thus, compared to other similarly situated cases resolved so far this year, the Settlement is a very favorable outcome for the Class.

### 2.    The Effective Process for Distributing Relief to the Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action.  Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund.  *See* Stipulation, ¶22.  Lead Plaintiff's claim will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims.  *Id*., ¶28.  Any claim disputes that cannot be resolved will be presented to the Court for a determination.  *Id*.

After the Settlement reaches its Effective Date (*id*., ¶37) and the claims process is completed, Authorized Claimants will be issued payments.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated

expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, if there are remaining funds, Lead Plaintiff will request Court approval of payment of this residual to the Investor Protection Trust.[7]

### 3. The Settlement Does Not Excessively Compensate Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek an award of attorneys' fees of no more than 25% of the Settlement Fund, an amount that is below the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g.*, *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 2023 WL 3069770, at *12 (S.D.N.Y. Apr. 25, 2023) (awarding 30% of $30.75 million settlement, plus expenses); *Scheufele v. Tableau Software, Inc.*, 2021 WL 9681019, at *1 (S.D.N.Y. Sept. 17, 2021) (awarding 28% of $95 million settlement); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million settlement, plus expenses). Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action, in an amount not to exceed $700,000. Lead Counsel is aware of the Court's practice of awarding Litigation Expenses and 50% of

---

[7] The Investor Protection Trust is a 501(c)(3) non-profit organization dedicated to investor education and protection (investorprotection.org).

4855-5917-8119.v1

awarded fees upon approval and the remaining 50% of fees when the Net Settlement Fund is distributed to eligible claimants.

### E.   Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any segment of the Class.  Rather, all members of the Class, including Lead Plaintiff, will receive a *pro rata* distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[8]  The proposed plan was created by Lead Plaintiff's damages expert and is consistent with Lead Plaintiff's theories of damages under the Securities Act.  All Class Members that were allegedly harmed as a result of the alleged misstatements and omissions from the Registration Statement, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.  Notice ¶¶59-62.  *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").[9]

---

[8]   Lead Plaintiff will seek reimbursement of his reasonable costs and expenses (including lost wages) directly related to his participation in the Action, pursuant to the PSLRA.  This would not constitute preferential treatment.  *See* 15 U.S.C. §77z-1(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

[9]   Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement.  Here, on October 13, 2023, the Parties entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement").  Stipulation, ¶39.  The Supplemental Agreement sets forth the conditions under which LifeStance shall have the option to terminate the Settlement in the event that requests for exclusion from the Class exceed a certain agreed-upon threshold.  As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or

- 16 -

## II.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances."  It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied if the notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Class and objecting to any aspect of the Settlement; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Class; and (vii) the date, time and place of the Settlement Hearing.  The Notice also satisfies the PSLRA's separate requirements by, *inter alia*, stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on

---

under seal.  The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

4855-5917-8119.v1

an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §77z-1(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notice by mail, publication in *The Wall Street Journal*, a national newspaper focusing on investors, and dissemination over the internet using a wire service. To the extent email addresses are provided to the Claims Administrator, the Notice will also be emailed.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to all Class Members who can be identified and located, using information provided by LifeStance's transfer agent, as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases.[10]  The Notice and Claim Form will be available on the Settlement website.

Lead Plaintiff also requests that the Court appoint A.B. Data as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement.  A.B. Data is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* Capeci Decl., Ex. 4.  A.B. Data was chosen after a competitive bidding process.  Its fees and expenses, payable from the Settlement Fund, will be based primarily on the number of notices mailed and claims processed, but it has estimated that if 50,000 notices are mailed and 20,000 claims are received, Notice and Administration Expenses will total approximately $250,000.

---

[10]    Because of the availability of name and address data for potential class members from third-parties, and the Claims Administrator's ability to reach class members through individual mailed notice, Lead Counsel and the Claims Administrator have conferred and determined that using social media outreach would not be necessary here.

4855-5917-8119.v1

## III.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule is triggered by the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing – which Lead Plaintiff requests be approximately 100 days from entry of the Order in order to comply with the Class Action Fairness Act and to allow recipients of the Notice sufficient time to act:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to potential members of the Class (the "Notice Date") | *No later than 21 calendar days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 7 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *No later than 7 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order. Any scheduling updates will be posted on the Settlement website.* |

### CONCLUSION

Lead Counsel obtained a very good Settlement for the Class, and for the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Class; (iii) appoint A.B. Data as Claims Administrator; and

- 19 -

4855-5917-8119.v1

(iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and

related matters, and grant such other and further relief as may be required.

DATED:  October 13, 2023                    Respectfully submitted,

                                        ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                        SAMUEL H. RUDMAN
                                        MARK T. MILLKEY
                                        MICHAEL G. CAPECI
                                        BRENT E. MITCHELL

                                                */s/ Samuel H. Rudman*
                                              SAMUEL H. RUDMAN

                                      58 South Service Road, Suite 200
                                      Melville, NY  11747
                                      Telephone:  631/367-7100
                                      631/367-1173 (fax)
                                      srudman@rgrdlaw.com
                                      mmillkey@rgrdlaw.com
                                      mcapeci@rgrdlaw.com
                                      bmitchell@rgrdlaw.com

                                      *Lead Counsel for Lead Plaintiff*

- 20 -

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

_/s/ Samuel H. Rudman_
SAMUEL H. RUDMAN

4855-5917-8119.v1