UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| NIZAR S. NAYANI, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>       Defendants. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Civil Action No. 1:22-cv-06833-JSR<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

4860-8941-0966.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND...........................................................3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS.........................................................................................................4

      A.    The Law Favors and Encourages Settlements ...........................................4

      B.    The Settlement Must Be Procedurally and Substantively Fair, Adequate,
            and Reasonable ........................................................................................5

      C.    The Proposed Settlement Is Procedurally and Substantively Fair,
            Adequate, and Reasonable .........................................................................7

            1.    The Settlement Satisfies the Requirements of Rule 23(e)(2).......................7

                  a.    Lead Plaintiff and Lead Counsel Have Adequately
                        Represented the Class ......................................................7

                  b.    The Proposed Settlement Was Negotiated by Experienced
                        Counsel at Arm's Length Before an Experienced Mediator............9

                  c.    The Proposed Settlement Is Adequate in Light of the
                        Litigation Risks, Costs, and Delays of Trial and Appeal................9

                        (1)    The Risks of Establishing Liability at Trial.........................9

                        (2)    The Risks of Establishing Damages at Trial......................11

                        (3)    The Settlement Eliminates the Additional Costs and
                               Delay of Continued Litigation .........................................12

                  d.    The Proposed Method for Distributing Relief Is Effective............13

                  e.    Lead Counsel's Request for Attorneys' Fees Is Reasonable .........15

                  f.    The Parties Have No Other Agreements Besides Opt-Outs ..........15

                  g.    The Settlement Ensures Class Members Are Treated
                        Equitably...................................................................................16

            2.    The Settlement Satisfies the Remaining *Grinnell* Factors........................16

4860-8941-0966.v1

**Page**

a.    The Lack of Objections Supports Final Approval ..........................16

b.    Lead Plaintiff Had Sufficient Information to Make an
      Informed Decision Regarding the Settlement................................17

c.    Maintaining Class-Action Status Through Trial Presents a
      Substantial Risk ...........................................................................18

d.    Defendants' Ability to Withstand a Greater Judgment..................18

e.    The Settlement Amount Is Reasonable in View of the Best
      Possible Recovery and the Risks of Litigation .............................19

IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................................20

V.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23
      AND DUE PROCESS .............................................................................................22

VI.    CONCLUSION......................................................................................................24

4860-8941-0966.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)................................................................................21

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..........................................................19

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................. *passim*

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .................................................................16, 18, 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)......................................................................................7

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)......................................................................................9

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...................................................................... *passim*

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) .........................................................................24

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................4, 12, 21

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987).......................................................................19

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................10

4860-8941-0966.v1

**Page**

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...........................................................12, 17, 19

*In re BHP Billiton Ltd. Sec. Litig.*,
  2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019),
  *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*,
  806 F. App'x 17 (2d Cir. 2020) .........................................................................15

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) ..........................................................7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018),
  *aff'd sub nom. In re Facebook Inc.*,
  822 F. App'x 40 (2d Cir. 2020) ................................................................. *passim*

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................10

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .....................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................6, 9, 19

*In re GSE Bonds Antitrust Litig.*,
  2020 WL 3250593 (S.D.N.Y. June 16, 2020) ......................................................17

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................5, 12, 21

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................22

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997).................................................................20, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019).........................................................................6, 7

4860-8941-0966.v1

**Page**

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2020 WL 4196468 (S.D.N.Y July 21, 2020) ................................................................8, 10, 20

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
　2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..................................................................19

*In re Telik, Inc. Sec. Litig.*,
　576 F. Supp. 2d 570 (S.D.N.Y. 2008)..........................................................................12

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)................................................................16

*Martignago v. Merrill Lynch & Co.*,
　2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013)...............................................................17

*McMahon v. Olivier Cheng Catering & Events, LLC*,
　2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .............................................................4, 18

*Mikhlin v. Oasmia Pharm. AB*,
　2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) .............................................................12, 14

*Moses v. New York Times Co.*,
　2023 WL 5281138 (2d Cir. Aug. 17, 2023).....................................................................6

