UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| NIZAR S. NAYANI, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>LIFESTANCE HEALTH GROUP, INC., MICHAEL K. LESTER, J. MICHAEL BRUFF, ROBERT BESSLER, DARREN BLACK, JEFFREY CRISAN, WILLIAM MILLER, JEFFREY RHODES, ERIC SHUEY, KATHERINE WOOD, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, TPG CAPITAL BD, LLC, UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>     Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : : | Civil Action No. 1:22-cv-06833-JSR<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4) |

4889-4541-5574.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...........................................................................................................1

II.    HISTORY AND BACKGROUND OF THE LITIGATION...............................................2

III.   ARGUMENT .................................................................................................................3

      A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund..................................................................................3

      B.    The Court Should Award a Reasonable Percentage of the Common Fund.............4

      C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method..................................................................................................7

      D.    The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied............8

      E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ..................11

           1.    The Time and Labor Expended by Counsel ..............................................12

           2.    The Risks of the Litigation .......................................................................13

                a.    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee .............................................13

                b.    Risks of Establishing Liability.........................................................16

                c.    Risk of Establishing Damages ........................................................16

           3.    The Magnitude and Complexity of the Litigation ....................................17

           4.    The Quality of Representation Supports the Requested Fee ......................18

           5.    Public Policy Considerations ....................................................................19

           6.    The Requested Fee in Relation to the Settlement .....................................20

           7.    The Class' Reaction to the Fee Request to Date Supports the Requested Fee ..........................................................................................20

           8.    The Fee Request Is Supported by Lead Plaintiff ......................................20

IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THE ACTION........................................21

4889-4541-5574.v1

**Page**

V.      LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §77z-1(a)(4)..................................................................................................22

VI.     CONCLUSION.........................................................................................................24

4889-4541-5574.v1

## TABLE OF AUTHORITIES

**Page**

### CASES

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ..........................................................................................14

*Aponte v. Comprehensive Health Mgmt., Inc.*,
 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)......................................................................13

*Ark. Tchr. Ret. Sys. & Fresno Cnty. Emps.' Ret. Assoc. v. Bankrate, Inc.*,
 No. 13-cv-7183 (JSR), slip op. (S.D.N.Y. Nov. 25, 2014).................................................7

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
 77 F.4th 74 (2d Cir. 2023) ................................................................................................14

*Athale v. Sinotech Energy Ltd.*,
 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)...................................................................10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985)............................................................................................................3

*Blum v. Stenson*,
 465 U.S. 886 (1984).........................................................................................................5, 7

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)............................................................................................................3

*Brown v. Phillips Petroleum Co.*,
 838 F.2d 451 (10th Cir. 1988) .............................................................................................6

*Chatelain v. Prudential-Bache Sec., Inc.*,
 805 F. Supp. 209 (S.D.N.Y. 1992)....................................................................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).....................................................................17

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
 2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015)...................................................................22

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974),
 *abrogated by Goldberger*, 209 F.3d 43 (2d Cir. 2000)......................................................13

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
 954 F. Supp. 2d 276 (S.D.N.Y. 2013)..................................................................................7

4889-4541-5574.v1

**Page**

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ................................................................3, 5, 9, 18

*City of St. Clair Shores Police & Fire Ret. Sys. v. Credit Suisse Grp. AG*,
No. 1:21-cv-03385-NRB, slip op. (S.D.N.Y. May 11, 2023)..................................10

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
2021 WL 2736135 (S.D.N.Y. June 30, 2021) .........................................................22

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
No. 18-cv-7796 (VEC), slip op. (S.D.N.Y. Nov. 7, 2022) .......................................7

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) ......................................................10

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..............................................................5, 11

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ..............................................................................6

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022)..........................................................9

*Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019).............................................................................3, 4, 6

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)....................................................................... *passim*

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ..................................................................................6

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) ..............................................................................4

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)....................................................4, 23

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................................14

4889-4541-5574.v1

**Page**

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................6, 13

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................17

*In re Bayer AG Sec. Litig.*,
  2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .......................................................17

*In re BHP Billiton Ltd. Sec. Litig.*,
  2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019),
  *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*,
  806 F. App'x. 17 (2d Cir. 2020) .......................................................................8, 10

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) .............................................6, 10, 18

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................21

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) .....................................................9, 20

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................ *passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)......................................................................................5