*Nayani v. LifeStance Health Grp., Inc., et al.*,
　2023 WL 6311475 (S.D.N.Y. Sept. 28, 2023)..............................................................2, 8

*Newman v. Stein*,
　464 F.2d 689 (2d Cir. 1972)........................................................................................19

*Padro v. Astrue*,
　2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013)................................................................23

*Pearlstein v. BlackBerry Ltd.*,
　2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).................................................................4

*Rodriguez v. CPI Aerostructures, Inc.*,
　2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)............................................................6, 9, 24

*Snyder v. Ocwen Loan Servicing, LLC*,
　2019 WL 2103379 (N.D. Ill. May 14, 2019).................................................................7

*Strougo v. Bassini*,
　258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................13

4860-8941-0966.v1

**Page**

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................................................18

*Vargas v. Cap. One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ............................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)...............................................................................4, 5, 17, 22

*Yuzary v. HSBC Bank USA, N.A.*,
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ....................................................................6, 17

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77k(e) ..................................................................................................................................21
§77z-1(a)(4) .........................................................................................................1, 15, 20, 23

Federal Rules of Civil Procedure
Rule 23 ..................................................................................................................................22
Rule 23(a)(2) ...........................................................................................................................5
Rule 23(c)..............................................................................................................................18
Rule 23(c)(2)(B)..............................................................................................................22, 23
Rule 23(e)................................................................................................................... *passim*
Rule 23(e)(1)(B).....................................................................................................................22
Rule 23(e)(2) ............................................................................................................. *passim*
Rule 23(e)(2)(A) ..................................................................................................................7, 8
Rule 23(e)(2)(B).......................................................................................................................9
Rule 23(e)(2)(C)(i)................................................................................................................9, 13
Rule 23(e)(2)(C)(ii)................................................................................................................13
Rule 23(e)(2)(C)(iii)..............................................................................................................15
Rule 23(e)(2)(C)(iv)...............................................................................................................15
Rule 23(e)(2)(D) ....................................................................................................................16
Rule 23(e)(3)......................................................................................................................5, 15

## SECONDARY AUTHORITIES

*Securities Class Action Settlements, 2022 Review and Analysis*
Laarni T. Bulan and Laura E. Simmons (Cornerstone Research 2023)...................................20

4860-8941-0966.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Nizar S. Nayani respectfully submits this memorandum of law in support of his motion for final approval of the $50,000,000 Settlement (the "Settlement Amount") reached in this action (the "Action") and approval of the Plan of Allocation (the "Plan"). The terms of the Settlement are set forth in the Stipulation of Settlement dated October 13, 2023 (the "Stipulation"). ECF 84-1.[1]

## I.    INTRODUCTION

Lead Plaintiff's $50 million recovery is the result of his rigorous effort to prosecute this highly complex litigation, reached following lengthy arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a nationally renowned mediator. The Settlement represents a very good result for the Class under the circumstances and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks Lead Plaintiff faced. The gravamen of Lead Plaintiff's claims was that Defendants misrepresented and omitted material facts in the Registration Statement for LifeStance's June 10, 2021 initial public offering ("IPO") related to the Company's clinician retention rate. Capeci Decl., ¶23. On August 11, 2021, shortly after the IPO, LifeStance disclosed its financial results for the second quarter of 2021 and revised its financial projections for the second half of 2021. Complaint, ¶¶97-111.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation and the Declaration of Michael G. Capeci in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Capeci Decl." or "Capeci Declaration"), submitted herewith. Citations are omitted and emphasis is added throughout unless otherwise noted.

- 1 -

LifeStance revised downwards its expected profit margin and EBITDA for the second half of 2021, attributing these declines to its struggles with clinician retention. *Id.*, ¶107. Following the news, LifeStance stock declined by approximately 46%. *Id.*, ¶109. On November 8, 2021, LifeStance reported its financial results for the third quarter of 2021 and further refined its financial projections for the remainder of the year. *Id.*, ¶¶114-115. The press release also stated that its clinician retention rate had stabilized, albeit at a rate lower than that "touted" in the Registration Statement. *Nayani v. LifeStance Health Grp., Inc., et al.*, 2023 WL 6311475, at *2 (S.D.N.Y. Sept. 28, 2023). Following this news, LifeStance's stock declined again, causing Class Members to suffer significant financial losses and damages.