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................6, 22

*In re GSE Bonds Antitrust Litig.*,
  2020 WL 3250593 (S.D.N.Y. June 16, 2020) ................................................ *passim*

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)......................................................................11, 17

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)...................................................................21

4889-4541-5574.v1

**Page**

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...............................................................................4

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ..............................................................................8

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...........................................................................14

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................15, 18

*In re Monster Worldwide, Inc. Sec. Litig.*,
2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008) ...................................................................6, 7, 22

*In re Nielsen Holdings Plc Sec. Litig.*,
No. 1:18-cv-07143-JMF, slip op. (S.D.N.Y. July 21, 2022) .....................................................22

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010) ..........................................................................................14

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................................................8

*In re Parking Heaters, Antitrust Litig.*,
2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) .............................................................................4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) .........................................................................................5

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ...............................................................................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ............................................................................................13

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) .............................................................................22

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ......................................................................................................20

4889-4541-5574.v1

**Page**

*In re Sadia S.A. Sec. Litig.*,
  2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ..........................................................................14

*In re Silvercorp Metals, Inc. Sec. Litig.*,
  No. 12-cv-9456 (JSR), slip op. (S.D.N.Y. Feb. 13, 2015)......................................................7

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)...............................................................................3, 10

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)......................................................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)................................................................ *passim*

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964),
  *abrogation recognized by Ziglar v. Abbasi*,
  582 U.S. 120 (2017)................................................................................................................3

*Jenkins v. Nat'l Grid USA Serv. Co.*,
  2022 WL 2301668 (E.D.N.Y. June 24, 2022) ..........................................................................8

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) .....................................................................................................6

*Lopez v. Fashion Nova*,
  2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021).........................................................................10

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................6, 19

*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .................................................................................................13

*Micholle v. Ophthotech Corp.*,
  2022 WL 16571095 (S.D.N.Y. Sept. 16, 2022).......................................................................7

*Mo. v. Jenkins by Agyei*,
  491 U.S. 274 (1989)..............................................................................................................7, 9

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) ..................................................................4, 5, 8

4889-4541-5574.v1

**Page**

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ................................................................................6

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) .....................................................................................6

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................14

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999).....................................................................................5

*Spicer v. Pier Sixty LLC*,
   2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012)........................................................10

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993)...................................................................................6

*Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................................................13, 18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).................................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ...................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................4, 5, 10

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).......................................................19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77z-1(a)(4) .................................................................................................. *passim*
   §77z-1(a)(6) .............................................................................................................6

4889-4541-5574.v1

Lead Counsel respectfully submits this memorandum in support of its motion for an award of attorneys' fees and expenses in connection with its representation of the Class in the above-captioned litigation, and for an award to Lead Plaintiff in connection with his representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    INTRODUCTION

Through its efforts, Lead Counsel secured a $50 million Settlement for the benefit of the Class.[1]  The Settlement brings to a close this hard-fought litigation and represents an excellent result given the serious obstacles to recovery, the numerous credible defenses to liability and damages that Defendants have articulated, the fact that the Court might have accepted Defendants' arguments at summary judgment following the completion of expensive fact and expert discovery, and the recovery relative to the amount of estimated recoverable damages suffered by the Class.  To obtain this Settlement, Lead Counsel pursued Lead Plaintiff's claims on a purely contingent basis.  In recognition of the result obtained, Lead Counsel now respectfully moves this Court for an award of attorneys' fees of 25% of the Settlement Amount, and $571,894.58 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action, plus interest on both amounts.  As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir.

---

[1]    Capitalized terms used herein are defined and have the meanings contained in the Stipulation of Settlement (ECF 84-1) (the "Stipulation"), the accompanying Declaration of Michael G. Capeci in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Capeci Decl." or "Capeci Declaration"), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Internal citations are omitted and emphasis is added throughout unless otherwise noted.

4889-4541-5574.v1

2000). In addition, Lead Plaintiff seeks an award of $5,970.90 pursuant to 15 U.S.C. §77z-1(a)(4) in connection with his time and unreimbursed expenses incurred in his representation of the Class.

Following an extensive Court-ordered notice program in which over 14,000 Claims Packets have been mailed to potential Class Members, to date not a single Class Member has objected to the requested fees or the expenses (not to exceed $700,000, as set forth in the Notice) or the lead plaintiff award (not to exceed $7,000, as set forth in Notice).