While Lead Plaintiff believes in the merits of his claims, Defendants had strong arguments that Lead Plaintiff could not establish the elements of falsity and materiality. Capeci Decl., ¶¶117-121. Defendants also maintained that to the extent the Class suffered any damages (which Defendants vehemently denied), they were far lower than the amount estimated by Lead Plaintiff's expert.

As detailed in the Capeci Declaration, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted a significant factual investigation into the merits of the claims, briefed Defendants' motion to dismiss and Lead Plaintiff's class certification motion, engaged in extensive document and deposition discovery, retained experts and served expert reports, and participated in formal mediation with the Hon. Layn R. Phillips (Ret.), an experienced mediator. Lead Plaintiff and Lead Counsel also knew that despite their belief in the merits of the claims, there existed the possibility of little or no recovery at all. Moreover, a skilled and highly reputable securities litigation mediator assisted the parties in reaching a resolution of the case for $50 million.

- 2 -

Further confirming the fairness, reasonableness, and adequacy of the Settlement is the fact that, to date, Class Members have reacted positively.  Pursuant to the Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order") (ECF 86), over 14,000 Claims Packets were sent to potential Class Members and nominees, and notice was published once over a national newswire service and once in *The Wall Street Journal*.  *See* Declaration of Rochelle J. Teichmiller ("Teichmiller Decl."), dated December 18, 2023, submitted as Exhibit 2 to the Capeci Declaration.  To date, Lead Plaintiff is not aware of a single objection to the Settlement.  Only one request for exclusion from the Class was sent to Lead Counsel.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice.  The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed to Authorized Claimants.  It was prepared in consultation with Lead Counsel's damages consultant, and provides a reasonable and equitable method for allocating the Net Settlement Fund among Class Members who submit valid claims.  It is fair, reasonable, and adequate, and should be approved.

Given the risks to proceeding and the recovery obtained, Lead Plaintiff respectfully submits that the $50 million Settlement and the Plan of Allocation are fair and reasonable in all respects.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Capeci Declaration for a detailed discussion of the factual background and procedural history of the Action,

- 3 -

4860-8941-0966.v1

the extensive efforts undertaken by Lead Plaintiff and his counsel during the course of the Action, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462. *See also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) (When considering whether to approve a settlement, courts should not decide the final merits or resolve unsettled legal questions, particularly "in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

As set forth below, the $50 million Settlement here, particularly in light of the significant litigation risks Lead Plaintiff faced, is manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a settlement. Accordingly, the Settlement warrants final approval from this Court.

B.    **The Settlement Must Be Procedurally and Substantively Fair,
Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement.

The Settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ.

P. 23(e)(2).  In considering final approval of a class action settlement, courts in the Second Circuit

have held that a court should examine both the negotiating process leading to the settlement and the

settlement's substantive terms.  *Wal-Mart*, 396 F.3d at 116; *In re IMAX Sec. Litig.*, 283 F.R.D. 178,

188 (S.D.N.Y. 2012).

Pursuant to Rule 23(a)(2), a court may approve a settlement as "fair, reasonable, and

adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the
class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the
class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing
of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"),

which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action

settlement:

- 5 -

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* [F]actors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"); *Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *28 (E.D.N.Y. Feb. 16, 2023) (same).  The revisions to Rule 23(e)(2) were "not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments, Subdivision (e)(2).

For a settlement to be deemed substantively and procedurally fair, reasonable, and adequate, courts "must consider the four factors outlined in Rule 23(e)(2) holistically."  *Moses v. New York Times Co.*, 2023 WL 5281138, at *4 (2d Cir. Aug. 17, 2023).  Additionally, "'[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'"  *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013) (second and third alterations in original); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (Courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching.'").