As detailed below, in the Capeci Declaration, and in the Settlement Memorandum, the Settlement achieved here represents an excellent result for Lead Plaintiff and the Class, particularly when judged in the context of the significant litigation risks in the Action. The $50 million Settlement that Lead Counsel obtained provides the Class with an immediate and certain recovery in a case that faced significant risks. In achieving this result, Lead Counsel worked more than 6,300 hours on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorney fee award of 25%, together with payment of its litigation expenses, properly reflects the many significant risks taken by counsel in prosecuting the Action, as well as the result achieved. When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of 25% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the expenses requested by Lead Counsel are reasonable in amount and were necessarily incurred, and the request by Lead Plaintiff adequately reflects his substantial efforts and contributions to the Action.

## II.    HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Lead Plaintiff's claims and counsel's vigorous prosecution of the Action (including key pleadings, motions, and discovery and mediation efforts) is set forth in the

4889-4541-5574.v1

accompanying Capeci Declaration.  For the sake of brevity, the Court is respectfully referred to that declaration.

## III.    ARGUMENT

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019).  The purpose of the common-fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2.  Indeed, the Supreme Court has emphasized that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964), *abrogation recognized*

- 3 -

*by Ziglar v. Abbasi*, 582 U.S. 120 (2017)); *accord Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'"); *Fresno Cnty.*, 925 F.3d at 68.  Fairly compensating counsel for the risks they took in representing Lead Plaintiff in the Action is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.     The Court Should Award a Reasonable Percentage of the Common Fund**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *see also Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("'The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (quoting *In re Parking Heaters, Antitrust Litig.*, 2019 WL

- 4 -

8137325, at *7 (E.D.N.Y. Aug. 15, 2019)).  The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[2]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,'. . . a reasonable fee is based on a percentage of the fund bestowed on the class.").  The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").  Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also Noom*, 2022 WL 2705354; *City of Providence*, 2014 WL 1883494, at *11-*12.[3]

---

[2]     *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . .  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (The "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys.").

[3]     All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common-fund cases.  *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset*

- 5 -

Recently, the Second Circuit reaffirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty.*, 925 F.3d at 63, 72 (confirming the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases). *Id.* at 72.

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §77z-1(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among the district courts in this Circuit, including this Court (*In re Monster Worldwide, Inc. Sec. Litig.*, 2008 WL 9019514, at *1 (S.D.N.Y. Nov. 25, 2008) (Rakoff, J.); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (Rakoff, J.)), and the language

---

*Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits require the use of the percentage method in common-fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

4889-4541-5574.v1

of the PSLRA, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.

### C. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989). If this were a non-class action, the customary fee arrangement would be contingent and in the range of one-third of the recovery. *See Blum*, 465 U.S. at 903 n* ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'") (Brennan, J., concurring).

The requested 25% fee is well within the range of percentage fees awarded by courts within the Second Circuit – including by this Court – in other comparable complex cases. *See, e.g.*, *Monster*, 2008 WL 9019514, at *1-*2 (awarding 25% of $47.5 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276 (S.D.N.Y. 2013) (Rakoff, J.) (awarding 25% of $19.5 million settlement); *Ark. Tchr. Ret. Sys. & Fresno Cnty. Emps.' Ret. Assoc. v. Bankrate, Inc.*, No. 13-cv-7183 (JSR), slip op. at 2 (S.D.N.Y. Nov. 25, 2014) (Rakoff, J.) (awarding 25% of $18 million settlement) (Ex. 7-1);[4] *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456 (JSR), slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (Rakoff, J.) (awarding 25% of $14 million settlement) (Ex. 7-5); *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, No. 18-cv-7796 (VEC), slip op. at 2 (S.D.N.Y. Nov. 7, 2022) (awarding 25% of $14.75 million settlement) (Ex. 7-3); *Micholle v. Ophthotech Corp.*, 2022 WL 16571095, at *1 (S.D.N.Y. Sept. 16, 2022) (awarding 30%

---

[4]    All unreported slip opinions are submitted in a compendium of cases, which is Exhibit 7 to the Capeci Declaration.