Under Rule 23(e)(2), courts "must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of

- 6 -

final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28. As set forth in the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (ECF 83), and acknowledged by the Preliminary Approval Order (ECF 86), Lead Plaintiff meets all of the requirements imposed by Rule 23(e)(2). Courts have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

## C. The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

### 1. The Settlement Satisfies the Requirements of Rule 23(e)(2)

#### a. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

The determination of adequacy under Rule 23(e)(2)(A) "typically 'entails inquiry as to whether: 1) [P]laintiff's interests are antagonistic to the interest[s] of other members of the class and 2) [P]laintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Class. Lead Plaintiff, like all other Class Members, purchased LifeStance common stock pursuant to an allegedly false and misleading Registration Statement. Lead Plaintiff has "claims that are typical of and coextensive with those of other Class Members and has no interests

- 7 -

antagonistic to those of other Class Members.  Like other Class Members, Lead Plaintiff has an interest in obtaining the largest possible recovery from Defendants." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y July 21, 2020).

In certifying the Class in this Litigation, the Court found that Lead Plaintiff "'Nayani is adequate to serve as the Class Representative because his interests in maximizing any recovery are firmly aligned with those of the proposed Class.'"  *LifeStance*, 2023 WL 6311475, at *3.  As described in the Capeci Declaration, Lead Plaintiff and Lead Counsel have adequately represented the Class by zealously prosecuting this Action, including by, among other things, conducting an extensive investigation of the relevant factual events, drafting a highly detailed amended complaint, successfully opposing Defendants' motion to dismiss, obtaining class certification, conducting document and deposition discovery, retaining experts and serving expert reports, preparing for and participating in a mediation session before Judge Phillips, and obtaining a $50 million Settlement. *See generally* Capeci Decl.

Further, in actively overseeing and participating in the Action, Lead Plaintiff conferred with Lead Counsel regarding litigation strategy, reviewed the draft Complaint, participated in discovery by producing documents and sitting for a deposition, virtually attended the lead plaintiff hearing where he was questioned by the Court, and consulted with Lead Counsel regarding Settlement strategy and negotiations.  *See* Declaration of Nizar S. Nayani in Support of Motion for Final Approval of Settlement, submitted as Exhibit 1 to the Capeci Declaration.  Through each step of the Action, Lead Plaintiff and Lead Counsel have diligently and strenuously advocated for the best interests of the Class.  *LifeStance*, 2023 WL 6311475, at *6 ("Nayani and Robbins Geller have 'actively and diligently prosecuted this action on behalf of the proposed Class.'").  Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

4860-8941-0966.v1

**b.    The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's Length Before an Experienced Mediator**

Lead Plaintiff satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion. Capeci Decl., ¶¶130-132.  Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd sub nom. In re Facebook Inc.*, 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  Moreover, the Settlement negotiations in this case were "carried out under the direction of [Lead Plaintiff], . . . whose involvement suggests procedural fairness."  *Facebook*, 343 F. Supp. 3d at 409.

**c.    The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal**

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation. *Rodriguez*, 2023 WL 2184496, at *29.  As set forth below, these factors weigh in favor of final approval.

**(1)    The Risks of Establishing Liability at Trial**

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *Glob. Crossing*, 225 F.R.D. at 459.  As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval.  Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, . . . "have long recognized that such litigation is notably difficult and

- 9 -

notoriously uncertain.""" *Signet*, 2020 WL 4196468, at *4; *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Although Lead Plaintiff and Lead Counsel firmly believe the claims asserted in the Action are meritorious, and that they would prevail at trial, further litigation against the Defendants posed risks that made any recovery uncertain.

As set forth above and in the Capeci Declaration, at the time of the Settlement, discovery was underway, and a number of disputes concerning the scope of discovery were unresolved at the time this Settlement was reached. Defendants have vigorously contested their liability and have denied and continue to deny each and every claim and allegation of wrongdoing. Among other things, Defendants have argued that the 87% clinician retention rate provided in the Registration Statement was historically accurate, and that Defendants could not have known whether the recent, purportedly limited increase in turnover was in fact material, or even rendered the 87% figure false. Capeci Decl., ¶118. Defendants further argued that clinician retention was not a key performance indicator for the Company, but was merely a factor in assessing clinician headcount, and the rate of recruitment at LifeStance rendered the increase in clinician turnover immaterial to investors. *Id.*, ¶119. Finally, Defendants argued that any increase in clinician turnover was industry-wide as a result of the so-called "Great Resignation" associated with the aftermath of the COVID-19 pandemic, and was therefore immaterial to investors insofar as competitor companies were affected in the same way. *Id.*, ¶120.