4889-4541-5574.v1

of $29 million settlement); *Jenkins v. Nat'l Grid USA Serv. Co.*, 2022 WL 2301668, at \*3-\*5 (E.D.N.Y. June 24, 2022) (awarding fee of approximately 30% on $38.5 million settlement); *Noom*, 2022 WL 2705354, at \*10 (awarding fee of one-third of $56 million settlement fund, finding "fee equal to one-third of a settlement fund is routinely approved in this Circuit"); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at \*1 (S.D.N.Y. Feb. 18, 2022) (awarding 33-1/3% of $31.9 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*16-\*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee "constitutes a proportion routinely approved as reasonable"); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at \*6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third of $75 million recovery); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x. 17 (2d Cir. 2020) (affirming 30% fee plus expenses on $50 million settlement fund).

### D.   The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied

When using the percentage-of-the-fund method, courts may also look to "hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar method requires a two-part analysis,

first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work.

4889-4541-5574.v1

*City of Providence*, 2014 WL 1883494, at *13. Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and its paraprofessionals have spent, in the aggregate, 6,324.30 hours in the prosecution of the Action, producing a total lodestar amount of $4,761,286.00 when multiplied by counsel's billing rates. *See* accompanying Declaration of Michael G. Capeci Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Robbins Geller Fee Decl."), attached as Exhibit 3 to the Capeci Declaration.[5] The attorneys' fees requested by counsel herein, $12,500,000, represents a modest and eminently reasonable multiplier of approximately 2.6.[6]

In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'"); *In re Comverse*

---

[5] In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status. Here, the lawyers and paraprofessionals are experienced securities practitioners with track records of success, and among the most prominent and well-regarded securities practitioners in the nation. Counsel's billing rates are reasonable and have recently been judicially approved. *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) ("The Court finds [Robbins Geller's] billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); Hr'g Tr. at 160:22-24, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40 (AKH) (S.D.N.Y. Jan. 23, 2019) ("I find your lodestar reasonable, the rates appropriate and, in relationship to the work that you did, reasonable.") (relevant portions are attached as Ex. 5 to the Capeci Declaration); Hr'g Tr. at 25:12-16, *Kaess v. Deutsche Bank AG*, No. 09-cv-01714 (GHW) (RWL) (S.D.N.Y. June 11, 2020) ("I find that these billable rates [for Robbins Geller] based on the timekeeper's title, specific years of experience, and market rates for similar professionals in its fields . . . to be reasonable in this context.") (relevant portions are attached as Ex. 6 to the Capeci Declaration).

[6] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

- 9 -

*Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

The modest multiplier of approximately 2.6 reflected here is within the range of multipliers found reasonable for cross-check purposes by this Court and other courts in this Circuit (and elsewhere), and is fully justified here given the effort required, the risks faced and overcome, and the results achieved. Indeed, "'[i]n contingent litigation, lodestar multipl[iers] of over 4 are routinely awarded by courts.'" *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (quoting *Telik*, 576 F. Supp. 2d at 590); *see also Lopez v. Fashion Nova*, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, '[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.'") (alteration in original); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (Rakoff, J.) (finding multiplier of 4.09 "within the range of what has [been] considered reasonable by courts"); *In re Bisys*, 2007 WL 2049726, at *3 (finding multiplier of 2.99 "falls well within the parameters set in this district and elsewhere"); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5); *City of St. Clair Shores Police & Fire Ret. Sys. v. Credit Suisse Grp. AG*, No. 1:21-cv-03385-NRB, slip op. at 1 (¶4) (S.D.N.Y. May 11, 2023) (awarding fee representing 5.6 multiplier) (Capeci Decl., Ex. 7-2); *In re BHP Billiton*, 2019 WL 1577313, at *1-*2 (awarding fee representing 2.7 multiplier); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding multiplier of 5.65, finding it "not unreasonable under the particular facts of this case" and "sufficient to compensate counsel for the work they have put in and the risks they took, as well as to reward them for zealously litigating the dispute and timely resolving the action"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (awarding fee representing a multiplier of 4.7);

4889-4541-5574.v1

*Davis*, 827 F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases).

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar-building litigation. *See also In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request . . . ."). As detailed in the Capeci Declaration, based on its efforts in litigating the Action and producing an excellent result, Lead Counsel believes the requested fee is manifestly reasonable, whether calculated as a percentage of the fund or in relation to counsel's lodestar. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common-fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*See Goldberger*, 209 F.3d at 50. Consideration of these factors demonstrates that the requested fee is fair and reasonable.