4860-8941-0966.v1

The Underwriter Defendants also intended to invoke their "due diligence" defense to avoid liability, contending that they had conducted reasonable due diligence in light of the information made available to them. *Id*., ¶¶127-128.

In short, it was far from certain that Lead Plaintiff would be able to prove the falsity and materiality of the alleged misstatements and omissions from the Registration Statement for LifeStance's IPO through summary judgment and trial.

### (2)    The Risks of Establishing Damages at Trial

The risks of establishing liability apply with equal force to establishing damages. Here, Defendants argued that Lead Plaintiff had not adequately alleged (and could not prove) that Lead Plaintiff or the Class suffered legally cognizable damages.

As an initial matter, Defendants argued that confounding information – including the Company's revised EBITDA guidance, which Defendants maintained was driven by infrastructure investments, rather than an increase in turnover – caused or contributed to the decline in LifeStance's stock price, and Lead Plaintiff's recovery would therefore be limited to only those losses caused by the announcement of the increase in clinician turnover. *Id.*, ¶123. Defendants also argued that any market declines after August 2021 were not recoverable, because the full truth of the pre-IPO decline in the Company's retention rate had been fully disclosed. *Id.*, ¶124. Although Defendants did not prevail on this argument in their opposition to Lead Plaintiff's class certification motion, they would be expected to raise it again at summary judgment or trial.[2]

Had litigation continued, Lead Plaintiff would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and *Daubert*

---

[2]    Defendants may have also sought to file a Rule 23(f) challenge to the class certification order, but the case settled prior to the deadline to file such a motion.

challenges. As courts have long recognized, the substantial uncertainty as to which side's experts' views might be credited by a jury presents a serious litigation risk. *See Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); *IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("'[i]n this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found'"). If the Court determined that one or more of Lead Plaintiff's experts should be excluded from testifying at trial, Lead Plaintiff's case would become much more difficult to prove.

Thus, in light of the very significant risks Lead Plaintiff faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final approval.

### (3)    The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of continued litigation would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"). Securities cases like this one are by their nature complicated, and district courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y.

- 12 -

2012); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at \*10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). Indeed, if not for the Settlement, the Action would have continued through the completion of fact and expert discovery and a possible Rule 23(f) challenge to the Court's class certification decision. The subsequent motion for summary judgment, as well as the preparation for what would likely be a multi-week trial and the inevitable appeals that would follow, would have caused the Action to persist for longer before the class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Class compared to the immediate, certain monetary benefits of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Stanley*, 2005 WL 2757792, at \*6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* Factors, all weigh in favor of final approval.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement. Pursuant to the Preliminary Approval Order, over 14,000 Claims Packets were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See* Teichmiller Decl., ¶¶8-9. Additionally, a settlement-specific website was created where key

4860-8941-0966.v1

Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶11. Class Members have until January 3, 2024 to object to the Settlement and to request exclusion from the Class. While the objection and exclusion date has not yet passed, there are no objections to the adequacy of the Settlement, and only one request for exclusion from the Class has been received.

The proceeds of this Settlement will be distributed with the assistance of an experienced claims administrator. Class Members have until January 17, 2024 to submit Proofs of Claim. The claims process is similar to that typically used in securities class action settlements, and provides for straightforward cash payments based on trading information provided by claimants. A potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation, ¶22. Lead Plaintiff's claim will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id.*, ¶28. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id.* This claims process will "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Mikhlin*, 2021 WL 1259559, at *6; *see also Christine Asia*, 2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective"). This factor therefore supports final approval.