- 11 -

4889-4541-5574.v1

### 1.    The Time and Labor Expended by Counsel

Lead Counsel expended substantial time and effort pursuing the Action on behalf of Lead Plaintiff and the Class.  Lead Counsel and its paraprofessionals devoted in excess of 6,300 hours to prosecuting the Class' claims.  As detailed in the Capeci Declaration, submitted herewith, counsel, among other things:

- conducted an extensive legal and factual investigation into the underlying facts and drafted the initial complaint and Complaint;

- identified and interviewed former LifeStance employees;

- successfully opposed Defendants' motion to dismiss;

- successfully moved for class certification, including discovery in connection therewith;

- engaged in extensive document discovery, including requesting, negotiating for, and reviewing nearly 800,000 pages of documents by Defendants and third parties;

- responded to Defendants' discovery requests;

- conducted four depositions of LifeStance employees and prepared for several more;

- retained and consulted with experts in damages, forensic accounting and due diligence, and served reports on their behalf;

- participated in arm's-length settlement negotiations, including mediation with the Hon. Layn R. Phillips, Ret.; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See generally* Capeci Decl.

Moreover, Lead Counsel, with the assistance of its damages expert, prepared the proposed Plan of Allocation based on the Complaint's allegations and the claims asserted.  Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Additional hours and resources will necessarily be expended assisting Members of the Class with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and

4889-4541-5574.v1

responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013). The significant amount of time and effort devoted to this case by Lead Counsel to obtain a $50 million recovery, over 6,300 hours over the course of the last two years – work that will not end with the Court's approval of the Settlement – confirms that the 25% fee request is reasonable.

### 2.    The Risks of the Litigation

#### a.    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor. *Goldberger*, 209 F.3d at 54; *In re GSE Bonds*, 2020 WL 3250593, at *4. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger*, 209 F.3d 43. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's

- 13 -

fee award where court failed to account for, among other things, risk of underpayment to counsel). When considering the reasonableness of attorneys' fees in a contingency action, the court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook the Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute risky litigation with no guarantee of compensation or even the recovery of expenses. Although the case was brought to a successful conclusion, this was far from guaranteed at the outset. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Veeco*, 2007 WL 4115808, *6.[7] Unlike defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, counsel have not been compensated for any time or expenses since the case began and would have received no compensation or payment of its expenses had it not been resolved successfully.

---

[7]    Moreover, it is wrong to presume that a law firm handling complex contingent litigation always wins. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration, despite its diligence and expertise. *See, e.g., Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review, after plaintiffs' counsel incurred nearly $7 million in expenses, and worked over 115,000 hours, representing a lodestar of approximately $68 million); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss-causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

4889-4541-5574.v1

From the outset, counsel understood that it was embarking on complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require.  In undertaking that responsibility, counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Action and that funds were available to compensate staff and to pay for the considerable costs that cases such as this entail.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, counsel faced the possibility that it would receive no attorneys' fees at all.  Indeed, it is possible that, if not for this Settlement, the claims would have been dismissed in response to Defendants' inevitable summary judgment motions or at trial.

Losses in contingent-fee litigation, especially those brought under the PSLRA, are exceedingly expensive.  Lead Counsel's assumption of the contingency-fee risk strongly supports the reasonableness of the requested fee.  *See GSE Bonds*, 2020 WL 3250593, at *4 ("Moreover, Co-Lead Counsel assumed most of this risk because they were working on a contingent-fee basis."); *FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

Lead Counsel firmly believes that Lead Plaintiff's claims were meritorious.  However, Defendants were represented by highly capable attorneys and the risk of a decision in favor of Defendants, whether by the Court, on summary judgment or by a jury at trial, was significant.  Lead

- 15 -

Counsel's willingness to assume that risk with a significant commitment of time and money demonstrates that this *Goldberger* factor weighs heavily in favor of the requested fee.

### b.    Risks of Establishing Liability

While Lead Plaintiff remains confident in his claims, his ability to prove liability was far from certain.  As detailed in the Capeci Declaration and in the Settlement Memorandum, Defendants raised numerous challenges to the falsity and materiality of the misstatements and omissions alleged. Capeci Decl., ¶¶117-121; Settlement Memorandum, §III.C.  Although Lead Plaintiff prevailed on the motion to dismiss, the alleged misstatements and omissions would no doubt be challenged again on summary judgment.  The Underwriter Defendants would also continue to press their "due diligence" defense.  Therefore, whether Lead Plaintiff ultimately would prove liability was far from assured.