4860-8941-0966.v1

### e.      Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the Notice, and as discussed in Lead Counsel's accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum"), counsel for Lead Plaintiff seek an award of attorneys' fees in the amount of 25% of the Settlement Amount, and expenses in the amount of $571,894.58, in addition to interest on both amounts, to be paid at the time of award. As set forth in the accompanying Fee Memorandum, this request is in line with recent fee awards in this Circuit in similar common-fund cases. *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019), (awarding fees of 25% of $50 million recovery, plus expenses), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17 (2d Cir. 2020).

Lead Counsel's fee request is reasonable, and Lead Plaintiff has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments, and to date no objections have been filed. Accordingly, this factor supports final approval of the Settlement.

### f.      The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As previously disclosed in connection with Lead Plaintiff's motion for preliminary approval of the Settlement (ECF 83 at 16 n.9), the parties have entered into a supplemental agreement providing that, in the event that requests for exclusion from the Class exceed a certain agreed-upon threshold, LifeStance has the option to terminate the Settlement. As is

- 15 -

standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class.  This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval.  *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### g.     The Settlement Ensures Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether Class Members are treated equitably. As discussed below in §IV, Lead Counsel developed the Plan of Allocation in consultation with his damages consultant to treat Class Members equitably relative to each other by: (i) taking into account the timing of their LifeStance common stock purchases and sales; and (ii) providing that each Authorized Claimant shall receive his, her, its, or their *pro rata* share of the Net Settlement Fund based on their recognized losses.  Lead Plaintiff is subject to the same formula for distribution of the Net Settlement Fund as every other Class Member.  This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2.     The Settlement Satisfies the Remaining *Grinnell* Factors

### a.     The Lack of Objections Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'"absence of objections may itself be taken as evidencing the fairness of a settlement."'"  *City of Providence v. Aeropostale, Inc.*, 2014 WL

- 16 -

1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). "'A favorable reception by the Class constitutes "strong evidence" that a proposed settlement is fair.'" *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593 at *2 (S.D.N.Y. June 16, 2020). "'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Wal-Mart*, 396 F.3d at 118.

The deadline to submit objections is January 3, 2024; to date none have been filed to the adequacy of the Settlement and only one request for exclusion has been received. This positive reaction of the Class supports approval of the Settlement. *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

> **b.      Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement**

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of [P]laintiff['s] claims, the strengths of the defenses asserted by defendants, and the value of [P]laintiff['s] causes of action for purposes of settlement.'" *Bear Stearns*, 909 F. Supp. 2d at 267; *Martignago v. Merrill Lynch & Co.*, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'").

Unquestionably, Lead Plaintiff and Lead Counsel had sufficient information to assess the adequacy of the Settlement. As detailed in the Capeci Declaration, Lead Plaintiff and Lead Counsel negotiated the Settlement only after conducting over one year of hard-fought litigation against determined adversaries. Lead Counsel conducted a robust pre-filing investigation; prepared an

- 17 -

initial and amended complaint; thoroughly and successfully opposed Defendants' motion to dismiss; successfully obtained class certification following briefing and discovery; engaged in thorough document discovery; negotiated a number of discovery disputes with Defendants and third parties; took a number of fact depositions; and retained and met with several experts and served numerous expert reports on Defendants.  Lead Plaintiff also participated in arm's-length settlement discussions with Defendants, overseen by an experienced and nationally renowned mediator, which ultimately resulted in the Settlement.

Accordingly, Lead Plaintiff and Lead Counsel "developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *Aeropostale*, 2014 WL 1883494, at *7 (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

### c.  Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Although Lead Plaintiff had obtained class certification, Defendants were certain to continue to press for the Class Period to end no later than August 11, 2021, and not November 8, 2021 as ordered by the Court.  *See Christine Asia*, 2019 WL 5257534, at *13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).  "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

### d.  Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval.  Even if Defendants could have withstood a greater judgment, a "'defendant's ability to withstand a greater judgment, standing

- 18 -

alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here, however, LifeStance's deteriorating financial condition was a significant consideration in agreeing to settle the Action for $50 million. *See* Capeci Decl., ¶126.

### e.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("[T]he certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery.").