### c.    Risk of Establishing Damages

With respect to proving damages, Defendants would continue to attack the link between the alleged misstatements and Lead Plaintiff's losses as well as the damages calculations of counsel's expert which, if accepted, would severely limit, or entirely eliminate, the amount of damages that could be recovered.  Defendants argued that confounding information, including the Company's revised EBITDA guidance – which Defendants maintained was driven by infrastructure investments, rather than an increase in clinician turnover – during the Company's second-quarter 2021 earnings conference call caused or contributed to the decline in LifeStance's common stock, and Lead Plaintiff's and the Class' recovery would be limited to only those damages caused by the announcement of the increase in clinician turnover. Capeci Decl., ¶123.  Defendants also contended that any market declines after August 2021 were not recoverable, because the full truth of the pre-

IPO decline in the Company's retention rate had been fully disclosed. *Id.*, ¶124. Defendants would never concede these points and would continue to press this defense at summary judgment and trial.

There is no way to know how the Court or a jury would decide these issues. The damage assessments of the parties' respective trial experts would become a "battle of the experts." The outcome of such battles is never predictable, and there existed the very real possibility that the Court or a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### 3. The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'"). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described herein, the Action involved a number of difficult and complex questions concerning

4889-4541-5574.v1

liability and damages in connection with LifeStance's IPO, and would have continued to require extensive efforts by counsel and consultation with experts.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 25% fee. *City of Providence*, 2014 WL 1883494, at *16.

### 4.    The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, Settlement Memorandum at §III.C.; *see also FLAG Telecom*, 2010 WL 4537550, at *28; *In re Bisys*, 2007 WL 2049726, at *3. Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. Lead Counsel is a nationally-recognized leader in securities class action and other complex litigation, and has substantial experience litigating and trying securities class actions in courts throughout the country. *See* Robbins Geller Fee Decl., Ex. F. This Settlement is attributable to the diligence, determination, hard work, and reputation of Lead Counsel, who developed, litigated, and successfully negotiated the Settlement of the Action and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation. *See Tchrs.' Ret. Sys. of La.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs'

4889-4541-5574.v1

efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a fee award was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from Ropes & Gray LLP and Davis Polk & Wardwell LLP, who presented very skilled defenses, challenged Lead Plaintiff's litigation efforts at every stage, and spared no effort in representing their clients. Notwithstanding this formidable opposition, counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Action through trial and then inevitable appeals enabled counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.      Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See In re GSE Bonds*, 2020 WL 3250593, at *5 ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future."); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage future securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting counsel's fee and expense application here.

4889-4541-5574.v1

### 6.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Converse*, 2010 WL 2653354, at *3.  As discussed in detail in §III.C, *supra*, the requested fee is well within the range of percentage fees that this Court and other courts have awarded in comparable cases, and, accordingly, the fee requested is reasonable in relation to the Settlement.

### 7.    The Class' Reaction to the Fee Request to Date Supports the Requested Fee

To date, the Claims Administrator has sent over 14,000 Claims Packets to potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, plus expenses not to exceed $700,000, plus interest on both amounts.  *See* accompanying Declaration of Rochelle J. Teichmiller ("Teichmiller Decl.").  The time to object to the fee request expires on January 3, 2024.  To date, not a single objection to the fee and expense amounts set forth in the Notice was received.  Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  The reaction of the Class supports the fairness of the fee request.[8]

### 8.    The Fee Request Is Supported by Lead Plaintiff

The requested fee of 25% is made with the full support of the Lead Plaintiff.  *See* Declaration of Nizar S. Nayani ("Nayani Decl."), dated December 19, 2023, ¶8, submitted as Exhibit 1 to the Capeci Declaration.  Mr. Nayani is a financially interested investor who has overseen Lead

---

[8]    Lead Counsel will respond to any objections to the fee and expense request in its reply brief, due January 17, 2024.

Counsel's efforts since the case's inception. *Id.*, ¶¶3-6. Moreover, the 25% fee is consistent with Mr. Nayani's retention agreement with Lead Counsel, as discussed with the Court at the November 4, 2022 lead plaintiff hearing. *Id.*, ¶8. Lead Plaintiff's endorsement of the fee supports its approval. *See Veeco*, 2007 WL 4115808, at *8 ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of lead counsel and has approved the fee request.").

## IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THE ACTION

Lead Counsel also respectfully requests an award of $571,894.58 in expenses, which were reasonably incurred and necessary to prosecute the Action. Lead Counsel has submitted a declaration regarding these expenses, which are properly recovered by counsel. *See* Robbins Geller Fee Decl., ¶¶5-6; *see also In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (In a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation."'"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Lead Counsel's expenses are consistent with the stage of the Action at the time of the Settlement, and include, for example, expert and consultant fees, deposition and hearing reporting and transcript, document management, online research, mediation, and filing fees. A complete breakdown by category of the expenses incurred is set forth in the accompanying Robbins Geller Fee Declaration. These expenses were critical to counsel's success in achieving the Settlement. *See*

- 21 -

*Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund.").  *See In re GSE Bonds*, 2020 WL 3250593, at *6.  Not a single objection to the expense amount set forth in the Notice was received.  Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §77z-1(a)(4)

Lead Plaintiff seeks approval of an award of $5,970.90 in time and expenses incurred in representing the Class.  *See* Nayani Decl., ¶9.  The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of [a] class."  15 U.S.C. §77z-1(a)(4).  Many courts, including this one, have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class.  *See, e.g.*, *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (Rakoff, J.) (awarding $6,286.70 to lead plaintiff); *Monster Worldwide*, 2008 WL 9019514, at *2 (Rakoff, J.) (awarding lead plaintiff $7,303.08); *In re Nielsen Holdings Plc Sec. Litig.*, No. 1:18-cv-07143-JMF, slip op. at 4 (¶¶7-8) (S.D.N.Y. July 21, 2022) (awarding $17,750 and $5,625 to plaintiffs) (Capeci Decl., Ex. 7-4); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $12,500); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class").

4889-4541-5574.v1

As set forth in the Nayani Declaration, Lead Plaintiff took an active role in prosecuting the Action from its inception, including: (1) communicating with Lead Counsel on issues and developments in the Action; (2) reviewing documents filed in the case; (3) provided documents and deposition testimony in connection with class certification; (4) consulting with Lead Counsel on litigation and settlement strategy; and (5) reviewing and approving the proposed Settlement.  Nayani Decl., ¶¶3-6.  Mr. Nayani also participated in the Lead Plaintiff hearing after twice traveling to New York from his home in the Houston, Texas area for two earlier lead plaintiff hearings that were cancelled.  *Id.*, ¶4.  Mr. Nayani's efforts on the Class' behalf took him away from his job as a managing director of his company, which operates Cricket Wireless retail stores in the Houston, Texas area.  *Id.*, ¶5.

These are precisely the types of activities courts have found support PSLRA awards to class representatives.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

The Notice informed potential Class Members that Lead Plaintiff may seek approval for up to $7,000 for his time and expenses incurred in representing the Class.  Teichmiller Decl., Ex. A (Notice) at 8.  The time and expenses requested, $5,970.90, is below that amount.  To date, no Class Member has objected to such award.  Accordingly, Lead Plaintiff's request is reasonable and fully justified under the PSLRA and should be granted.

4889-4541-5574.v1

## VI.    CONCLUSION

Lead Counsel obtained an excellent recovery for the Class.  Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Amount, plus expenses in the amount of $571,894.58, plus interest on both amounts, and an award to Lead Plaintiff of $5,970.90, as permitted by the PSLRA.

DATED:  December 20, 2023                Respectfully submitted,

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        SAMUEL H. RUDMAN
                                        MARK T. MILLKEY
                                        MICHAEL G. CAPECI
                                        BRENT E. MITCHELL


                                                s/ Samuel H. Rudman
                                        SAMUEL H. RUDMAN

                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)
                                        srudman@rgrdlaw.com
                                        mmillkey@rgrdlaw.com
                                        mcapeci@rgrdlaw.com
                                        bmitchell@rgrdlaw.com

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        JONAH H. GOLDSTEIN (admitted *pro hac vice*)
                                        SCOTT H. SAHAM (admitted *pro hac vice*)
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        jonahg@rgrdlaw.com
                                        scotts@rgrdlaw.com

                                        Lead Counsel for Lead Plaintiff

4889-4541-5574.v1