Here, "[b]ecause [Plaintiff faces] serious challenges to establishing liability, consideration of Plaintiff['s] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* Factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). The Settlement represents a recovery of between approximately

- 19 -

12.8% and 22.4% of reasonably recoverable estimated damages (Capeci Decl., ¶138), amounts that far exceed the 8.7% median recoveries in Securities Act cases between 2013-2022. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*, at 7, fig. 6 (Cornerstone Research 2023), attached as Exhibit 4 to the Capeci Declaration.[3]

Moreover, the $50 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – all of whom concluded the Settlement represented a very good recovery for the Class in light of the substantial litigation risks Lead Plaintiff faced. *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risk[s] of a zero – or minimal – recovery scenario are real"). This factor weighs in favor of final approval.

In sum, both the Rule 23(e)(2) factors and the *Grinnell* Factors, individually and collectively, weigh strongly in favor of the Court's approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

If the Court approves the proposed Settlement, upon completion of the claims administration process, the Net Settlement Fund will be distributed to Authorized Claimants according to the Plan of Allocation set forth in the Notice. The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "fair, reasonable, and adequate." *Signet*, 2020 WL 4196468, at *13. "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). "'When formulated by competent and

---

[3]    Not surprisingly, Defendants contended that damages were much less, if not zero.

4860-8941-0966.v1

experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.  A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.  *IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision."  *PaineWebber*, 171 F.R.D. at 133.  Court's enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among . . . class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Here, as set forth in the Notice, the Plan of Allocation was prepared with the assistance of Lead Counsel's damages consultant and has a rational basis, as it is based on the statutory formula provided in §11(e) of the Securities Act.  Capeci Decl., ¶140.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness").  This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan of Allocation.  The Plan of Allocation treats all Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, itself, or themselves from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.  *See* Teichmiller Decl., Ex. A (Notice) at 11-12.

No objections to the Plan of Allocation have been filed.

4860-8941-0966.v1

Lead Plaintiff and Lead Counsel believe that the Plan of Allocation is fair and reasonable.

Therefore, it is respectfully submitted that the Court should approve the proposed Plan of Allocation.

## V.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B).  Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114; *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart*, 396 F.3d at 114).

The method used to disseminate notice to potential Class Members satisfy these standards. The Court-approved Notice amply informs Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action and the Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation; (v) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Class Members; and (vii) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses.  The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; (ii) requesting exclusion from the

- 22 -

Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average-per-share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, A.B. Data, Ltd. ("A.B. Data"), the Court-approved Claims Administrator, commenced the mailing of the Claims Packets by First-Class Mail to potential Class Members, brokers, and nominees on November 15, 2023. As of December 18, 2023, over 14,000 Claims Packets have been mailed. Teichmiller Decl., ¶8. A.B. Data also published the Summary Notice in *The Wall Street Journal* and transmitted it over *PR Newswire*. *Id.*, ¶9, Exs. B and C. Additionally, A.B. Data posted the Claims Packet, as well as other important documents, on the website established and maintained for the Settlement. *Id.*, ¶11.

The combination of individual First-Class Mail to all potential Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'"). Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions.

4860-8941-0966.v1

*E.g.*, *Rodriguez*, 2023 WL 2184496, at \*10, \*25 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "'the best notice practicable under the circumstances'"); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VI.   CONCLUSION

The $50 million Settlement obtained by Lead Plaintiff and Lead Counsel represents an excellent recovery for the Class, particularly in light of the significant litigation risks Lead Plaintiff faced, including the very real risk of the Class receiving no recovery at all.  For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

DATED:  December 20, 2023          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK T. MILLKEY
MICHAEL G. CAPECI
BRENT E. MITCHELL


                                   s/ Samuel H. Rudman
                                 SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mmillkey@rgrdlaw.com
mcapeci@rgrdlaw.com
bmitchell@rgrdlaw.com

4860-8941-0966.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONAH H. GOLDSTEIN (admitted *pro hac vice*)
SCOTT H. SAHAM (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jonahg@rgrdlaw.com
scotts@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 25 -

4860-8941-0966.v1